

FILED
FEB 0 5 2002
PER
HARRISBURG, PA  DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PENNSYLVANIA PROTECTION AND   :
ADVOCACY, INC.,   :

Plaintiff,   :

  :     C.A. No. 1:00-cv-1582

v.   :

  :     (Judge William W. Caldwell)

DEPARTMENT OF PUBLIC WELFARE :
OF THE COMMONWEALTH OF   :
PENNSYLVANIA, et al.,   :

Defendants.   :

---

## DEFENDANTS' BRIEF IN SUPPORT
## OF MOTION TO DISMISS
## SECOND AMENDED COMPLAINT

---

Thomas Blazusiak
Senior Assistant Counsel
Department of Public Welfare
Office of General Counsel
Allentown State Hospital
1600 Hanover Avenue
Allentown, PA   18103

Michael Harvey
Senior Deputy Attorney General
Office of the Attorney General
Strawberry Square
Harrisburg, PA   17120

Howard Ulan
Senior Assistant Counsel
Department of Public Welfare
Office of General Counsel
Third Floor West
Health and Welfare Building
Harrisburg, PA   17120

# TABLE OF CONTENTS

Table of Authorities ........................................................................... iv

Procedural History ............................................................................ 1

Statement of Facts ............................................................................. 2

Statement of Questions Involved ...................................................... 3

Argument............................................................................................ 5

I.   PP&A's Claims Against the Department Under the ADA and the
     Rehabilitation Act Are Barred by the Eleventh Admendment....................... 6

     A    Introduction. ............................................................. 6

     B.   PP&A's Claim Against the Department of Public Welfare Under
          Title II of the Americans with Disabilities Act is Barred by the
          Eleventh Amendment. ............................................................. 7

     C.   PP&A's Rehabilitation Act Claim is Barred by the Eleventh
          Amendment. ............................................................. 12

          1.   The Rehabilitation Act is not a Proper Abrogation
               of the States' Eleventh Amendment Immunity...................... 13

          2.   The Rehabilitation Act's Waiver Requirement is an
               Unconstitutional Condition. ...................................... 14

               a.   The Rehabilitation Act Impermissibly Conditions
                    the Provision of Federal Benefits on the Waiver of
                    Eleventh Amendment Immunity.................................. 15

               b.   The Waiver Provision of the Rehabilitation Act Bears
                    No Relationship to the Purposes for Which Federal
                    Funding is Given to the Department of Public Welfare. 19

II.   The Doctrine of <u>Ex Parte Young</u> Does Not Permit PP&A to Assert its
      ADA and Rehabilitation Claims Against State Officials. .............................. 21

III.  Section 504 of the Rehabilitation Act Provides No Basis On Which Relief
      Can Be Granted; Only the Regulation -- Not the Statute -- Contains an
      "Integration" Mandate; the Regulation, Therefore, is Unenforceable in a
      Private Action. ............................................................................................ 24

IV.   Title XIX of the Social Security Act Provides No Basis On Which Relief
      Can Be Granted. ......................................................................................... 27

      A.   PP&A, Inc. Cannot Maintain a Section 1983 Action to Enforce
           Title XIX of the Social Security Act, Because the Statutory Sections
           Cited By Plaintiff Do Not Grant a "Federal Right" .......................... 27

      B.   Regulations Are Not Privately Enforceable. ....................................... 31

V.    PP&A, Inc. Does Not Have Standing. ......................................................... 32

      A.   Subject Matter Jurisdiction Must Be Found in the Pleadings Before
           There Can Be a Determination of the Merits. ..................................... 32

      B.   Article III Standing Generally. ........................................................... 33

      C.   PP&A, Inc. Lacks Standing on its Own Behalf. ................................. 34

      D.   PP&A, Inc. Lacks Standing to Bring this Action as an Association on
           Behalf of Others: Either SMRC Residents or Non-Residents... ......... 35

           1.   PP&A, Inc. Lacks Standing to Bring this Action on Behalf of
                SMRC Residents Whom it Claims Should Reside Elsewhere...... 36

                a.   PP&A, Inc. Fails to Plead Standing for Even One SMRC
                     Resident, Thus Failing the First Prong of the <u>Hunt</u> Test.......... 36

                     i.    No Injury in Fact.............................................................. 36
                     ii.   No Injury Caused by Defendant ...................................... 40
                     iii.  No Redressability.............................................................. 41

b.  The Second Amended Complaint Fails to Show That This Action is Germane to PPP&A Inc.'s Purpose............................ 43

c.  The Claim Asserted and the Relief Requested Require the Participation of Individual Members in the Lawsuit. .............. 44

2.  PP&A, Inc. Lacks Standing to Present Claims on Behalf of Any Nonresidents of SMRC. ................................................................ 45

VI.    CONCLUSION................................................................................................. 47

# TABLE OF AUTHORITIES

CASES

Alexander v. Sandoval, 532 U.S. 275, 121 S. Ct. 1511 (2001) .............................. 25

Alsbrook v. City of Mauelle, 184 F.3d 1999 (8th Cir. 1998) ............................ 22, 24

Barron v. Burnside, 121 U.S. 186 (1887) ........................................................ 17, 18

Blessing v. Freestone, 520 U.S. 329, 117 S. Ct. 1353 (1997) ................................ 28

Board of Trustees v. Garrett, 531 U.S. 356, 121 S. Ct. 955 (2001)....................... 22

Brogdon Ex Rel. Cline v. National Healthcare Corp. 103 F.Supp.2nd 1322, 1332
(N.D. Ga. 2000), recons. denied, modified, 2000 U.S. Dist. LEXIS 9014 (N.D. Ga.
June 26, 2000). ................................................................................................ 28, 30

City of Pittsburgh v. West Penn Power, 147 F.3d 256 (3d Cir. 1998) ................... 33

Clark v. Cohen, 794 F.2d 79 (3d Cir. 1986) .......................................................... 24

College Savings Bank v. Florida Prepaid Post-Secondary Education Expense
Board, 527 U.S. 666 (1999) ...................................................................................... 8

Ex parte Young, 209 U.S. 123, 28 S. Ct. 441 (1908) ............................................ 21

Fair Housing Council v. Montgomery Publishing
141 F.3d 71 (3d Cir. 1998).................................................................................... 34

Florida Prepaid Post Secondary Education Expense Board v. College
Savings Bank, 527 U.S. 627 (1999)......................................................................... 9

Frost & Frost Trucking Co. v. Railroad Comm. of California,
271 U.S. 583 (1926) ............................................................................................... 15

Gould Electronics v. United States, 220 F.3d 169 (3d Cir. 2000)......................... 32

Helen L. v. Didario, 46 F.3d 325 (3d Cir. 1995) ................................................... 25

Hindes v. Federal Deposit Insurance Corp., 137 F.3d 148 (3d Cir. 1998) ............ 21

Hunt v. Washington State Apple Advertising Commission,
432 U.S. 333, 97 S. Ct. 2434 (1977) ....................................................... 35

Kentucky Assn. for Retarded Citizens v. Conn, 674 F.2d 582 (6th Cir. 1987)...... 25

Kimel v. Florida Board of Regents, et al., 528 U.S. 62 (2000) .............................. 8

Koslow v. Commonwealth, 158 F. Supp.2d 539, (E.D. Pa. 2001) appeal pending . 5

Lavia v. Pennsylvania Department of Corrections, 224 F.3d 190 (3d Cir. 2000).... 8

Leftokowitz v. Turley, 414 U.S. 70 (1973)............................................................ 15

Lewis v. New Mexico Dept. of Health, 94 F. Supp.2d 1217
(D. N.M. 2000), aff'd on other grounds, 261 F.3d 970 (10th Cir. 2001) ............... 38

Mitchell v. Forsyth, 472 U.S. 511, 105 S. Ct. 2806 (1985)................................... 5

Morse v. Lower Merion School District, 132 F.3d 902 (3d Cir. 1997)........... 33, 39

Morse Insurance Co. v. Morse, 87 U.S. 445 (1874) ........................................ 15, 17

Olmstead v. L.C., 527 U.S. 581, 119 S. Ct. 2176 (1999) ...................................... 37

Pennsylvania Protection and Advocacy v. Houstoun
136 F. Supp.2d 353 (E.D. Pa. 2001) ...................................................... 32

Pension Benefit Guaranty v. LTV, 496 U.S. 633, 110 S. Ct. 2668 (1990) ........... 27

P.C. McLaughlin, 913 F.2d 1033 (2d 1990) ......................................................... 25

Philadelphia Federation of Teachers v. Ridge, 150 F.3d 319 (3d Cir. 1998)........ 33

Phillips v. Thompson, 715 F.2d 365 (7th Cir. 1983) ............................................. 25

Plummer v. Branstad, 731 F.2d 574 (8th Cir. 1984)............................................. 25

Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 113 S. Ct. 684 (1993) ........................................................................ 5, 18-19

Saenz v. Roe, 526 U.S. 489 (1999) ........................................................ 15

Seminole Tribe of Florida v. Florida, 517 U.S. 44, 107 S. Ct. 1114 (1996) .......... 22

Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 96 S. Ct. 1917 (1976) ............................................................ 41

South Camden Citizens in Action v. New Jersey Dept. of Environmental Protection, 274 F.3d 771 (3d Cir. 2001) ................................................ 5, 31

South Dakota v. Dole, 483 U.S. 203, 107 S. Ct. 2793 (1987) .................... 14, 19-20

Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 118 S. Ct. 1003 (1998) ............................................................................ 32

Tennessee Protection and Advocacy v. Board of Putnam County, 24 F. Supp.2d 808 (D. Tenn. 1998) ........................................................ 36, 46

Terral v. Burke Construction Co., 257 U.S. 529 (1922) ............................ 17

The Pitt News v. Fisher, 215 F.3d 354 (3d Cir. 2000) ............................ 40

Thomas v. Review Bd. of Indiana Employment Security Div., 450 U.S. 707 (1981) .......................................................................... 18

Toyota Motor Manufacturing v. Williams, 2002 U.S. LEXIS 400 (U.S. Jan. 8, 2002) .......................................................................... 44

United States v. Butler, 297 U.S. 1, 78 (1936) .................................... 14

University of Alabama v. Garrett, 531 U.S. 356, 121 S. Ct. 955 (2001) .......... 9-11

U.S. Term Limits, Inc. v. Thorton, 514 U.S. 779, 843 (1995) .................. 18

Walker v. Snyder, 213 F.3d 344 (7th Cir. 2000) ................................ 22

Warth v. Seldin, 422 U.S. 490, 95 S. Ct. 2197 (1975) .......................... 43

Western and Southern Life Insurance Co. v. State Bd. of Equalization
of California, 451 U.S. 648, 657-65 (1981) .................................................. 18

Whyham v. Piper Aircraft Corp., 96 F.R.D, 557 (M.D. Pa. 1982). ........................ 41

Wright v. City of Roanoke Redevelopment and Housing Authority,
479 U.S. 418, 107 S. Ct. 766 (1987) ................................................................ 27

STATUTES

Title XIX of the Social Security Act

42 U.S.C. § 1396 ..................................................................................... 1

42 U.S.C. § 1396r ............................................................................ 27, 29

42 U.S.C. § 1396r(b)(4)(A)(v) ............................................................ 31

The Americans with Disabilities Act

42 U.S.C. § 12101 ................................................................................ 10

42 U.S.C. §§ 12111-12117 ................................................................... 8

42 U.S.C. §§ 12131-12134 ................................................................... 1

42 U.S.C. § 12131(1)(A) ...................................................................... 8

42 U.S.C. § 12133 ............................................................................... 23

42 U.S.C. §§ 12201-12213 ................................................................... 8

Other Federal Statutes

29 U.S.C. § 701 .................................................................................. 13

29 U.S.C. § 701(a)(5) ......................................................................... 13

29 U.S.C. § 794a ................................................................................. 1

Civil Rights Act of 1871, 42 U.S.C. § 1983 ......................................................... 25

42 U.S.C. § 2000d-7 .................................................................................... 12

Regulations

28 C.F.R. § 35.130(b)(7) ............................................................................. 11

28 C.F.R. § 41.51(d) .................................................................................... 24

42 C.F.R. § 483.15(f) ................................................................................... 31

Federal Rules of Civil Procedure

Rule 12(b)(1) ............................................................................................... 32

Rule 12(b)(6) ............................................................................................... 33

## PROCEDURAL HISTORY

The Complaint in this action was filed by Plaintiff Pennsylvania Protection and Advocacy, Incorporated, ("PP&A, Inc.") neither as a class action nor with the participation of any named individuals on September 6, 2000. Defendants are the Commonwealth of Pennsylvania, Department of Public Welfare ("DPW"), and several DPW officials in their official capacities.

The original Complaint alleged various deficiencies in the operation of South Mountain Restoration Center ("SMRC"), a DPW-operated nursing home in Franklin County, PA. The Complaint also alleged that some of its residents should receive care elsewhere. The statutory causes of action asserted were: Title XIX of the Social Security Act, 42 U.S.C. § 1396; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134; and the Due Process Clause of the Fourteenth Amendment. Various regulatory violations were alleged as well. PP&A, Inc. requested declaratory and injunctive relief. Defendants answered on November 17, 2000.

On January 10, 2001, PP&A, Inc. moved to amend the Complaint by adding an additional Defendant, Governor Ridge. The motion was granted on April 3, 2001, over Defendants' objection. The Governor was served with the Amended Complaint on April 25, 2001. Defendants filed an Answer to the Amended Complaint on May 1, 2001.

1

The parties undertook extensive discovery.  In addition to interrogatories and requests for admissions propounded and answered by both sides, PP&A, Inc. provided four expert reports.  Defendants provided nineteen expert reports to support its position.

On November 29, 2001, PP&A, Inc. filed a Second Amended Complaint in which it 1) eliminated most of the complaints about the facility under Title XIX, and all of the Due Process Clause claims, 2) substituted Governor Richard Schweiker and Deputy Secretary Gerald Radke as Defendants for their respective predecessors, and 3) preserved the ADA and Section 504 claims.  In addition, Dr. Power, Chief Executive Officer of SMRC, is named as a Defendant only on the Title XIX claims.  All other Defendants are defendants on all claims.

On January 11, 2002, Defendants filed a Motion to Dismiss all counts, on the grounds that the Eleventh Amendment barred the relief sought, PP&A, Inc. lacked standing, and that PP&A, Inc. had failed to state a cause of action on which relief could be granted.  On January 14, 2002, Defendants received PP&A, Inc.'s Motion for Partial Summary Judgment. On January 22, 2002, this Court held a scheduling conference and entered the current scheduling order.

## **STATEMENT OF FACTS**

Pennsylvania provides an array of services to persons with mental disabilities who also are elderly and/or have medical needs.  Sec. Amend. Compl.

2

¶16.  While counties have primary responsibility to operate community-based

mental health and mental retardation services, Id. at ¶48,  the Department of Public

Welfare funds small community based programs developed by county offices that

allow mentally disabled persons to live in more home-like settings in their local

communities and to participate in community life to the maximum extent feasible,

Id. at ¶16b.

The Department of Public Welfare also provides funding to hundreds of

private nursing facilities, Id. at ¶16c, operates SMRC, Id. at ¶16d, a nursing home

with approximately 175 residents, Id. at ¶18, and operates specialized

geriatric/medical units on the sites of some of its psychiatric institutions, ¶16a.

Additionally, the Department of Aging provides community-based services and

housing options for impaired and chronically ill older persons designed to maintain

them in the community and avoid or delay institutional care.  71 P.S. § 581-

3(a)(17.1).

## STATEMENT OF QUESTIONS INVOLVED

1.  Are PP&A's claims barred by the Eleventh Amendment?

2.  Is Ex Parte Young relief available to enforce claims arising under the ADA
    or § 504 of the Rehabilitation Act?

3.  Does Title XIX of the Social Security Act provide a basis on which relief
    can be granted?

4.     Does § 504 of the Rehabilitation Act provide a basis on which relief can
       can be granted?

5.     Does PP&A have standing to bring this action?

# ARGUMENT

Since PP&A, Inc. filed this action in September 2000, there have been two major developments: one in the case, the other in the law. In the case, after discovery, PP&A, Inc. dropped most of its claims about conditions at SMRC.

As to the law, several appellate courts have, since the filing of the original complaint, held that Title II of the ADA did not abrogate states' sovereign immunity under the Eleventh Amendment. The Third Circuit in <u>South Camden Citizens in Action v. New Jersey Dept. of Envtl. Protection</u>, 274 F.3d 771 (3d Cir. 2001), held that there is no private right of action to enforce a regulation unless the right is implicit in the statute. <u>Koslow v. Commonwealth,</u> 158 F. Supp.2d 539 (E.D. Pa. 2001), appeal pending, raises new Eleventh Amendment barriers to relief under § 504.

Defendants submit that, taken together, these developments in the law compel prompt and favorable consideration of Defendants' motion. This is especially compelling where, as here, sovereign immunity is at the heart of the matter.[1] Defendants therefore request consideration of this Motion before the case

---

[1] As the United States Supreme Court has held, under the Eleventh Amendment, the state is entitled to an "<u>immunity from suit</u> rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial". <u>Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy,</u> 506 U.S. 139, 144, 11 S. Ct. 684, 687 (1993) (quoting <u>Mitchell v. Forsyth,</u> 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985)) (emphasis added).

moves to the much more complex and, it is submitted, unnecessary summary judgment stage.

## I.    PP&A'S CLAIMS AGAINST THE DEPARTMENT UNDER THE ADA AND THE REHABILITATION ACT ARE BARRED BY THE ELEVENTH AMENDMENT.

### A.    Introduction.

PP&A cannot maintain its claims under either the American with Disabilities Act (ADA) or the Rehabilitation Act. Any relief PP&A seeks against the Department of Public Welfare for violations of Acts is barred by the Eleventh Amendment. While Eleventh Amendment immunity may be lost in one of two ways -- a state may waive immunity or Congress may abrogate it -- neither circumstance exists here.

The Supreme Court has clearly established the principle that for Congress to validly abrogate states' immunity under Section 5 of the Fourteenth Amendment -- the only recognized authority for abrogation -- it must identify a history and practice of widespread unconstitutional actions and must tailor any legislative scheme to remedying or preventing such conduct. Neither the ADA nor the Rehabilitation Act identify any widespread unconstitutional conduct by the states. Further, as explained below, their legislative schemes are not tailored to prevent such conduct. Therefore, Congress has not validly abrogated the states' immunity with either statute.

Likewise the Rehabilitation Act's requirement that states waive their Eleventh Amendment immunity is invalid.  Government may not condition benefits upon the surrender of constitutional rights.  The Eleventh Amendment is a fundamental constitutional protection for the state and the provision of the Rehabilitation Act which seeks to compel states to waive it as a condition of receiving federal funds is void as an unconstitutional condition.

Beyond this, the Rehabilitation Act's waiver-of-immunity provision exceeds Congress' powers under the Spending Clause, because the states' waiver of immunity under the Act bears no relation to the federal interest in particular funding programs.

Defendants now turn a fuller explanation of these arguments.

**B.    PP&A's Claim Against the Department of Public Welfare Under Title II of the Americans with Disabilities Act is Barred by the Eleventh Amendment.**

The Eleventh Amendment states:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by the citizens of another state, or by citizens or subjects of any foreign state.

For over a century, the United States Supreme Court has made clear that ordinarily the Eleventh Amendment does not provide for federal jurisdiction over suit against

non-consenting states.  <u>Kimel v. Florida Board of Regents, et al.</u>, 528 U.S. 62, 73 (2000).

Eleventh Amendment immunity may be lost in one of two ways: a state may waive its immunity, or Congress may abrogate the state's immunity.  <u>Lavia v. Pennsylvania Department of Corrections</u>, 224 F.3d 190, 195 (3d Cir. 2000) (citing <u>College Savings Bank v. Florida Prepaid Post-Secondary Education Expense Board</u>, 527 U.S. 666, 670 (1999)).  Here, it cannot be maintained that Pennsylvania has waived its immunity to suit under the ADA.  As set forth below, neither has Congress validly abrogated that immunity under Section 5 of the Fourteenth Amendment.

The ADA begins with a series of legislative findings and a statement of purpose.  42 U.S.C. § 12101.  The statute then has a series of subchapters.  Subchapter I, 42 U.S.C. §§ 12111-12117 (Title I) concerns discrimination in employment.  Subchapter II is divided into two parts and concerns public services furnished by governmental entities (Title II).  Part A, 42 U.S.C. §§ 12131-12134 contains a general accommodation provision applicable to any "public entity" which is defined to cover "any state or local government."  42 U.S.C. § 12131(1)(A).  Subchapter III concerns public accommodations and services operated by private entities.  Subchapter IV, 42 U.S.C. §§ 12201-12213 contains

miscellaneous provisions.  One of those miscellaneous provisions purports to abrogate the states' immunity from suit in federal court.

In University of Alabama v. Garrett, 531 U.S. 356, 121 S. Ct. 955 (2001), the United States Supreme Court recently restated and reapplied the now familiar principles for determining whether Congress has validly exercised its Fourteenth Amendment's § 5 power to abrogate the States' constitutionally secured sovereign immunity.  The first of these principles is to identify the scope of the constitutional right at issue.  Id. at 963.  The next is to determine whether Congress identified a history and pattern of widespread unconstitutional actions by the States.  Id. at 964. Finally, if such a history and pattern of widespread unconstitutional state action is established, there must be congruence and proportionality between the unconstitutional conduct to be prevented or remedied and the means adopted to that end.  Id. at 966.  That is, to be a valid exercise of the Fourteenth Amendment's §5 power, Congress must "identify conduct transgressing the Fourteenth Amendment's substantive provisions and must tailor its legislative scheme to remedying or preventing such conduct."  Florida Prepaid Post Secondary Education Expense Board v. College Savings Bank, 527 U.S. 627, 739 (1999).

Garrett applied these principles to Congress' attempt to abrogate sovereign immunity in Title I of the ADA, 42 U.S.C. § 12111-12117 (concerning employment), and determined that the abrogation was invalid.  Here, the

9

application of each of these principles establishes that, just as with Title I,

Congress did not validly abrogate sovereign immunity under Title II.

First, the scope of the constitutional right at issue -- the right to the equal

protection of the disabled -- is the same for Title II as the Court in <u>Garrett</u>

determined was at issue in Title I.  The disabled are neither a suspect nor a quasi-

suspect class and legislation affecting their interest need only pass rational basis

review:  "States are not required by the Fourteenth Amendment to make special

accommodations for the disabled, so long as their actions toward such individuals

are rational."  <u>Garrett</u>, 121 S. Ct. at 964.

Second, the findings Congress relied upon for Title I, which did not support

the need for remedial legislation, are the same findings it relied upon for Title II.

Nowhere in those findings does Congress state that the states have been engaged in

any unconstitutional discrimination against the disabled.  <u>See</u> 42 U.S.C. § 12101

(a).  Indeed, the findings do not cite to a single case or study concerning state

discrimination and never use the word "unconstitutional."

Therefore, the conclusion of the Court in <u>Garrett</u> is as applicable to Title II

as it is to Title I of the ADA.  As the Court stated in <u>Garrett</u>:

> Had Congress truly understood this information
> as reflecting a pattern of unconstitutional behavior
> by the States, one would expect some mention of that
> conclusion in the Act's legislative findings.

<u>Id</u>. at 966.

As with Title I, the ADA's abrogation of sovereign immunity is invalid with respect to Title II.

Finally, Title II of the ADA is not reasonably tailored to remedying or preventing unconstitutional discrimination. In <u>Garrett</u>, the Supreme Court found that the reasonable accommodation requirement of Title I "far exceeds what is constitutionally required in that it makes unlawful a range of alternate responses that would be reasonable but would fall far short of imposing an 'undue burden' upon the employer." <u>Garrett</u>, <u>id</u>. at 966-977.

Title II's reasonable modifications requirement suffers from the same lack of congruence and proportionality. Like Title I, Title II excepts states from the reasonable modification requirement, but only where a state can demonstrate that such modifications would "[fundamentally alter]…the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). As with Title I, even with this exception, the modification duty far exceeds what is constitutionally required in that it makes unlawful a range of alternative responses that would be reasonable but would fall short of fundamentally altering the nature of the service, program or activity.

Rather than mandating that states refrain from irrational discriminatory conduct, as the Fourteenth Amendment requires, Title II of the ADA, like Title I, demands that the states engage in affirmative measures that surpass the

11

constitutional duties of the Fourteenth Amendment.  Such substantive changes

exceed Congress' § 5 power to enforce that amendment and constitute an invalid

abrogation of sovereign immunity.

Accordingly, because Congress has not tailored Title II to remedy

widespread Fourteenth Amendment violations by the States, it is an invalid

abrogation of the State's Eleventh Amendment immunity and PP&A's claim

against the Department premised on Title II must be dismissed.

### C.    PP&A's Rehabilitation Act Claim is Barred by the Eleventh Amendment.

Pursuant to the analysis detailed above, the Rehabilitation Act, like the

ADA, does not validly abrogate sovereign immunity.  In addition, the

Rehabilitation Act is not a valid exercise of Congress' spending power, because it

requires states to waive their immunity as a condition of receiving federal funds

and because the condition is not sufficiently related to the purpose for which

federal funds are provided to the Department of Public Welfare.  Accordingly,

claims against the Department based on the statute are also barred by the Eleventh

Amendment.

Section 2000d-7a(1) of Title 42 provides that "[a] State shall not be immune

under the Eleventh Amendment of the Constitution of the United States from suit

in Federal court for a violation of section 504 of the Rehabilitation Act . . . ."

Section 504 of the Rehabilitation Act in turn prohibits "any program or activity"

that receives federal funds from discriminating against a qualified individual with a disability, 29 U.S.C. §794(a); and defines "program or activity" as "all of the operations of . . . a[n] agency of a State . . . any part of which is extended Federal financial assistance." 29 U.S.C. § 794(b).

> **1.    The Rehabilitation Act is not a Proper Abrogation of the States' Eleventh Amendment Immunity.**

As set forth in Section I, <u>infra</u>, to be a valid exercise of § 5 power, Congress must identify a history and pattern of widespread unconstitutional state action and must tailor its legislative scheme to remedying or preventing such conduct. <u>Garrett</u>, 121 S. Ct. at 964-66. The Rehabilitation Act, also like the ADA, has detailed findings, a statement of purpose, and policy outlining the reasons for its enactment. <u>See</u> 29 U.S.C. § 701. Those findings, statements of purpose, and policy state that the disabled have historically been subjected to discrimination by society, 29 U.S.C. § 701(a)(5); that the nation should have as a goal to assure equality of opportunity for the disabled, <u>id</u>. at (a)(1)-(3), (a)(6) and (b); and that the nation should play a role in achieving that goal, <u>id</u>. at (c). These findings, statement of purposes, and policies do not claim that the discrimination against the disabled is the result of state action, let alone unconstitutional state action. Accordingly, precisely like the ADA, there is a complete absence of any evidence in Congress' findings, purposes, and policy of pervasive violations of the Fourteenth Amendment by the States concerning the disabled so as to justify a

prophylactic remedial enforcement measure that would abrogate the State's Eleventh Amendment Immunity.  Similarly, like the ADA, the rights and remedies of the Rehabilitation Act are not tailored to prevent unconstitutional conduct. Accordingly, like the ADA, the Rehabilitation Act is not a valid abrogation of the States' Eleventh Amendment Immunity.

### 2.      The Rehabilitation Act's Waiver Requirement is an Unconstitutional Condition.

In the Rehabilitation Act, Congress required that state agencies, as a condition of receiving any federal funds, waive their Eleventh Amendment immunity to all suits brought under the Rehabilitation Act.  These provisions are at bottom an "exercise of Congress' power under the Spending Clause."  U.S. Const., Art. I, § 8, cl. 1.  The question here is whether they exceed the permissible limits on that power.

The Supreme Court has long recognized that the spending power, while broad, cannot be "subject to no restrictions save such as are self-imposed."  United States v. Butler, 297 U.S. 1, 78 (1936).  In South Dakota v. Dole, 483 U.S. 203 (1987), the Court summarized several restrictions which had been articulated in its cases, two of which are relevant here:  (1) conditions on federal grants must not themselves violate any independent constitutional provisions, and (2) they must be related "to the federal interest in particular national projects or programs."  Id., at

207-08. The waiver-of-immunity requirement in the Rehabilitation Act violates both of these restrictions.

    a.   **The Rehabilitation Act Impermissibly Conditions the Provision of Federal Benefits on the Waiver of Eleventh Amendment Immunity.**

For over one hundred years the Supreme Court has repeatedly struck down governments' attempts to evade constitutional limitations placed on their powers by conditioning the receipt of benefits on the surrender of constitutional rights, or by penalizing those that exercise rights. <u>See</u> <u>Morse Insurance Co. v. Morse</u>, 87 U.S. 445 (1874) (the Court struck down a state law requiring foreign corporations to waive their right to remove litigation to federal courts as a condition of doing business within the state); <u>Leftokowitz v. Turley</u>, 414 U.S. 70 (1973) (eligibility for public contracts may not be conditioned on the contractor's waiver of Fifth Amendment rights); <u>Saenz v. Roe</u>, 526 U.S. 489 (1999) (state may not provide reduced welfare benefits to recipients who exercise the right to move from one state to another); and <u>Legal Services Corp. v. Velazquez</u>, 531 U.S. 533, 121 S. Ct. 1043 (2001) (Congress may not condition funding for legal services for the indigent on lawyers refraining from challenging the constitutionality of statutes).

The Court's classic formulation of this "unconstitutional conditions" doctrine appears in <u>Frost & Frost Trucking Co. v. Railroad Comm. of California</u>, 271 U.S. 583 (1926):

> [T]he state, having power to deny a privilege altogether,
> may grant it upon such conditions as it sees fit to impose.
> But the power of the state in that respect is not unlimited,
> and one of the limitations is that it may not impose
> conditions which require the relinquishment of
> constitutional rights. If the state may compel the
> surrender of one constitutional right as a condition of its
> favor, it may, in like manner, compel a surrender of all. It
> is inconceivable that guaranties embedded in the
> Constitution of the United State may thus be manipulated
> out of existence.

Id., at 593-94.

The earliest formulations of the doctrine came in response to state laws which are strikingly similar to the waiver-of-immunity condition in the Rehabilitation Act. Beginning in the nineteenth century, a number of states enacted laws which required foreign corporations, as a condition of doing business, to submit to the jurisdiction of the state courts. Foreign corporations had to agree that they would not invoke the federal removal statute in cases brought against them in the state courts and would not themselves file federal cases against local residents under the federal courts' diversity jurisdiction. The states, in other words, sought to use their economic leverage to force certain litigants to waive their immunity from suit in *state* court, just as Congress, in this case, seeks to use its economic leverage to force the states to waive their immunity from suit in *federal* court.

16

In a series of cases stretching over half a century, the Court struck down

these laws as attempts to impose unconstitutional conditions.  See Morse Insurance

Co. v. Morse, 87 U.S. 445 (1874); Barron v. Burnside, 121 U.S. 186 (1887); Terral

v. Burke Construction Co., 257 U.S. 529 (1922).  The Court in Morse expressed its

rationale succinctly:

> We are not able to discover in this case any countenance
> for the [state] statute ... which we are considering. ... The
> Constitution of the United States secures to citizens of
> another State than that in which suit is brought an
> absolute right to remove their cases into the Federal
> court.... The statute ... is an obstruction to this right ... and
> is illegal and void.

Id., 87 U.S. at 458.  Nor did it matter that the foreign corporation had agreed to

abide by the statute: "The agreement of the insurance company ... is void, as it

would be had no such statute been passed."  Id.  In Barron, the Court remarked that

"[i]t is apparent that the entire purpose of this statute is to deprive the foreign

corporation ... of the right conferred upon it by the constitution and laws of the

United States, to remove a suit."  Id., 121 U.S. at 197.  "As the ... statute makes the

right to a permit dependent upon the surrender ... of a privilege secured ... by the

constitution and laws of the United States, the statute requiring the permit must be

held to be void."  Id., at 200.

The Court recognized that the states could, if they wished, exclude foreign

corporations entirely, e.g., Terral, 257 U.S. at 532, and recognized as well that a

foreign corporation might, in any given lawsuit, decide to waive its removal rights.

E.g., Barron, 121 U.S. at 199. Nevertheless, the Court was firm that,

> a state may not, in imposing conditions upon a foreign
> corporation's doing business in the state, exact from it a
> waiver of the exercise of its constitutional right to resort
> to the federal courts, or thereafter withdraw the privilege
> of doing business because of its exercise of such right,
> whether waived in advance or not.

Terral, 257 U.S. at 532.

Since at least 1874, then, the Court has adhered to the principle that "a

person may not be compelled to choose between the exercise of a [constitutional]

right and participation in an otherwise available public program," Thomas v.

Review Bd. of Indiana Employment Security Div., 450 U.S. 707, 716 (1981), and

the Court has not altered its analysis of unconstitutional conditions.  Frost & Frost

Trucking Co.'s observation that "[i]t is inconceivable that guaranties embedded in

the Constitution of the United States may thus be manipulated out of existence,"

271 U.S. at 594, has been quoted with approval as recently as 1981, see Western

and Southern Life Insurance Co. v. State Bd. of Equalization of California, 451

U.S. 648, 657-65 (1981), and Terral has been cited as recently as 1995.  See U.S.

Term Limits, Inc. v. Thorton, 514 U.S. 779, 843 (1995) (Kennedy, J., concurring.)

There is no need to belabor the application of these principles to the waiver-

of-immunity provision in the Rehabilitation Act.  The Eleventh Amendment is a

"fundamental constitutional protection," Puerto Rico Aqueduct and Sewer

18

Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 145 (1993), "rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity. ... It thus accords the States the respect owed them as members of the federation." Id., at 146. The Rehabilitation Act's waiver-of-immunity provision strikes directly at that "constitutional protection" and "respect," but, as the Court said in Frost & Frost Trucking Co., "[i]t is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence." Id., 271 at 594.

The Rehabilitation Act's waiver-of-immunity provision, a mirror image of the waiver-of-immunity provisions struck down in the Morse line of cases, is like them an attempt to force a result at odds with our constitutional structure -- in the Morse line of cases, an attempt to force litigants *out* of the federal courts; here, an attempt to force them *into* the federal courts -- by using the government's economic power as a club with which to force "waivers" of constitutional rights. As such it is unconstitutional and cannot be the basis for this Court's jurisdiction over the Department.

> **b.    The Waiver Provision of the Rehabilitation Act Bears No Relationship to the Purposes for Which Federal Funding is Given to the Department of Public Welfare.**

In South Dakota v. Dole, the Court reiterated that "conditions on federal grants might be illegitimate if they are unrelated to the federal interest in particular

national projects or programs." Id., 483 U.S. at 207 (internal quotation marks

omitted); see Id., at 213 (O'Connor, J., dissenting) (agreeing that conditions "must

be reasonably related to the purpose of the expenditure"). In Dole, the Court held

that the condition at issue -- setting a minimum drinking age of twenty-one, as a

condition of receiving a specified portion of federal highway funding -- was

"directly related to one of the main purposes for which highway funds are

expended -- safe interstate travel." Id., at 208.  It is difficult to see how the same

can be said here.

In this case, the condition imposed by the Rehabilitation Act -- waiving

Eleventh Amendment immunity -- cannot reasonably be said to relate to the federal

interest in any "particular program."  The waiver-of-immunity condition does not

apply simply to lawsuits filed with respect to activities for which funding is

provided under the Rehabilitation Act, nor to activities funded under any other

particular grant, nor even to activities funded by *all* federal grants collectively.

Rather, it applies to *any* lawsuit arising under *any* activity -- whether federally

funded or not -- of an entity which receives *any* federal funding.  See 29 U.S.C. §

794(b) (defining "program or activity").  This cannot be what the Supreme Court

intended by the "relatedness" requirement.  For this reason as well, then, the

waiver-of-immunity provision is invalid.

20

## II. THE DOCTRINE OF EX PARTE YOUNG DOES NOT PERMIT PP&A TO ASSERT ITS ADA AND REHABILITATION CLAIMS AGAINST STATE OFFICIALS.

PP&A's claim for injunctive relief against state officials under the ADA and the Rehabilitation Act cannot succeed under the Ex Parte Young doctrine. Neither Act authorizes actions against state officials, which alone precludes the availability of Ex Parte Young. In addition, both the ADA and the Rehabilitation Act provide comprehensive statutory remedial schemes which likewise bar application of Ex Parte Young.

The Eleventh Amendment prevents suits in federal court against states or state officials if the state is the real party in interest. The amendment, however, does not bar suits under the exception established by Ex Parte Young, 209 U.S. 123 (1908). Under Young, a state official sued in his official capacity for prospective injunctive relief, is generally a person within Section 1983, and the Eleventh Amendment does not bar suit. Hindes v. Federal Deposit Insurance Corp., 137 F.3d 148, 165 (3d Cir. 1998).

A suit based upon Young is a suit against state officers, not against the State itself. Therefore the first question to be asked in applying the Ex Parte Young doctrine is whether the Department officials are proper defendants under either the

21

ADA[2] or the Rehabilitation Act.  Walker v. Snyder, 213 F.3d 344, 347 (7th Cir. 2000).  Title II of the ADA provides disabled individuals with a cause of action for discrimination by "a public entity."  42 U.S.C. § 12132.  That term as defined within the statute does not include individuals.  42 U.S.C. § 12131(1).  Accordingly, there is no personal liability under Title II of the ADA.  Alsbrook v. City of Mauelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1998) (en banc); Walker v. Snyder, 213 F.3d at 346.

Similarly, with respect to the Rehabilitation Act, that statute provides for suit against "any program or activity receiving federal financial assistance."  Section 504.  Accordingly, an individual is not a proper defendant under the Rehabilitation Act.  Lollar v. Baker, 196 F.3d 603, 609 (5th Cir. 1999).  The only proper defendant under either the ADA or the Rehabilitation Act is a public body.  A suit resting on the Ex Parte Young doctrine is not a suit against such a public body and therefore cannot support relief.  Walker v. Snyder, 213 F.3d at 347.

Even if individuals were proper defendants under either the ADA or the Rehabilitation Act, the Ex Parte Young doctrine would not be applicable to those statutes due to their breadth.  In Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996), the United States Supreme Court reiterated that "where Congress has

---

[2]The Court did reference Ex Parte Young in Garrett, supra, at *11, n.9.  However, n.9 was clearly dicta.

created a remedial scheme for the enforcement of a particular federal right, we

have in suits against federal officers refused to supplement that scheme with one

created by the judiciary." <u>Id</u>. at 74.  In that case the Court held that the same

general principle applies when the issue is whether the Eleventh Amendment bar

should be lifted by <u>Ex Parte Young</u> in order to allow a suit against a state officer.

> [W]here Congress has prescribed a detailed remedial
> scheme for the enforcement against *a state* of a
> statutorily created right, a court should hesitate before
> casting aside those limitations and permitting an action
> against a state officer based upon <u>Ex Parte Young</u>.

<u>Id</u>. (emphasis added).  The Court went on to hold that this principle applies even

where, as in that case, Congress was found not to have authority under the

Constitution to abrogate the State's sovereign immunity and make it subject to suit

under the statutory scheme in question.  <u>Id</u>. at 75.  "Nor are we free to rewrite the

statutory scheme in order to approximate what we think Congress might have

wanted had it known that [the scheme] was beyond its authority.  If that effort is to

be made, it should be made by Congress and not by the federal courts.  We hold

that <u>Ex Parte Young</u> is inapplicable . . . that suit is barred by the Eleventh

Amendment and must be dismissed for lack of jurisdiction."  <u>Id</u>. at 76.

      With respect to the ADA, Congress has provided Title II with detailed

means of enforcement that it imported from Title VII of the Civil Rights Act of

1964.  <u>See</u> 42 U.S.C. § 12133.  Similarly, with respect to the Rehabilitation Act,

Congress has provided a specific comprehensive internal enforcement mechanism

that it also imported from Title VII.  <u>See</u> 29 U.S.C. § 794a.  In light of these

provisions, other circuits have held that both the ADA and the Rehabilitation Act

were meant by Congress to be comprehensive remedial statutory schemes.

<u>Alsbrook v. City of Mauelle</u>, <u>supra</u>, at 1010-1011 (concerning the ADA); and

<u>Lollar v. Baker</u>, <u>supra</u>, at 609-610 (concerning the Rehabilitation Act).  Both the

ADA and the Rehabilitation Act are the type of comprehensive statutory remedial

schemes that bars application of <u>Ex</u> <u>Parte</u> <u>Young</u>.

**III.    SECTION 504 OF THE REHABILITATION ACT PROVIDES NO BASIS ON WHICH RELIEF CAN BE GRANTED; ONLY THE REGULATION -- NOT THE STATUTE -- CONTAINS AN "INTEGRATION" MANDATE; THE REGULATION, THEREFORE, IS UNENFORCEABLE IN A PRIVATE ACTION.**

In 1986, the Third Circuit expressly held that Section 504 does not obligate

states to provide community care for institutionalized persons with mental

disabilities.  <u>See</u> <u>Clark v. Cohen</u>, 794 F.2d 79, 84 n.3 (3d Cir. 1986) (Section 504

"imposes no affirmative obligations on the states to furnish services").  In 1995,

the Third Circuit, however, wrote in dictum that a regulation promulgated under

Section 504, 28 C.F.R. § 41.51(d) -- on which Plaintiff relies, <u>see</u> Sec. Amend.

Compl. ¶ 69[3] -- does require the provision of community services for some persons

with disabilities.  See Helen L. v. Didario, 46 F.3d 325, 332-335 (3d Cir. 1995).  In

2001, the Third Circuit held that 42 U.S.C. § 1983 provides no cause of action to

enforce a regulation except where the "interest is already implicit in the statute

authorizing the regulation."  South Camden Citizens in Action v. New Jersey Dep't

of Envtl. Protection, 274 F.3d 771, 774 (3d Cir. 2001) (citing Alexander v.

Sandoval, 532 U.S. 275, 121 S. Ct. 1511 (2001)).  For a right to be enforceable

through a private action, "Congress, and not an administrative agency or a court,

must create this right."  South Camden Citizens in Action, 274 F.3d at 790.

Abundant case law establishes that there is no community placement

mandate in Section 504 itself.  Statutory claims under Section 504 for community

placement were litigated not only in the Third Circuit, but in four other circuits,

without consideration of 28 C.F.R. § 41.51(d).  In each case, the Court rejected the

Section 504 community placement claim.  See Clark v. Cohen, 794 F.2d at 84 n.3;

P.C. v. McLaughlin, 913 F.2d 1033, 1038, 1041-42 (2d Cir. 1990); Kentucky

Ass'n for Retarded Citizens v. Conn., 674 F.2d 582, 585 (6th Cir. 1987); Plummer

v. Branstad, 731 F. 2d 574 (8th Cir. 1984); Phillips v. Thompson, 715 F.2d 365,

368 (7th Cir. 1983).

---

[3] Plaintiffs rely on other § 504 "integration" regulations as well.  See Sec. Amend.
Compl. ¶ 70, 71.  The analysis above of 28 C.F.R. § 41.51(d) yields the same result
with all the regulations: they cannot be enforced in a private action.

Not until the Third Circuit considered 28 C.F.R. § 41.51(d) in <u>Helen L. v.</u>

<u>Didario</u>, 46 F.3d at 331, 335, was Section 504 connected to any community

placement or "integration" mandate.  Thus, any "integration" mandate in 28 C.F.R.

§41.51(d) is found in the regulation *only*, not in the statute.  Surely, if such a

mandate existed, even implicitly, in the statute, at least one of the five appellate

courts considering such statutory claims would have been able to find it there.  But

none did.  <u>See Clark</u>, 794 F.2d 79; <u>P.C.</u>, 913 F.2d 1033; <u>Kentucky Ass'n for</u>

<u>Retarded Citizens</u>, 674 F.2d 582; <u>Plummer</u>, 731 F.2d 574; <u>Phillips</u>, 715 F.2d 365.

The text of § 504 does not mention "integration," and no appellate court has held it

implied in the statute.

Section 504 does not explicitly provide for any regulations at all.  <u>See</u>

<u>Helen L.</u>, 46 F.3d at 330 n.9.  Although legislative history of the ADA may be

viewed as post-promulgation approval by a subsequent Congress of the regulations

that were nevertheless promulgated, <u>see id</u>. at 332, this hardly amounts to the

authorization of a private right of action to enforce a mandate that can be found

solely in the regulation.  <u>Alexander</u> and <u>South Camden Citizens in Action</u> require

much more than after-the-fact acquiescence.  Congress did not in enacting Section

504 in 1973.  <u>See Clark</u>, 794 F.2d 79; <u>P.C. McLaughlin</u>, 913 F.2d 1033; <u>Kentucky</u>

<u>Ass'n for Retarded Citizens</u>, 674 F.2d 582; <u>Plummer</u>, 731 F.2d 574; <u>Phillips</u>, 715

F.2d 365.  And it could not do it in post-enactment legislative "history."  <u>See, e.g.,</u>

Pension Benefit Guaranty v. LTV, 496 U.S. 633, 650, 110 S. Ct. 2668

(1990)(subsequent legislative history "is a hazardous basis for inferring the intent

of an earlier Congress").

IV.    **TITLE XIX OF THE SOCIAL SECURITY ACT PROVIDES NO
BASIS ON WHICH RELIEF CAN BE GRANTED**.

    A.    **PP&A, Inc., Cannot Maintain a Section 1983 Action to Enforce
Title XIX of the Social Security Act, Because the Statutory
Sections Cited By Plaintiff Do Not Grant a "Federal Right."**

PP&A, Inc., cannot maintain a Section 1983 action based on the

Department's alleged violations of Section 1396r, 42 U.S.C. § 1396r, because

nothing in that statutory section grants PP&A, Inc., the "federal right" necessary to

bring a Section 1983 enforcement action. Because PP&A, Inc., has no federal

right under Section 1396r, PP&A, Inc.'s, Section 1983 claim must be dismissed. It

is accepted that certain rights created by federal statutes are enforceable through a

Section 1983 action. Maine v. Thiboutot, 448 U.S. 1, 6-8, 100 S. Ct. 2504,

2505-06 (1980). However, this remedy is not available "where the statute did not

create enforceable rights, privileges, or immunities within the meaning of § 1983."

Wright v. City of Roanoke Redevelopment and Housing Auth., 479 U.S. 418, 423,

107 S. Ct. 766, 770 (1987). Thus, "because § 1983 speaks in terms of 'rights,

privileges, or immunities,' not merely violations of federal law, only 'federal rights' are enforceable under § 1983." <u>Wright</u>, 479 U.S. at 423, 107 S. Ct. at 770).[4]

The Supreme Court has established a three-prong test for determining when a federal statute creates an individual right that may be enforced through a Section 1983 action:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

<u>Blessing v. Freestone</u>, 520 U.S. 329, 340-41, 117 S. Ct. 1353, 1359-60 (1997).

PP&A, Inc.'s, Section 1983 action must fail because its asserted "rights" do not meet the first and third prongs of the <u>Blessing</u> test. First, nothing in Section 1396r indicates that PP&A, Inc., the sole plaintiff in this case, is an intended beneficiary of that section's statutory provisions. Instead, the provisions may be fairly characterized as either: 1) provisions detailing the type and quality of care required for institutional residents, provisions intended to benefit those residents; or 2) provisions setting forth administrative and technical requirements

---

[4] Plaintiff also has no cause of action against Defendants as a nursing home Medical Assistance provider. <u>See</u> <u>Brogdon Ex Rel. Cline v. National Healthcare</u>,

for institutions and governments, which provisions, while ultimately benefiting institutional residents, are primarily designed to ensure that institutions perform required functions in a lawful, efficient, and economical manner.  For example, subsections 1396r(b) (Requirements relating to provisions of services), 1396r(c) (Requirements relating to residents' rights), and some parts of 1396r(d) (Requirements relating to administration and other matters) set forth resident-care requirements that directly benefit those residents.  Those subsections do not mention and have nothing to do with PP&A, Inc., or any similar organizations.

Similarly, some parts of subsection 1396r(d), for example, subsections 1396r(d)(1)(B) (ownership changes) and 1396r(d)(4) (adherence to other laws) address aspects of the relationships between the state and federal governments, and participating institutions. The same can be said for subsections 1396r(e) (State requirements relating to nursing facility requirements) and 1396r(f) (Responsibilities of Secretary relating to nursing facilities).  Nothing in these administrative and technical provisions is intended to benefit PP&A, Inc.; thus, PP&A has no enforceable federal right in Section 1396r.

Nor can PP&A, Inc., satisfy the third prong of the test cited in <u>Blessing v. Freestone</u>:  the statutory sections cited by PP&A, Inc, do not "impose[] a binding obligation upon the State." <u>Blessing</u>, 520 U.S. at 341, 117 S. Ct. at 1360.  In

103 F. Supp.2d 1322, 1332 (D. Ga. 2000), <u>recons. denied, modified,</u> 2000 U.S.

29

regard to this prong, one must distinguish two functions performed by DPW in the Medical Assistance program. First, to the degree that DPW performs the function of Medical Assistance payor, making payments to providers in exchange for the provision of care-giving services, DPW does not have binding obligations in relation to the care of SMRC residents. The requirements for resident care contained in Section 1396r are directed towards the nursing-home providers, not DPW as the Medical Assistance payor. Second, to the degree that DPW acts as the provider itself, i.e., in its capacity as operator of SMRC, PP&A, Inc., cannot seek enforcement of the obligations contained in Section 1396r, because the Medicaid Act, 42 U.S.C. § 1396 et seq., does not provide a private cause of action to sue the owners or operators of nursing facilities. See Brogdon v. National Healthcare, 103 F. Supp.2d 1322, 1326 (D. Ga. 2000).

PP&A cannot meet the first and third prongs of the test cited in Blessing v. Freestone for establishing that a federal right exists that may be enforced through a Section 1983 action. PP&A, Inc., cannot show that the statutory sections on which it relies were intended to benefit PP&A or any similar organization. PP&A, Inc., cannot show that the statutory sections on which it relies impose any binding obligations on DPW or the other Defendants. PP&A, Inc., has not established that it has a "federal right" that may be enforced through Section 1983. Therefore,

Dist. LEXIS 9014 (D. Ga. June 26, 2000).

PP&A, Inc.'s, claims contained in paragraphs 60-62 of the Second Amended Complaint should be dismissed.

**B.    Regulations are not Privately Enforceable.**

PP&A, Inc., also cannot assert that the regulations implementing Section 1396r of the Social Security Act create the "federal right" necessary to sustain its Section 1983 action.  In a recent opinion of the Court of Appeal for the Third Circuit, the court held that, for purposes of Section 1983 actions, regulations cannot create federal rights that are not already contained in the enabling federal statute.  <u>South Camden Citizens in Action v. New Jersey Department of Environmental Protection</u>, 274 F.3d 771, 790 (3d Cir. 2001).

While space limitations here preclude a comparison of each statutory section cited by PP&A, Inc., with each statutory section's associated regulation, the first statutory section and regulation, cited in paragraph 62 of the Second Amended Complaint, illustrates this point.  Title 42, Section 1396r(b)(4)(A)(r), permits states to meet statutory requirements for activities in a wide variety of ways.  The regulation found at 42 C.F.R. § 483.15(f) imposes very specific requirements on nursing facilities, requirements not found in the statute.  <u>South Camden</u> therefore forbids private enforcement of the regulation.  For these reasons, PP&A, Inc.'s, claims in paragraphs 60-62 of the Second Amended Complaint should be dismissed.

## V.    PP&A, INC. DOES NOT HAVE STANDING.

### A.    Subject Matter Jurisdiction Must Be Found in the Pleadings Before There Can Be a Determination of the Merits.

Where, as here, a motion to dismiss presents a "facial" attack, under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto...." Gould Elecs. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).[5]

Notwithstanding the recent filing of Plaintiff's Motion for Partial Summary Judgment, Defendants' facial challenge to subject matter jurisdiction precludes application of a summary judgment standard of review, See, Pension Benefit & Guaranty v. White Consolidated Industries, 998 F.2d 1192, 1196 (3d. Cir. 1993), and Hunter v. United States, 2000 U.S. Dist. LEXIS 20206 (M.D. Pa. Dec. 15, 2000). (following Judge Posner's sound rationale).[6]

The requirement that jurisdiction be established as a threshold matter is "inflexible and without exception." Steel Co. v. Citizens for a Better Env't. 523 U.S. 83, 118 S. Ct. 1003, 1012 (1998). Thus, jurisdiction must be found *before* the court can have *authority* to reach the merits of the case.

---

[5] Defendants assert a purely "facial" attack on jurisdiction as in Pennsylvania Protection & Advocacy, Inc. v. Houstoun, 136 F. Supp.2d 353 (E.D. Pa. 2001).

[6] Judge Posner, in Crawford v. United States, 796 F.2d 924, 928 (7th Cir. 1986), explained: "The omission from the Federal Rules of Civil Procedure of a provision for converting a 12(b)(1) motion into a summary judgment motion [even] if evidence is submitted with it was not an oversight."

In determining jurisdiction on the face of the complaint as a threshold matter, the presumption of truthfulness afforded to pleadings "does not force courts to credit 'bald assertions,' 'unsupported conclusions,' 'unwarranted inferences,' or 'legal conclusions masquerading as factual conclusions.'" Pennsylvania Protection and Advocacy, 136 F. Supp.2d at 359 (*quoting* Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court presume that the plaintiff, as here, can prove facts it has not alleged.  Id. *citing* City of Pittsburgh v. West Penn Power, 147 F.3d 256, 263 (3d Cir. 1998).

In order for there to be jurisdiction, PP&A, Inc., must pass two tests:  first, the Article III test and second, the test for associational standing.  Moreover, when the Court reviews the Complaint to determine if the corporate plaintiff passes the two tests, it does so with limited discretion.

**B.    Article III Standing Generally.**

Article III, Section 2, of the United States Constitution limits jurisdiction in federal courts to actual cases or controversies.  This includes cases for injunctive relief.  Philadelphia Fed'n of Teachers v. Ridge, 150 F.3d 319 (3d Cir. 1998).  The primary element of this requirement is that the plaintiff, *based on its complaint*, must establish that it has standing to sue.  Fair Housing Council v. Montgomery Publ'g, 141 F.3d 71, 74 (3d Cir. 1998).

In order to satisfy this "irreducible constitutional minimum," the plaintiff

must sufficiently plead the following:

> [**First** and foremost] an injury that is (a) concrete and
> particularized; and (b) actual or imminent, <u>not</u>
> <u>conjectural</u> or hypothetical; **second**, there must be a
> causal connection between the injury and the conduct
> complained of ... the injury [must be] fairly <u>traceable</u> to
> the challenged action of the defendant, and not the result
> of the independent action of some third party not before
> the court. **Third**, it must be <u>likely</u>, as opposed to merely
> speculative, that the injury will be redressed by a
> favorable decision.

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136

(1992)(emphasis added). These obviously are tough standards and even after three

complaints, Plaintiff fails to meet them either by alleging the requisite injury to

itself or to any person. Meeting the standards is all the more important because the

corporate plaintiff has no participants and does not even allege anyone wanted it to

file this suit. Therefore the failure to properly allege injury is fatal. <u>See Lujan</u>, 504

U.S. at 360-61, 112 S. Ct. at 2136.

### C.    PP&A, Inc. Lacks Standing on its Own Behalf.

The Court first must determine if PP&A, Inc. has satisfied the standing

requirements for itself as an injured entity, established by this circuit in <u>Fair</u>

<u>Housing Council v. Montgomery Publishing</u>, 141 F.3d at 74. With respect to

itself, however, PP&A, Inc. makes absolutely no allegation of injury. <u>See, e.g.,</u>

<u>Alexander v. Riga</u>, 208 F.3d 419, 427 (3d Cir. 2000) ("organization 'stopped

34

everything else' and devoted all attention to [the] case.") <u>Pennsylvania Protection</u>

<u>and Advocacy v. Houstoun</u>, 136 F. Supp.2d 353, 361 (E.D. Pa. 2001) (necessity of

at least alleging injury to organization itself from expenditure of money and other

resources).  Absent injury, PP&A, Inc. has no standing on its own behalf..

> **D.    PP&A, Inc. Lacks Standing to Bring this Action as an Association on Behalf of Others:  Either SMRC Residents or Non-Residents.**

PP&A, Inc. apparently purports to represent not only residents of SMRC but

non-residents as well.  Sec. Amend. Compl. ¶ 71b.  To represent anyone else,

PP&A, Inc. must first overcome the Article III threshold for standing set forth.

Defendants' Brief at 34.  Then, it must satisfy the three-prong test for associational

standing established by the Supreme Court in <u>Hunt v. Washington State Apple Ad</u>

<u>Com</u> 432 U.S. 333, 97 S. Ct. 2434 (1977).  An association has standing to bring

suit for others in very limited circumstances when:

> (a) its members would otherwise have standing to sue in
> their own right; (b) the interests it seeks to protect are
> germane to the organization's purpose; and (c) neither
> the claim asserted nor the relief requested requires the
> participation of individual members in the lawsuit.

<u>Hunt</u>, 432 U.S. at 343, 97 S. Ct. at 2441.

Suing by itself, the corporate plaintiff is required to show that at least one

person it purports to represent otherwise has standing.[7]  <u>Doe v. Stincer</u> 175 F.3d

---

[7] There has not been a request for class certification with the protections afforded
by Fed. R. Civ. P. 23 or even a single resident or nonresident named as a party to

879 (11th Cir. 1999).  See also Tennessee Protection and Advocacy v. Board of Educ., 24 F. Supp.2d 808 (D. Tenn. 1998) (standing denied due to the organization's failure to sufficiently allege an injury in fact to any identifiable individual).

**1.    PP&A, Inc. Lacks Standing to Bring this Action on Behalf of SMRC Residents Whom it Claims Should Reside Elsewhere.**

**a.    PP&A, Inc. Fails to Plead Standing for Even One SMRC Resident, Thus Failing the First Prong of the Hunt Test.**

To satisfy the first prong of the Hunt test, Defendants' Brief at 35, PP&A, Inc.'s pleading must show that at least one of its members would have standing meeting the three requirements set forth in Lujan v. Defenders of Wildlife:  (i) injury; (ii) causal connection; and (iii) likelihood of redress.  504 U.S. at 560-61, 112 S. Ct. at 2136.  Defendants' Brief at 34.  As explained below the complaint does not meet these requirements.

**i.    No injury in Fact**

As a preliminary matter, in order for PP&A, Inc. to make out the requisite concrete, particularized injury, its pleading obviously must contain a standard, the violation of which is alleged to have resulted in the injury sought to be redressed.  But it does not.  The standard for determining whether a resident should be removed from an institutional setting was articulated by the United States Supreme

this action.  Moreover, there is no allegation that any resident, or nonresident,

Court in <u>Olmstead v. L.C.</u>, 527 U.S. 581, 119 S. Ct. 2176 (1999).  The Court held

that the two patients who were participants in the litigation had a qualified right to

placement only when: (a) the state's treatment professionals determined that

community placement is appropriate, (b) the patients did not oppose the transfer

from institutional care to a less restrictive setting, and (c) such placement" can be

reasonably accommodated, taking into account the resources available to the State

and the needs of others with mental disabilities." <u>Id.</u>, at 607, 119 S. Ct. at 2181.

Plaintiff must allege on an <u>individual resident basis at minimum that</u>:  (1) that

alternate placement is "appropriate" and  (2) the transfer is not opposed by a

particular affected individual it purports to represent.[8]  "Appropriate" is explained

by the Court as a setting which the particular individual can *handle* and from

which he or she will *benefit,* while emphasizing "that nothing in the ADA or its

implementing regulations condones termination of institutional settings for persons

unable to handle or benefit from community settings."  527 U.S. at 601-02, 119 S.

Ct. at 2187.  Noting that "the ADA is not reasonably read to impel States to phase

out institutions, placing patients in need of close care at risk." <u>Olmstead</u>, 527 U.S.

at 604, 119 S. Ct. at 2189, other federal courts have recognized the <u>Olmstead</u>

---

family member or guardian asked PP&A, Inc. to file this suit on their behalf.
[8] These prongs being cumulative, the third is not reached unless both of the first
two prongs are made out by the Plaintiff on the face of the complaint.  It is also
obvious from the plain language of the opinion that individual evaluation and
participation are intended and necessary.  <u>Id.</u> at 2183.

standard requires alternate placement only if the individual can handle and benefit from that setting.  <u>See</u> <u>Williams v. Wasserman</u>, 164 F. Supp.2d 591, 630 (D. Md. 2001 and see <u>Lewis v. New Mexico Dep't of Health</u>, 94 F. Supp.2d 1217, 1238 n.7 (D.N.M. 2000) <u>aff'd on other grounds</u>, 261 F.3d 970 (10th Cir. 2001).

Accordingly, a determination of individual injury must involve a comparison of this standard to each individual.  The complaint, however, does not.  The corporate plaintiff only mentions four of the one hundred seventy-five individuals, Sec. Amend. Compl., ¶¶ 55, 56, 58, 59, and fails to address the <u>Olmstead</u> test for any.  About this, two things are key from the face of the Complaint:  First, the four residents are uniquely different from one another; Next, it is both remarkable and unusual that some award for each unique individual is sought without the participation of anyone of them.[9]

Even the most favorable reading of the Complaint reveals no injury is sufficiently alleged or can be reasonably inferred.  <u>See</u>, <u>e.g.</u>, Sec. Amend. Compl. ¶ 55 ("C.L. will ***probably*** need additional mental health services . . . ), ¶ 56 ("there are persons . . . who have ***similar medical needs*** who do live in the community"), (emphasis added).  Moreover, the <u>Olmstead</u> standard is not alleged to be violated for anyone.  No allegation, for example, is made that C.L. would benefit from or

---

[9] Other than <u>Doe v. Stincer</u>, 175 F.3d 879 (11th Cir. 1999), Defendants are unaware of any case of this kind in which the P&A has no individual participants in the suit.

could even handle a placement, or that she is not opposed, to transfer (albeit to an unidentified setting).  See Sec. Amend Compl. ¶ 55.  Rather, PP&A, Inc. acknowledges that Defendants' treatment professionals have already made multiple placement attempts and does not allege it is Defendants' fault that C.L. remains at SMRC.  Thus, it can as readily be inferred that someone other than Defendant is responsible, and not in violation of any law, for her remaining at SMRC (e.g., legitimate decision of unidentified private nursing home, personal care home, or C.L. herself).  Nor does PP&A, Inc. allege, even generally, where it claims she should be or what "concrete and particularized" injury she suffers from not being in such a (unknown) place.  [Lujan at 504 U.S. at 561].

As to the other three, PP&A, Inc. acknowledges that  R.L.'s treatment professionals have determined that alternate placement was *not* appropriate.  Sec. Amend. Compl. ¶ 56.  This determination which is required to be given deference belies any claim of injury.  Olmstead, 527 U.S. at 602, 119 S. Ct. at 2188.  Plaintiff also fails to mention if R.L. opposes transfer.  Rather than alleging a concrete and particularized injury to R.R., or the ability to handle or benefit from placement, PP&A, Inc., only says he is "appropriate for community placement."  Sec. Amend. Compl. ¶ 58.  Such bald assertions are not entitled to any presumption of truthfulness, Morse v. Lower Merion School Dist., 132 F.3d at 906, or to any deference from the court, Olmstead, 527 U.S. at 602, 119 S. Ct. at 2188.

Similarly as to resident J.B., Plaintiff admits J.B.'s treatment professionals have not recommended him for discharge. Sec. Amend. Compl. ¶ 59. The corporate plaintiff baldly claims J.B. wants to live elsewhere but with no indication of where, or that he (or any other resident), could handle or would benefit from the unknown placement. See Olmstead, 527 U.S. at 601-02, 119 S. Ct. at 2187. Nor does PP&A, Inc. claim that the transfer of any of the four could reasonably be accommodated. Consequently, no concrete and particularized injury is alleged for anyone.

**ii)    No Injury Caused by Defendant**

Even if the court can find a "concrete and particularized" injury, it must determine that PP&A, Inc. has alleged a connection between such injury and the identified conduct of a named Defendant. PP&A, Inc., however, alleges no connection. In the Third Circuit, the conduct complained of *must* be the *cause-in-fact* of a plaintiff's alleged injury in The Pitt News v. Fisher, 215 F.3d 354 (3d Cir. 2000). In The Pitt News, the court analogized the "traceability" requirement for Article III standing to that of the causation element in tort law, and thus, adopted the "but-for" test.[10] The Complaint here reveals that plaintiff admits that the alleged injury results not from the action of any defendant but from parties not

---

[10] In light of the decision in The Pitt News, this Court's prior rejection of the "but for" test in Harrisburg Hosp. v. Thornburgh, 616 F. Supp. 699, 703 (M.D. Pa. 1985), no longer applies.

before the court.  See Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 96

S. Ct. 1917 (1976).  PP&A, Inc., claims, for example, that some unidentified

private nursing homes "refuse to accept persons with serious mental disabilities, "

and that some (unnamed) counties "have not developed any or sufficient numbers

of community alternatives . . . .," Sec. Amend. Compl. ¶ 47. Id. ¶ 71(a).[11]

    The complaint does not show that "But-for" the alleged conduct of any

named Defendant, any identified individual would be in any other identified

program from which he or she could benefit and handle according to his or her

unique and individual needs.  See Olmstead, 527 U.S. at 605, 119 S. Ct. at 2189

and compare, Bennett v. Spear, 520 U.S. 154, 117 S. Ct. 1154 (1997) (plaintiffs'

injury fairly traceable to the actions of the governmental defendant).

### iii)    No Redressability

    Assuming, arguendo, that this Court finds a concrete and particularized

injury traceable to a Defendant, PP&A, Inc. would still lack standing because the

Complaint fails to plead no such injury would "likely" be redressed by a decision

---

[11] While Plaintiff has not specified its injunctive relief sought, it can be inferred
that Plaintiff seeks an order that DPW require counties to develop additional
community services, see Sec. Amend. Compl. ¶ ¶ 47-49, and that DPW require
nursing facilities to accept persons with serious mental disabilities, Id., at ¶ 71(a).
Such relief would, however, affect the counties' and nursing homes' interests such
that they would be deemed indispensable parties in accordance with Fed. R. Civ. P.
19. See, e.g., Whyham v. Piper Aircraft Corp., 96 F.R.D, 557 (M.D. Pa. 1982).

41

favorable solely to the corporate plaintiff. See Lujan, 504 U.S. at 560-61, 112 S. Ct. at 2136.

The redressability prong of the standing test "is meant to ensure that the facts involved in a suit are conducive to judicial resolution and are likely to be resolved by court action." Anjelino v. New York Times Co., 200 F.3d 73, 89 (3d Cir. 1999) (citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S. Ct. 752, 758, (1982)). This is not possible here. This prong requires finding in the Complaint the "causal connection between the alleged injury and the judicial relief requested in the complaint." Allen v. Wright, 468 U.S. 737, 753 n.19, 104 S. Ct. 3315, 3325 n.19 (1984).

It is purely speculative that the relief sought would redress any alleged injury. For example, although PP&A, Inc. says "there appear to be no efforts to develop [an unspecified] community program for [R.R.]," it does not identify R.R.'s needs, the needed program or even a need for the development of any such program. In fact, it alleges that such programs are already in existence. Sec. Amend. Compl. ¶ 16 and ¶ 58 ("individuals who exhibit similar behaviors can and do live in community programs").

More importantly, given the limitation on states' resources, recognized by Olmstead, it is even more speculative that any resident would be among those who

42

would be included in any program (being unidentified as to characteristics or cost).
See Olmstead, 527 U.S. at 610, 119 S. Ct. at 2192 (courts must take into account
the resources available to the State, the needs of others with mental disabilities, and
the State's obligation to equitably mete out such services).  Since the Complaint
asserts that there are other similar persons for whom community services are
appropriate Sec. Amend. Compl. ¶ 49, such speculation fails to meet the Supreme
Court's redressability standard.  See, e.g., Linda R.S. v. Richard D., 410 U.S. 614,
93 S. Ct. 1146 (1973) (receipt of unpaid support unlikely from injunction seeking
prosecution of non-paying parent).  See also Warth v. Seldin, 422 U.S. 490, 95 S.
Ct. 2197 (1975)(availability of low-income housing unlikely from request to
invalidate zoning ordinance).  For no resident, does the Complaint show that
redress is likely as opposed to merely speculative.

Moreover, because in the three complaints it has filed, PP&A, Inc., has been
unwilling or unable to join any person seeking relief or to pass the tests to establish
associational standing, its complaint must be dismissed.

**b.    The Second Amended Complaint Fails to Show That This
Action is Germane to PP&A Inc.'s Purpose.**

Even if this Court finds the above tests are met, PP&A, Inc., still lacks
standing for the independent additional reason that the action is not germane to its
(unstated) purpose.  Indeed, germaneness has not been found where the interests of
the association might actually be at odds with the interests of some of its members.

43

See Southwest Surburban Bd. of Realtors, Inc. v. Beverly Planning Ass'n Area, 830 F.2d 1374, 1987 (7th Cir. 1987); Retired Chicago Police Ass'n v. City of Chicago, 76 F.3d 856, 867 (7th Cir. 1996) ("the proper prong under which to consider the impact of conflicts of interest is the second, "germaneness" prong"). In the case of two of the only four residents it identifies, PP&A, Inc., does not even allege that the individuals do not oppose the transfers that the corporate plaintiff wants. See Sec. Amend. Compl. ¶¶ 55-56, 58-59. PP&A, Inc., thus cannot aver their interests are the same. Where, as here, an association does not have standing on its own and not one person in its entire Complaint is even alleged to support the association's purpose, the action cannot, on the face of the complaint, be germane. NCAA v. Califano, 622 F.2d 1382, 1391-92 (10th Cir. 1980).

### c. The Claim Asserted and the Relief Requested Require the Participation of Individual Members in the Lawsuit.

Even if all other tests are met, individual participation is required. Although PP&A, Inc. claims to bring this action on behalf of "all residents at SMRC," Sec. Amend. Compl. ¶ 8, and ostensibly on behalf of all persons with serious mental disabilities, Sec. Amend. Compl. ¶¶ 47, 49-50, 69(d), and 71(b), each claim asserted under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, requires an individualized analysis, see Toyota Motor Mfg. v. Williams, 2002 U.S. LEXIS 400 (U.S. Jan. 8, 2002), as does the requested relief. See Olmstead, 527 U.S. at 595, 119 S. Ct. at 2184. In fact, the U.S.

44

Supreme Court in <u>Olmstead</u>, where the individuals were parties, recognized that community placement must be appropriate for "*that individual*" and "*that patient's*" needs") <u>Id.</u>, 119 S. Ct. at 2184 (emphasis added).  Here, the Complaint merely demands that nursing home residents of SMRC, with serious and individually unique needs, be transferred to unidentified community programs. <u>See</u> Sec. Amend. Compl. ¶¶ 56 and 58.  The corporate plaintiff's bald assertion overlooks the unique nature of the individuals which appears on the face of its own Complaint.  <u>See</u> <u>e.g.</u>, Sec. Amend. Compl. ¶¶ 55-56 and 58-59, and the Olmstead requirement of individual assessment.  <u>Id.</u> at 2184.  Individual assessment  is particularly necessary when, as here, the disability varies widely from person to person.  <u>See</u> <u>Toyota Motor Manufacturing</u>, at *13.  Where, as here, there exist complex questions of fact in a suit seeking injunctive relief, individual participation is essential.  <u>See</u>, <u>e.g.</u>, <u>Southwest Suburban Bd. of Realtors v. Beverly Area Planning Ass'n</u>, 830 F.2d 1374 (7th Cir. 1987).

> **2.    PP&A, Inc. Lacks Standing to Present Claims on Behalf of Any Nonresidents of SMRC.**

PP&A, Inc. also purports to challenge Defendants on behalf of unidentified nonresidents of SMRC (i.e., "*all* persons with serious mental disabilities").  <u>See</u> Sec. Amend. Compl. ¶ 71(b) (emphasis added).  To pursue claims on behalf of all nonresidents the Complaint must identify at least one who would have standing. But it does not.  <u>See</u>, <u>e.g.</u>, <u>Doe v. Stincer</u>, 175 F.3d 879 (11th Cir. 1999)

(recognizing that even though an organization may bring suit on behalf of anonymous members, it must show how an identified constituent has been harmed by the conduct complained of).  See also Tennessee Protection and Advocacy v. Board of Educ., 24 F. Supp.2d 808 (D. Tenn. 1998) (standing denied due to the organization's failure to sufficiently allege an injury-in-fact to any identifiable individual).[12]

Consequently, PP&A, Inc.'s, allegations pertaining to nonresidents amount to nothing more than insufficient, vague, and generalized attacks.  See, e.g., Sec. Amend. Compl. ¶ 45 ("*Many persons* with serious mental disabilities . . . can live in their communities . . . Nursing facilities are not the most integrated settings appropriate for *their* needs. . . . ).  Because the corporate plaintiff lacks standing to represent any nonresident, all claims asserted on behalf of nonresidents, see Sec. Amend. Compl. ¶¶ 45, 49-50, 69(d), and 71(b), must be dismissed for lack of jurisdiction.

---

[12] Tennessee Protection and Advocacy v. Board of Educ. was decided in the Sixth Circuit, with which the Third Circuit has aligned itself in regard to a heightened threshold for establishing injury in fact for purposes of Article III standing.  See Fair Housing Council v. Montgomery Publ'g , 141 F.3d 71 (3d Cir. 1998). Therefore, the analysis and holding in Tennessee are instructive here.

## VI.  **CONCLUSION**

For each and all of the independently sufficient reasons set forth in this brief,

Defendants request that this Honorable Court grant Defendants' Motion to

Dismiss, thereby dismissing PP&A, Inc.'s action in its entirety.

Feb 5, 2002

Respectfully submitted,


Thomas Blazusiak
Senior Assistant Counsel



Howard Ulan
Senior Assistant Counsel


Michael Harvey
Senior Deputy Attorney General

47

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PENNSYLVANIA PROTECTION AND   :
ADVOCACY, INC.,    :
              Plaintiff,    :

                             :    C.A. No. 1:00-cv-1582

        v.    :

                             :    (Judge William W. Caldwell)

DEPARTMENT OF PUBLIC WELFARE:
OF THE COMMONWEALTH OF    :
PENNSYLVANIA, et al.,    :
              Defendants.    :

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a copy of the foregoing document

upon the person below in the manner indicated.

Service by ~~First Class~~ *UPS overnight* Mail addressed as follows:

> Robert W. Meek, Esquire
> Disabilities Law Project
> 1315 Walnut Street, Suite 400
> Philadelphia, PA   19107-4798

_____
Howard Ulan
Senior Assistant Counsel

Date: 2/5/02

Department of Public Welfare
Office of General Counsel
3rd Floor West, Health & Welfare Building
Harrisburg, PA   17120
(717) 783-2800