FILED
HARRISBURG, PA

FEB 25 2002

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

PENNSYLVANIA PROTECTION AND
ADVOCACY, INC.,

        Plaintiff,

        v.                        Civil Action No. 1:CV-00-1582

DEPARTMENT OF PUBLIC WELFARE    (Judge William W. Caldwell)
OF THE COMMONWEALTH OF
PENNSYLVANIA, et al.,

        Defendants.

---

**EXHIBITS IN SUPPORT OF PLAINTIFF'S BRIEF
IN OPPOSITION TO DEFENDANTS' APPLICATION
FOR STAY OF PROCEEDINGS OR, IN THE ALTERNATIVE,
<u>REQUEST FOR ENLARGEMENT OF TIME</u>**

Robert W. Meek                           Mark J. Murphy
Robin Resnick                            Disabilities Law Project
Disabilities Law Project                 1901 Law & Finance Building
1315 Walnut Street, Suite 400            429 Fourth Avenue
Philadelphia, PA 19107-4798              Pittsburgh, PA 15219-1505
(215) 238-8070                           (412) 391-5225

Counsel for Plaintiff

## LIST OF EXHIBITS

Declaration of Robert W. Meek . . . . . . . . . . . . . . . . . . . . . . . . . .   A

*Mid-Valley Candy Co. v. R.J. Reynolds Tobacco Co.*,
C.A. No. 99-5216, 2002 WL 207166 (E.D. Pa. Feb. 8, 2002) . . . . . .   B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PENNSYLVANIA PROTECTION AND
ADVOCACY, INC.,

        Plaintiff,

    v.                               Civil Action No. 1:CV-00-1582

DEPARTMENT OF PUBLIC WELFARE   (Judge William W. Caldwell)
OF THE COMMONWEALTH OF
PENNSYLVANIA, et al.,

        Defendants.

## DECLARATION OF ROBERT W. MEEK

I, Robert W. Meek, declare based on personal knowledge as follows:

1. I am lead counsel for Plaintiff Pennsylvania Protection and Advocacy, Inc. in this matter.

2. The parties completed non-expert discovery in September 2001.

    a. Defendants produced over 30,000 pages of documents and Plaintiff produced several hundred pages of documents.

    b. Both Plaintiff and Defendants propounded and responded to requests for admissions and interrogatories. In their Second Set of Interrogatories, Defendants asked Plaintiff to "[s]pecify in detail the facts of all alleged violations of applicable law that plaintiff contends are ongoing." In response to that interrogatory, Plaintiff submitted to Defendants on September 14, 2001 a 49-



page statement of facts and incorporated by reference the expert reports that were produced to Defendants in October 2001. Also on September 14, 2001, Plaintiff submitted to Defendants a chart on which it listed all SMRC residents and Plaintiff's understanding of the discharge recommendations for those residents. These documents provided detailed information as to Plaintiff's understanding of which SMRC residents could be discharged to community-based services.

      c.     Defendants deposed five witnesses and Plaintiff deposed fifteen witnesses.

      3.     Plaintiff submitted four expert reports in October 2001. Three of those reports address particular SMRC residents (identified by name) who could, with appropriate supports and services, live in the community. Defendants were aware a few months prior to the production of the reports as to which SMRC residents Plaintiff's experts examined. Indeed, Defendants' staff were present during Plaintiff's experts' examination of those residents at SMRC during the summer of 2001.

      4.     Defendants submitted seventeen expert reports in December 2001. Many of those reports address all of the individual residents examined by Plaintiff's experts.

      5.     Plaintiff has received no information relating to any particular SMRC residents since the close of non-expert discovery in September 2001.

6. After the Court's November 29, 2001 Order that granted Plaintiff's unopposed Motion for Leave to File the Second Amended Complaint, counsel for Defendants informed me that Defendants were undecided as to whether to answer the Complaint or move to dismiss. I informally consented to a delay in the time for filing a responsive pleading to allow Defendants time to make a decision.

7. On September 5, 2000 -- the same day as this lawsuit was filed -- I filed a lawsuit on behalf of a class of residents of Norristown State Hospital, alleging that DPW and DPW officials violated the ADA and RA by failing to provide appropriate community-based alternatives to residents for whom the community is the most integrated setting appropriate for their needs. *Frederick L., et al. v. Dep't of Public Welfare, et al.*, Civil Action No. 00-4510 (E.D. Pa.). Defendants in that case -- represented by the same counsel as in this case -- filed a motion to dismiss in November 2000, raising, *inter alia*, Eleventh Amendment immunity. All proceedings in that case were stayed pending the Court's disposition of the motion to dismiss. In July 2001, the district court denied the defendants' motion in large part, including most of the Eleventh Amendment immunity arguments. *Frederick L. v. Dep't of Public Welfare*, 157 F. Supp.2d 509 (E.D. Pa. 2001). While the district court certified the issues for immediate interlocutory appeal to the Third Circuit, the defendants ultimately chose to proceed on the merits in the district court.

3

8. If Defendants in this case had promptly pursued their Eleventh Amendment immunity in response to the initial Complaint, Plaintiff would certainly have consented to a stay of proceedings. However, Defendants chose to withdraw their motion to dismiss the initial Complaint and to proceed with this litigation, resulting in Plaintiff's and its counsel's expenditure of significant time and resources.

9. Plaintiff's counsel, the Disabilities Law Project ("DLP") has limited personnel and resources. I have been working on this case with the assistance of primarily only one other attorney from my office, Robin Resnick. Another DLP attorney, Mark J. Murphy, has provided assistance with respect to expert issues.

10. I and Ms. Resnick similarly have been responsible for the bulk of the work in the *Frederick L.* litigation discussed above. Dispositive motions in *Frederick L.* are due April 19, 2002 and the court has scheduled a firm trial date of May 20, 2002.

11. If the March 11 deadline for Defendants' brief in this case is enforced, Plaintiffs' counsel will be able to file a response that allows for prompt disposition as well as to comply with the *Frederick L.* Court's timelines. If the Defendants' requested enlargement is granted, Plaintiff, too, may need a significant enlargement of time to enable them to comply with the deadlines in the *Frederick*

4

*L.* case which, I understand from the Honorable Berle M. Schiller, will not be extended.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of February, 2002.

_____
Robert W. Meek

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
**(Cite as: 2002 WL 207166 (E.D.Pa.))**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

**MID-VALLEY CANDY COMPANY,**
v.
**R.J. REYNOLDS TOBACCO COMPANY, et al.**
**EAGLE DIVERSIFIED, INC.,**
v.
**R.J. REYNOLDS TOBACCO COMPANY, et al.**

Nos. 99-5216, 99-5382.

Feb. 8, 2002.

*MEMORANDUM*

BUCKWALTER, J.

*1 In connection with third-party defendant Edward M. Bush, Sr.'s Motion to Stay Proceedings, all responding parties have set forth the factors the court should weigh in exercising its discretion to stay civil proceedings.

It should be kept in mind from the outset that a stay of proceedings is an extraordinary measure and the burden rests upon the party requesting the stay to essentially make out a clear and convincing case of hardship or inequity which will result if a stay is not granted.

The first factor is the plaintiff's right to pursue its claim; that is to say, a party seeking vindication for an alleged wrong doing should be able to do so expeditiously. The primary reason, of course, is that delay in discovery can result in, among other things, loss of memory and loss of evidence in the form of records, for example. In this regard, defendant argues that substantial discovery has been completed, a point which counterclaim plaintiff does not seriously dispute, but argues instead that the time that has already passed since these actions were commenced in 1999 militate granting a stay. It is also possible that delay may dissipate assets preventing any meaningful recovery.

In light of the passage of time and the fact that, even if substantial discovery has been completed, significant discovery remains, defendant has failed to convince me that a stay is not potentially prejudicial to counterclaim plaintiff.

Secondly, the defendant claims "the impossible dilemma of the Hobbesian [sic] choice between testifying on behalf of himself and his children to defend the civil case and remaining silent to defend the criminal allegations." (Defendant's memorandum in support of his motion at p. 2; Docket No. 121). The Hobbes in the word Hobbesian comes from the English philosopher, Thomas Hobbes. While certainly Hobbes may have offered one some philosophical choices, it was another Englishman, Tobias Hobson, to whom we are indebted for the famous or infamous Hobson's choice, which was really no choice at all. [FN1] I assume that this is the choice defendant is referring to, but his choice is hardly a Hobson's, one even though placing the children's interest before the parent's would normally be the more palatable choice.

> FN1. It is reported that Mr. Hobson, the Cambridge carrier, from whom one could supposedly rent a horse, required that his customers take the horse that happened to be nearest the stable door or go without. *III Oxford English Dictionary* (2nd Ed.1989). American Henry Ford is said to have offered his own "Hobson's choice." In 1914, he offered customers of the Model T a choice--a car "in any color so long as it is black." *www.dictionary.com.*

Thirdly, in considering the burden on the court in whether to grant a stay, it is well to note, as mentioned before, that this is an "old" case. And while the court's desire to control its docket and to expeditiously resolve cases before it should not be the most important factor, it must nevertheless be put into the mix. This factor also weighs against the request. In fact, the history of this litigation, covering two districts, fairly cries out for a resolution sooner rather than later.

A fourth factor is the burden on non-parties. I am unable to determine what if any affect a stay would have in this regard.

Finally, the court should consider the public interest. In a general sense, I suppose the public interest is served by efficient disposition of cases. Unlike a criminal case, however, it is hard to find any specific public interest that would be promoted by either granting or denying a stay in this case--at least the parties have identified none.

An order follows. [FN2]

> FN2. The court's memorandum would not be complete without reference to the following passage in defendant's reply brief (Docket # 132):
> "..., counsel for Edward M. Bush, Sr., Edward M. Bush, Jr., and Cheryl Bush (collectively, "the Bush defendants") has had the misfortune of reading what was supposed to be a response brief from Plaintiffs regarding the appeals in the above-captioned matters. These cases have been a learning experience because [counsel for plaintiff] embodies many of the things that have become a problem with our profession. This writer has always been taught that one should never personalize pleadings or mislead the Court with half-truths. Unfortunately, while [counsel for plaintiff] speaks to others about the code of civility, it does not seem to apply to him. His present brief is a personal attack on [defendant's counsel] as a lawyer and a person. Not only is this writer offended by it, but he would be happy to test his reputation amongst the Bar of Philadelphia with [plaintiff's counsel]."
> To some extent, plaintiff's counsel has made an attack on the character of defendant's counsel rather than the character of his contentions; on the other hand, the quoted portion of defendant's brief is, in my opinion, hyperbolic, leaving one to believe that counsel is protesting too much. Both are advised to concentrate on the issues and avoid ad hominem rhetoric.

*ORDER*

*2 AND NOW, this 8th day of February, 2002, upon consideration of Third Party Defendant Edward M. Bush, Sr.'s Motion to Stay Proceedings Pending Criminal Investigation (Docket No. 121), and all responses in opposition thereto, it is hereby ORDERED that said Motion is DENIED in its entirety.

IT IS FURTHER ORDERED that the depositions of Renato Mariani, Edward Bush, Sr. and Robert Dobrowolski will occur within fourteen (14) days of the date of this order. All other deadlines for depositions contained in this Court's December 17, 2001 Order will be adhered to by the parties, except that the depositions of Daniel Rose, Joseph Dollard, Edward Bush, Jr., Cheryl Bush, Robert Kane and Carlton Preate will be completed by February 28, 2002.

END OF DOCUMENT

## **CERTIFICATE OF SERVICE**

I, Robert W. Meek, hereby certify that true and correct copies of Exhibits in Support of Plaintiff's Brief in Opposition to Defendants' Application for Stay of Proceedings or, in the Alternative, Request for Enlargement of Time were served on the following by first-class mail, postage-prepaid on February 22, 2002:

Michael L. Harvey, Esquire
Senior Deputy Attorney General
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA  17120

Howard Ulan, Esquire
Senior Assistant Counsel
Department of Public Welfare
Office of Legal Counsel
Health & Welfare Building
Third Floor West
Harrisburg, PA  17120

Thomas J. Blazusiak, Esquire
Senior Assistant Counsel
Department of Public Welfare
Office of Legal Counsel
Allentown State Hospital
Room 130 Medical Services Building
1600 Hanover Avenue
Allentown, PA  18103

*Robert W. Meek*
Robert W. Meek