ORIGINAL

FILED
HARRISBURG, PA

MAR 0 8 2002

MARY E. D'ANDREA, CLERK
Per _____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENNSYLVANIA PROTECTION AND ADVOCACY, INC.<br>    Plaintiff | : | |
| v. | : | No. 1:00-CV-01582 |
| DEPARTMENT OF PUBLIC WELFARE, et al.:<br>    Defendants | : | (Judge Caldwell) |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF
### THEIR MOTION TO DISMISS

### INTRODUCTION

This action has been brought by Pennsylvania Protection and Advocacy, Incorporated (PP&A, Inc.) claiming that there are deficiencies in the care given to the residents of South Mountain Restoration Center (SMRC), a nursing home operated by the Pennsylvania Department of Public Welfare (DPW), and that, regardless of the quality of care, certain residents should be transferred to other facilities. PP&A, Inc. asserts claims

based upon several statutes and constitutional provisions: Title XIX of the Social Security Act, 42 U.S.C. §1396; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; Title II of the Americans with Disabilities Act, 42 U.S.C. §§12131-12134; and the Due Process Clause of the Fourteenth Amendment. Named as defendants are the Commonwealth of Pennsylvania, Department of Public Welfare and several DPW officials on their official capacity.

On November 29, 2001, PP&A, Inc. submitted a second amended complaint. Defendants moved to dismiss that complaint. On February 5, 2002, defendants filed their brief in support of the motion to dismiss. On February 19, 2002, PP&A, Inc. filed their brief in opposition to the motion. This brief is submitted in reply to that brief.

## ARGUMENT

In their opening brief, defendants argued that the ADA and Rehabilitation Act claims here are barred by the Eleventh Amendment, that PP&A, Inc. cannot maintain its claims under Section 504 or Title XIX of the Social Security Act, and that PP&A, Inc. does not have standing to bring this action. Defendants rely on that brief in large part to refute PP&A's arguments in opposition to the motion to dismiss. Certain matters, however, raised in the brief of PP&A, Inc. are addressed here.

2

I.  **The Rehabilitation Act is Unconstitutional Because Its Waiver Requirement Conditions Federal Benefits Upon the Surrender of Fundamental Constitutional Protections**

Defendants argued in their opening brief that Congress may not use its economic powers to compel the surrender of fundamental constitutional protections, as it has attempted to do in the Rehabilitation Act. Plaintiff's contentions that the cases relied upon for this principle are inapposite and that defendants' arguments are contrary to South Dakota v. Dole, 483 U.S. 203 (1987) and MCI Telecommunication Corp. v. Bell Atlantic – PA, 271 F.3d 491 (3d Cir. 2001) are incorrect.

Although plaintiff correctly points out that no case has squarely held that Congress may not condition a benefit on a state's waiver of its Eleventh Amendment immunity[1], line of Supreme Court cases starting with Morse Insurance Co. v. Morse, 87 U.S. 445 (1874), struck down state laws which are remarkably similar to the waiver-of-immunity requirement of the Rehabilitation Act. As set forth in defendants' opening brief Def. Brief at 16-19, both the state attempts to condition the privilege of foreign corporations to business within the state upon their surrender of their right to bring suit in federal court and the Rehabilitation Act's waiver of immunity

---

[1] Plaintiff, of course, has cited no case which has squarely held that Congress may require states to surrender their constitution guarantee of immunity as a condition for the receipt of revenue.

provisions are at odds with our basic federal structure. In the Morse line of cases, the states attempted to force litigants out of the federal courts and into state courts. Here, the Rehabilitation Act forces states into federal court. In either case, government is using its economic power as a club with which to force waivers of fundamental constitutional protections. The doctrine of unconstitutional conditions prohibits such use of government power.

Nor do South Dakota or MCI Telecommunications, Corp., relied upon by plaintiff, alter this result. South Dakota certainly supports the general proposition that congress may attach conditions to its financial grants. South Dakota does not, however, address the issue of whether Congress may require the states to surrender the "fundamental constitutional protection" of the Eleventh Amendment. See Puerto Rico Aquaduct and Sewer Authority v. Metcalf and Eddy, Inc., 506 U.S. 139, 145 (1993). South Dakota, instead, addresses only the question of whether congress can use economic inducements to encourage states to exercise their authority over the sale of liquor allowed under the Twenty-first Amendment. Unlike the Eleventh Amendment, the Twenty-first Amendment is not "rooted in the recognition that the states, although a union, maintain certain attributes of sovereignty,

4

including sovereign immunity. . . ." Puerto Rico Aquaduct and Sewer Authority, 506 U.S. at 146.

Similarly, the Third Circuit's decision in MCI Telecommunication Corp v. Bell Atlantic-Pennsylvania, has little in common with this case. In MCI, the Court held that Pennsylvania's Public Utilities Commission was not entitled to Eleventh Amendment immunity when it was discharging *federal* responsibilities which Congress had delegated to it, and which it had voluntarily undertaken. See id. At 509-513. Under the statutory scheme involved in that case, "the state commission's authority to regulate comes from [the federal statute] and not from its own sovereign authority. . . . [T]he states are not merely acting in an area regulated by Congress; they are now voluntarily regulating on behalf of Congress." *Id.* At 510 (internal quotation marks omitted). Accordingly, the Commission's decisions were subject to federal judicial review as provided by Congress.

## II. The Rehabilitation Act Agency-wide Waiver Fails to Meet the Relatedness Requirement for Spending Clause Legislation

Plaintiff correctly points out that for the Rehabilitation Act, a "program" is the state agency which receives federal funds, and not each and every type of grant that goes to the agency. Plaintiff's Brief at 15-16. Thus, for a state agency to receive any federal funds, whatever their substantive

5

purpose or statutory basis, the agency must waive its Eleventh Amendment immunity. Contrary to plaintiff's contention, however, the agency-by-agency application of the Rehabilitation Act is insufficient for it to meet to relatedness requirement for spending clause legislation.

In <u>Atascadero State Hospital v. Scanlon</u>, 473 U.S. 234 (1985), the Supreme Court made it clear that a waiver under the spending clause must be program specific:

> The mere receipt of federal funds cannot establish that a state has consented to suit in federal court. . . . We have decided today that the Rehabilitation Act does not evince unmistakable congressional purpose, pursuant to §5 of the Fourteenth Amendment, to subject unconsenting states to the jurisdiction of the federal courts. The Act likewise falls far short of manifesting a clear intent to *condition participation in the programs funded under the Act* on a state's consent to waive its constitutional immunity.

*Id.* At 246-247 (emphasis added). Conditions on the receipt of federal funds always must "bear some relationship to the purpose of the federal spending; otherwise, of course, the spending power could render academic the Constitution's other grants and limits of federal authority." <u>New York v. United States,</u> 505 U.S. 144, 167 (1992). Finally, the Court in <u>South Dakota v. Dole</u>, <u>supra</u>, has stated that:

> Conditions on federal grants might be illegitimate if they are unrelated "to federal interest in particular

6

> national projects or programs." "The federal government may establish and impose reasonable conditions relevant to federal interests in the project and to the overall objective thereof."

*Id.* at 207-208 (citations omitted).

Obviously, with an across the board approach, as in the case of the Rehabilitation Act, it is impossible to determine whether the waiver of immunity condition bears any relationship to the program funded by the federal government. Consequently, the Constitution necessarily requires the condition be tied to individual programs; otherwise, there is no way of knowing whether the relatedness requirement has been met. Indeed, plaintiff cites to no case in which the Supreme Court has approved an agency-wide waiver without regard to program. It is respectfully submitted that Jim C. v. The United States, 255 F.3d 1097, 1081 (8th Cir. 2000) (en banc), and Frederick L. v. Department of Public Welfare, 157 F. Supp. 2d 509, 522, 523 (E.D. Pa. 2001), cited by plaintiff for their approval of the agency by agency approach, are wrongly decided.

### III. PP&A May Not Assert Its Claims Under the ADA or the Rehabilitation Act Against State Officials Under the Doctrine of Ex Parte Young

In its opening brief, defendants argued that PP&A's claim for injunctive relief against state officials under the ADA and Rehabilitation Act

7

cannot succeed under the Ex Parte Young doctrine. Plaintiff initially argues that under the law of the case doctrine further consideration of this issue is precluded by this Court's decision of April 3, 2001, granting plaintiff's motion for leave to file an amended complaint. This contention should be rejected.

First, as noted in United States v. Hatter, 532 U.S. 557, 558 (2001), "[t]he law of the case doctrine presumes a hearing on the merits." In this case, the court was considering a procedural motion not directly related to the merits of the case. For that reason alone, the law of the case doctrine does not apply. Further, the law of the case doctrine does not preclude a district court from reconsidering an issue previously before it. As recognized by Christianson v. Colt Ind. Operating Corp., 486 U.S. 800, 817 (1988), "the law-of-the case doctrine merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." (Internal quotation omitted). Thus, "[t]he doctrine doe not apply if the court is "convinced that [its prior decision] is clearly erroneous and would work a manifest injustice." 521 U.S. 203, 236 (1997)(internal quotations omitted). Here, for the reasons set forth in defendants' opening brief and this brief, this Court's earlier decision was erroneous and should be reconsidered.

8

Plaintiff has failed to show why Ex Parte Young should permit this action against the individual defendants. It cites Randolph v. Rogers, 253 F.3d 342, 348 (8th Cir. 2001) for the proposition that Ex Parte Young claims can be brought under the Rehabilitation Act and the ADA, but Randolph lacks any analysis of either statute. It bases its decision on the conclusory statement that "we have never held that the public –entity limitation in the ADA prohibits Ex Parte Young claims against state officers in their official capacities." The Eighth Circuit, however, fails to consider the language of the ADA itself to determine whether Congress indeed authorized actions against individuals. As set forth in defendants opening brief, review of the language of the statute shows that Congress did not authorize actions against individual state officials.

Plaintiff then relies on another Eighth Circuit case, Gibson v. Arkansas Dep't of Corrections, 265 F.3d 718 (8th Cir. 2001) for the proposition that Seminole Tribe does not bar individual actions under the ADA or Rehabilitation Act. Gibson attempts to draw distinctions between the Indian Gaming Regulatory Act and the ADA. These distinctions, however, were over matters not considered by the Supreme Court in Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996). Rather, Seminole Tribe squarely holds that whenever there is a detailed remedial scheme for

enforcement, the Court should not permit avoidance of the scheme, regardless of the nature of the remedial scheme.

Defendants submit that both <u>Randolph</u> and <u>Gibson</u> were wrongly decided, and that this Court should allow the analysis set forth in defendants' initial brief.

### III. Neither § 504 Nor Its Regulations Can Sustain A Private Right of Action for Community Placement

Plaintiff's attempt, through much bobbing and weaving, Pl. Brief at 29-33, to salvage a private cause of action for community placement under § 504, fails. The combined impact of two Third Circuit cases is simply unavoidable. <u>Clark v. Cohen</u>, 794 F.2d 79, 84 n.3 (3d Cir. 1986) held that § 504 does not require states to replace institutional care with community care. Accordingly, any community placement "integration" mandate is to be found solely in a § 504 regulation, 28 C.F.R. § 41.51(d), not in the statute. This being so, no private cause of action for community placement is available. See <u>South Camden Citizens in Action v. New Jersey Dept. of Environmental Resources</u>, 274 F.3d 771 (3d Cir. 2001). Plaintiff believes <u>South Camden</u> is of little consequence. Pl. Brief at 23-24. The Third Circuit believes the consequences of <u>South Camden</u> are "enormous." 274 F.3d at 790. The Third Circuit is right.

10

Any doubt that § 504, standing alone, provides no community placement mandate is removed by the four other circuits, in addition to the Third, that rejected "community placement" or "integration" claims under § 504. See P.C. v. McLaughlin, 913 F.2d 1033 (2d Cir. 1990), Kentucky Ass'n for Retarded Citizens v. Conn., 674 F.2d 582 (6th Cir. 1982); Plummer v. Branstad, 731 F.2d 574 (8th Cir. 1984); Phillips v. Thompson, 715 F.2d 365 (7th Cir. 1983). The Congress that enacted § 504 did not mandate the regulation at issue here, see Helen L. v. Didario, 46 F.3d 325, 330 n.9 (3d Cir. 1995), which plainly imposes on states duties the statute itself does not, see Clark, P.C., Kentucky Ass'n, Plummer, Phillips, and therefore falls within the core prohibition of South Camden on private causes of action.[2]

Plaintiff's effort to distinguish these cases and rescue their cause of action by reference to the 1992 amendments to the Rehabilitation Act, Pub. L. 102-569, Pl. Brief at 26, cannot succeed, for the 1992 amendments only reinforce the five-circuit unanimity on the absence of a community placement mandate in § 504. Congress presumably was aware of the appellate court interpretations of § 504 when it enacted the 1992 amendments. See In re Griffith, 206 F.3d 1389 (11th Cir. 2000), cert. denied,

---

[2] Because of their different relationship to the statute, plaintiff's references to other regulations that are merely interpretative are inapposite. See Pl. Brief at 27 (citing Consolidated Rail v. Daurone, 465 U.S. 624 (1984), and Yeskey v. Dept. of Corrections, 118 F.3d 168 (3d Cir. 1997), aff'd 524 U.S. 206 (1998)).

11

531 U.S. 826 (Congress presumed aware of judicial interpretations of a statute); Bank One, Utah v. Guttau, 190 F.3d 844 (8th Cir. 1999), cert. denied, 529 U.S. 1087 (same). Congress did not, in the 1992 amendment, disturb the statutory text on which the Clark, P.C., Kentucky Ass'n, Plummer, and Phillips courts relied. Plaintiff's reliance on committee reports Pl. Brief at 26, must yield to statutory text, for it is "the statute, and not the Committee Report, which is the authorizative expression of the law." City of Chicago v. Environmental Defense Fund, 511 U.S. 328, 337, 114 S. Ct. 1588 (1994).

Finally, plaintiff's reliance on three recent district court cases for the proposition that § 504 is equivalent to the ADA, and its claim that the five circuit cases on which defendants rely (Clark, et al) are no longer good law (having been decided before the enactment of the ADA in 1990), omits the significance of both Supreme Court and Third Circuit law. In Olmstead, the Supreme Court pointed out that the ADA "stepped up earlier measures" to protected disabled persons, 527 U.S. at 599, indicating a lack of 504/ADA equivalence. In South Camden -- decided after all three of plaintiff's district court cases -- the Third Circuit held that only rights created by Congress, and "not an administrative agency or court," are enforceable in a private action. 274 F.3d at 790. Without 28 C.F.R. 41.51(d), no circuit court has

12

ever found Congress, in § 504, to have created a right to community placement. If such a statutory obligation did exist in section 504, surely the efforts of five circuit courts to find it would not have all failed.

## IV.  PP&A, Inc., Lacks Standing

### A. Review of Evidence Outside the Pleadings is Impermissible.

Plaintiff urges the Court to disregard the firmly established limit on the permissible review for a "facial" attack on jurisdiction under Rule 12(b)(1), but it offers no legally cognizable basis for its position. See Mortensen v. First Fed. Savings and Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977)(emphasizing, for purposes of review, the crucial distinctions between a "facial" and "factual" challenge to jurisdiction); Hunter v. United States, 2000 U.S. Dist. LEXIS 20206, *9-10 (M.D. Pa. Dec. 15, 2000)(review of 12(b)(1) facial attack limited to allegations in complaint, documents referenced therein and attached thereto or, documents submitted by defendant in support of motion to dismiss); Pennsylvania Protection & Advocacy Inc., v. Houstoun, 136 F. Supp.2d 353, 367 (E.D. Pa. 2001)(same).[3]

---

[3] In addition to Defendants having undeniably presented their jurisdictional challenge as a "facial" attack, Defs.' Br. in Supp. of Mot. to Dismiss Sec. Amend. Compl. at 32, n.5, the fact that an Answer to the Second Amended

13

Plaintiff's only stated bases for its position are its unhappiness that the Defendant's motion was not filed sooner and its related mischaracterization of the procedural posture of this case. Plaintiff incorrectly, and irrelevantly, alleges that the case is "past the pleadings stage" Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss at 41, n.12. Not only is this legally irrelevant but Plaintiff is wrong. The pleadings are not complete. No answer to Plaintiff's Second Amended Complaint has been filed. An answer will only become necessary if the Motion to Dismiss is denied. See Fed. R. Civ. P. 12(b)("A motion making any of these defenses ***shall be made before pleading, if a further pleading is permitted***")(emphasis added). Finally, Defendants' Motion to Dismiss was properly filed, prior to Plaintiff filing its Motion for Partial Summary Judgment. In any event, the Motion, having been properly filed, must be considered before the case can proceed. Under Fed.R.Civ.P 12(h)(3) "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

---

Complaint has not been filed precludes converting Defendants' challenge into a "factual" attack, Mortensen, 549 F.2d at 891-92, n.17, as does the fact that Defendants have not relied on extraneous documents or evidence to support their motion to dismiss. PP&A, Inc. v. Houstoun, 136 F. Supp.2d at 367.

14

Any allegation that the timing of Defendants' Motion to Dismiss was improper is also without merit. Plaintiff filed an amended complaint to which Defendants replied with a procedurally, undeniably proper Motion to Dismiss. A motion for dismissal on the grounds that the plaintiff lacks standing constitutes a question regarding the court's jurisdiction over the subject matter of the action under Fed.R.Civ.P. 12(b)(1). <u>Pennsylvania Protection and Advocacy v. Houstoun</u>, 136 F.Supp. 353 at 359. A claim that the court lacks subject matter jurisdiction may be raised at any time, even on appeal. Moreover, it may be raised by the court sua sponte. See eg: <u>Essington Metal Works v. Retirement Plans of America,</u> 609 F.Supp. 1546, 1550 (E.D..Pa. 1985), <u>Powell v. Powell</u>, 793 F.Supp. 105, 106n.3 (M.D. Pa. 1992)

The standard by which the court decides Defendants' Motion to Dismiss is not changed by the filing of Plaintiff's Motion for Partial Summary Judgment. See <u>Crawford v. United States</u>, 796 F.2d 924, 928 (7th Cir 1986)(Posner, J.)(Federal Rules of Civil Procedure do not provide for converting Rule 12(b)(1) motions into motions for summary judgment as Plaintiff, absent authority, demands). Thus, the court's review of Defendants' Motion to Dismiss remains limited to the allegations in the Second Amended Complaint, documents referenced therein and/or attached

15


thereto - of which there were none. Accordingly, consideration of evidence outside the pleadings, such as the extraneous documents and new allegations never mentioned in any of Plaintiff's three Complaints, is impermissible. Mortensen, 549 F.2d at 891-92; PP&A v. Houstoun, 136 F. Supp.2d at 367. This recently submitted evidence should not be considered by this Court because, by their submission PP&A, Inc. seeks to go beyond the scope of inquiry permitted by Defendants' purely facial motion under Rule 12(b)(1). See Wright & Miller, Federal Practice and Procedure: Civil 2d ¶1350. Because Plaintiff's only defense to Defendant's facial challenge to jurisdiction is to improperly proffer evidence rather than to provide legal authority to defend what it has filed, Defendants' Motion to Dismiss should be granted. Perhaps strategically, Defendants should have filed their motion after the first or second complaint: perhaps not. Legally however, it matters not. This Court should dispose of all jurisdictional issues before the case proceeds any further and its review remains limited to the pleading filed by Plaintiff, not extraneous evidence submitted after the fact. Left with only the allegations contained in its Second Amended Complaint, Plaintiff cannot satisfy the requirements for Article III standing either on its own behalf or on behalf of others. In either case, the party who seeks exercise of jurisdiction must plead facts essential to demonstrate jurisdiction. In the

absence of so doing, it has no standing. See e.g. Joy v. Hague, 175 F.2d 395 (1st Cir. 1949) *certiorari denied* 70 S.Ct. 147, 338 U.S. 870, 94. L.Ed. 534 (1949).

### B. Plaintiff Lacks Standing On Its Own Behalf.

In a futile attempt to show it has standing on someone's behalf, PP&A, Inc., bereft of any resident plaintiff and out of thin air, interjects excerpts of depositions and recently concocted declarations, neither of which may be considered to correct the deficiencies of the Second Amended Complaint. At this juncture in the case, standing must rise or fall within the complaint itself, as required by the basic principles of standing. PP&A, Inc. v. Houstoun, 136 F. Supp.2d at 367, (citing, Chasis v. Progress Mfg. Co.Inc., 382 F.2d 773, 776 (3d Cir. 1967)("It is 'hornbook law' that the jurisdiction of a District Court must appear affirmatively on the face of the complaint"). Plaintiff has made no allegation of injury to itself in any of the three complaints it has filed to date and, therefore, absolutely lacks standing to bring this action on its own behalf. See, e.g., Fair Hous. Council of Suburban Philadelphia v. Montgomery Newspapers, 141 F.3d 71, 74 (3d Cir. 1998).

### C. Plaintiff Lacks Standing On Behalf of SMRC Residents.

17

As with its assertion of standing on its own behalf, rather than being able or willing to rely (as it must) on its pleading, Plaintiff relies instead on extraneous evidence that cannot be considered in deciding the instant Motion to Dismiss. <u>Mortensen</u>, 549 F.2d at 891-892. Plaintiff's attempt to repair the deficiency related to standing in its Second Amended Complaint fails.

While Defendants did not elaborate on the deficiencies in Plaintiff's Second Amended Complaint as to the standing of PP&A, Inc. to raise Title XIX claims, the same reasoning applies as to its other claims. PP&A, Inc. is suing alone without even one SMRC resident and it has now admitted that it "is not itself an intended beneficiary of Title XIX's provisions concerning nursing facility standards of care". Pl's. Br. In Opp'n to Defs.' Mot. To Dismiss at 36. Accordingly, PP&A, Inc. has no standing to bring the Title XIX claims.

Because, for the several independently sufficient reasons stated in Defendants' Motion to Dismiss, jurisdiction is not shown by PP&A, Inc. on behalf of others and it is suing, on its own, without even one injured party as a participant, its Complaint is fatally defective and must be dismissed.

## **CONCLUSION**

18

For the foregoing reasons, defendants' motion to dismiss the second amended complaint should be granted.

                                        **Respectfully submitted,**

                                        **D. MICHAEL FISHER**
                                        Attorney General

                          BY: _/s/ Michael L. Harvey_
                                        **MICHAEL L. HARVEY**
                                        Senior Deputy Attorney General

                                        **SUSAN J. FORNEY**
                                        **Chief Deputy Attorney General**
                                        **Chief, Litigation Section**

15th Floor, Strawberry Square
Harrisburg, PA 17120
PHONE: (717) 783-6896
FAX: (717) 772-4526
DATE: March 8, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PENNSYLVANIA PROTECTION AND
ADVOCACY, INC.
    Plaintiff

v.     No. 1:00-CV-01582

DEPARTMENT OF PUBLIC WELFARE, et al.: (Judge Caldwell)
    Defendants

## CERTIFICATE OF SERVICE

AND NOW, this **8th day** of **March, 2002** I, MICHAEL L. HARVEY, Senior Deputy Attorney General, counsel for defendants in the above-captioned action, hereby certify that I this day served the foregoing Defendants' Reply Brief in Support of Their Motion to Dismiss by causing a copy of the same to be deposited in the United States mail, postage prepaid, at Harrisburg, Pennsylvania, addressed to the following:

Robert W. Meek
Disabilities Law Project
1315 Walnut Street, Suite 400
Philadelphia, PA 19107-4798

Mark J. Murphy
Disabilities Law Project
1901 Law and Finance Building
429 Fourth Avenue
Pittsburgh, PA 15219-1505

_____
**MICHAEL L. HARVEY**
**Senior Deputy Attorney General**