**See Attachment**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PENNSYLVANIA PROTECTION AND       :
ADVOCACY, INC.,
              Plaintiff           :

                                  :

        vs.                                CIVIL ACTION NO. 1:CV-00-1582

                                  :

DEPARTMENT OF PUBLIC WELFARE OF    :
THE COMMONWEALTH OF PENNSYLVANIA;
MARK S. SCHWEIKER, in his          :
official capacity as Governor of
the Commonwealth of Pennsylvania;  :
FEATHER O. HOUSTOUN, in her        :
official capacity as Secretary     :
of Public Welfare for the
Commonwealth of Pennsylvania;      :
GERALD RADKE, in his official      :
capacity as Deputy Secretary       :
for Mental Health and
Substance Abuse Services; and      :
S. REEVES POWER, Ph.D., in his
official capacity as               :
Superintendent of South Mountain
Restoration Center,                :
              Defendants



M E M O R A N D U M

I.    <u>Introduction</u>.

        Plaintiff, Pennsylvania Protection and Advocacy, Inc.,

(PP&A) is the non-profit Pennsylvania corporation charged by

statute with advocating the rights of institutionalized

Pennsylvanians with mental illness and developmental disabilities.

PP&A filed this suit against defendant, the Pennsylvania

Department of Public Welfare (DPW) and the following individual

defendants in their official capacities: Mark S. Schweiker, the

Governor of the Commonwealth of Pennsylvania; Feather O. Houstoun, the Secretary of DPW; Gerald Radke, the Deputy Secretary for Mental Health and Substance Abuse Services; and S. Reeves Power, the Superintendent of South Mountain Restoration Center (SMRC), a state-run nursing facility.

Plaintiff is suing under Title XIX of the Social Security Act (the "Medicaid Act"), 42 U.S.C. §§ 1396 to 1396v (West 1992 & Supp. 2000), providing federal grants for state medical assistance programs; the Rehabilitation Act (RA), 29 U.S.C. § 794; and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101. In its second amended complaint, the Plaintiff claims that treatment being given to residents at SMRC violates these laws. It seeks only declaratory and injunctive relief.

We are considering Defendants' motion to dismiss which argues various impediments to the action, from PP&A's lack of standing to pursue the claims of the residents to the bar of the Eleventh Amendment.

II.    Discussion.

A.    PP&A's Standing.

On the standing issue, Defendants maintain that we are limited to examining the allegations of the complaint since they are making a facial, rather than a factual, challenge to Plaintiff's standing. *See Pennsylvania Protection and Advocacy,*

AO 72A
(Rev.8/82)

*Inc. v. Houston*, 136 F. Supp. 2d 353 (E.D. Pa. 2001) (noting distinction between the two types of challenge).

We disagree.  We believe we have the authority to determine what matters we will examine to resolve this issue, and we have decided that we can examine matters outside the pleading, such as affidavits Plaintiff has submitted in connection with its motion for summary judgment, and on which Plaintiff also relies to establish standing.[1]  *See Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)("A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction.")(citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

Defendants argue that we lack jurisdiction over the case because Plaintiff does not have standing to bring the action either on its own behalf or on behalf of SMRC residents.

As to the advocacy group's standing in its own right, Defendants argue that Plaintiff fails to allege that it suffered any injury as a result of Defendants' alleged conduct and hence has no standing.  *See Fair Housing Council v. Montgomery Newspapers*, 141 F.3d 71, 74 (3d Cir. 1998)(one element of Article III standing is that the plaintiff must have suffered an injury).

---

[1]As Plaintiff points out, the motion to dismiss comes late in these proceedings.  The original complaint was filed in October 2000, and there has been extensive discovery, with Plaintiff filing a motion for summary judgment in January 2002.

3

However, we agree with Plaintiff that it can establish the requisite injury by showing that it expended time, money and resources, not just in ordinary monitoring of the services provided to SMRC residents, but in the diversion of its services into ongoing observations of SMRC conditions and advocating their correction. *See Fair Housing Council, supra,* 141 F.3d at 74-75 (a defendant's conduct resulting in frustration of an advocate group's mission injures the group for standing purposes); *Liberty Resources, Inc. v. Southeastern Pennsylvania Transportation Authority,* 155 F. Supp. 2d 242, 251-52 (E.D. Pa. 2001)(diversion of resources satisfies injury requirement for standing); *Adapt of Philadelphia v. Philadelphia Housing Authority,* 2000 WL 433976, at *6 (E.D. Pa.)(same). We believe that the declaration of Kevin Casey, PP&A's executive director, establishes this standing by showing that PP&A has diverted resources from normal advocacy activities to attempting to correct perceived deficiencies at SMRC.

Defendants next argue that PP&A does not have standing to represent SMRC residents because it fails the test of associational standing.

> The Supreme Court has enunciated a three-prong test for associational standing. An association must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the

4

> participation of individual members in the
> lawsuit."

*Pennsylvania Psychiatric Society* v. *Green Spring Health Services, Inc.*, 280 F.3d 278, 283 (3d Cir. 2002)(quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383, 394 (1977)).

Defendants argue that the second amended complaint fails to allege that any of the residents have standing to sue in their own right. They maintain that the complaint fails to establish that any of the individual residents meet the three-part test for individual standing: (1) a cognizable injury (2) caused by Defendants (3) redressable by judicial action. *Id.* at 283.

As to the first part, Defendants contest that PP&A's pleading has alleged injury to any of the residents because, in their view, on this aspect of the residents' standing, "the pleading obviously must contain a standard, the violation of which is alleged to have resulted in injury sought to be redressed," (Defendants' supporting brief at p. 36), and the second amended complaint does not allege such a standard or its breach.

In support, Defendants discuss *Olmstead v. L.C.*, 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999), which deals with a state's obligation under the ADA to integrate institutionalized individuals into the larger society. In Defendants' view, the complaint is defective under *Olmstead* because it does not: (1) make allegations about individual residents on an individual

5

basis; (2) allege that alternative placement is appropriate; and (3) allege that the resident does not oppose a transfer.

We reject this contention because, as Plaintiff argues, it confuses standing with the merits of the claim. Additionally, Plaintiff has alleged certain residents who could benefit from leaving SMRC. This is sufficient for the individuals' injury requirement. *See Risinger v. Concannon*, 117 F. Supp. 2d 61, 70 (D. Me. 2000).

Defendants next argue that no individual can show that any alleged injury was caused by Defendants. They point to allegations in the complaint charging private nursing facilities with refusing to accept persons with serious mental disabilities and some Pennsylvania counties with refusing to develop community alternatives. (Second amended complaint at ¶¶ 47 and 71(a)).

We agree with Plaintiff that this argument goes to the merits of its claim rather than standing. As PP&A points out, it has alleged that the Commonwealth has the ultimate responsibility to provide services for SMRC residents. (Second amended complaint at ¶¶ 15 and 48).

Defendants also argue that the final part of individual standing is not satisfied because it is speculative that the relief sought would redress the claimed injury. In support, Defendants point out that no details are provided for the appropriate treatment program for one of the complaint's

6

representative residents and that *Olmstead* may preclude relief given the limitations on the Commonwealth's resources.

We think Plaintiff's rebuttal to this argument is correct. There is no need to allege details for each individual and relief can be granted by, in part, ordering Defendants to provide independent assessments of the affected SMRC residents to determine what community-based programs would meet their needs and requiring Defendants to develop and fund those programs.

We thus conclude that PP&A has satisfied the first prong of the associational-standing test.

Defendants also contend that PP&A fails the second prong, that the interests it seeks to protect are germane to its purpose. Defendants argue this prong cannot be met because there is a conflict of interest between PP&A and SMRC residents since none of the residents are alleged to want to leave SMRC for community placement.

Although conflicts of interest are analyzed under the germaneness prong, *see Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 865 (7th Cir. 1996), we agree with Plaintiff that there is no conflict of interest here. The relief PP&A seeks here would not compel any SMRC resident to leave that facility.

Defendants finally argue PP&A fails the third prong of associational standing because the participation of the individual residents in the litigation is necessary, contending that given

7

their individual needs, the relief for each will necessarily be different.

We reject this argument because, as argued by Plaintiff, the relief sought is not based directly on the individual resident's situation but on a request that independent assessments take place to see if they could benefit from community placement.[2]

 B. The Eleventh Amendment and the ADA and RA Claims.

 1. The ADA Claim.

Principally citing *Board of Trustees v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), Defendants argue that the Eleventh Amendment bars the ADA claim against DPW. In response, Plaintiff states that it is willing to withdraw its ADA claim against the agency but not against Governor Schweiker and Secretary Houstoun, which PP&A asserts can proceed under *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

Based on Plaintiff's representation, we will dismiss the ADA claim against DPW.

---

[2]Defendants have also argued that Plaintiff has no standing to represent nonresidents of SMRC. We need not address this argument because Plaintiff states that its complaint deals only with SMRC residents. (Plaintiff's opposition brief at p. 47 n. 17).

AO 72A
(Rev.8/82)

2.   The RA Claim.

Based on *Garrett*, Defendants also argue that the RA
claim is barred by the Eleventh Amendment.  Further, they maintain
that jurisdiction over DPW cannot be justified by the waiver of
Eleventh Amendment immunity in 42 U.S.C. § 2000d-7 because the
waiver exceeds the permissible conditions that Congress can impose
when providing funds to the states as part of its spending power.[3]

We need not examine the argument based on *Garrett*.  We
conclude that the Eleventh Amendment does not bar the RA claim
because the Commonwealth validly waived its Eleventh Amendment
immunity by accepting federal funds, a waiver properly conditioned
by Congress under its spending power.

Defendants first argue that the waiver is improper by
citing cases in which the Supreme Court struck down state laws
that required individuals or corporations to waive constitutional
rights as a condition of being allowed to engage in some activity,
like conducting business, in the state: *Home Insurance Co. v.
Morse*, 87 U.S. 445 (1874); *Frost . v. Railroad Comm.*, 271 U.S. 583
(1926); *Lefkowitz v. Turley*, 414 U.S. 70 (1973); and *Saenz v. Roe*,

---

[3]Section 2000d-7(a)(1) provides, in pertinent part, as
follows:

> A State shall not be immune under the Eleventh
> Amendment of the Constitution of the United States from
> suit in Federal court for a violation of section 504 of
> the Rehabilitation Act of 1973 [29 U.S.C.A. § 794] . . .
> or the provisions of any other Federal statute
> prohibiting discrimination by recipients of Federal
> financial assistance.

9

526 U.S. 489 (1999).  Defendants also cite a case where the
federal government's attempt to impose conditions on individuals
was struck down: *Legal Services Corp. v. Velazquez*, 531 U.S. 533
(2001).

We reject this argument because, as Plaintiff points
out, these cases are inapposite since they do not deal with
Congress's authority to impose conditions on federal funds based
on its spending power.  Rather, the constitutional validity of
such conditions is analyzed under cases like *South Dakota v. Dole*,
483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987), the basis of
Defendants' second argument against the validity of the waiver.

We turn to that argument now.  Defendants quote language
from *Dole* "that conditions on federal grants might be illegitimate
if they are unrelated 'to the federal interest in particular
national projects or programs.'"  *Id.* at 207, 107 S.Ct. at 2796,
97 L.Ed.2d at 178.  They then argue that the condition imposed on
the receipt of federal money here, the waiver of Eleventh
Amendment immunity, cannot meet this standard because, as they put
it:

> The waiver-of-immunity condition does not
> apply simply to lawsuits filed with respect to
> activities for which funding is provided under
> the Rehabilitation Act, nor to activities
> funded under any other particular grant, nor
> even to activities funded by *all* federal
> grants collectively.  Rather it applies to *any*
> lawsuit arising under *any* activity -- whether
> federally funded or not -- of an entity which
> receives *any* federal funding.  See 29 U.S.C. §
> 794(b)(defining "program or activity").

10

(Supporting brief at p. 20).  Defendants also note that the condition the Court upheld in *Dole*, that a state had to set a minimum drinking age of twenty-one to receive a full share of federal highway funds, was directly related to one of the purposes of the federal program, safe interstate travel.  *Dole*, 483 U.S. at 208, 107 S.Ct. at 2797, 97 L.Ed.2d at 179.  They assert that the "same can[not] be said here."  (Supporting brief at p. 20).

We reject this argument.  As Plaintiff points out, there does not have to be a direct nexus between the condition imposed and the purpose of the funding.  *See Frederick L. v. Department of Public Welfare*, 157 F. Supp. 2d 509, 522 (E.D. Pa. 2001)(citing *Oklahoma v. Schweiker*, 655 F.2d 401 (D.C. Cir. 1981)).  *Dole* merely observed that the condition there easily passed the relatedness test for imposing such conditions; it actually saw no need to adopt such a narrow directly-related test.  *Dole*, 483 U.S. at 208 n.3, 107 S.Ct. at 2797 n.3, 97 L.Ed.2d at 179 n.3.

Additionally, the condition that the Commonwealth waive its Eleventh Amendment immunity is constitutionally related to the Rehabilitation Act.  It "link[s] the federal government's legitimate interest in eliminating discrimination against disabled individuals in the programs it endows to State accountability for such discrimination."  *Frederick L.*, 157 F. Supp. 2d at 522.  Other courts have also held that the Eleventh Amendment waiver is a valid exercise of Congress's spending power.  *See Douglas v.*

11

*California Department of Youth Authority*, 271 F.3d 812, 819-20 (9th Cir. 2001)(collecting cases).

In their reply brief, Defendants argue that *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 247, 105 S.Ct. 3142, 3149-50, 87 L.Ed.2d 171, 183 (1985), requires that the waiver be program specific by quoting language concluding that the Rehabilitation Act, before enactment of section 2000d-7, fell "far short of manifesting a clear intent to *condition participation in the programs funded under the Act* on a state's consent to waive its constitutional immunity." (emphasis by Defendants).

This language is taken out of context. The Court was talking about the need for a specific waiver of Eleventh Amendment immunity, not about the need for a direct connection of the condition imposed to a specific program. The language of specific waiver was later provided by section 2000d-7.

C.   *Ex Parte Young* and the ADA and RA Claims.

Defendants argue that Plaintiff cannot avoid the Eleventh Amendment bar by pursuing the ADA and RA claims under *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Generally, as an exception to the Eleventh Amendment, *Young* authorizes suit in federal court against state officials "in their individual capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law."

12

*MCI Telecommunication Corp. v. Bell Atlantic-Pennsylvania*, 271
F.3d 491, 506 (3d Cir. 2001).

Defendants argue that *Young* is inapplicable here because
neither the ADA nor the RA permit suit against individual
defendants, citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 105
n.8 (8th Cir. 1999)(en banc)(ADA), and *Lollar v. Baker*, 196 F.3d
603, 609 (5th Cir. 1999)(RA).  Consequently, since *Young* involves
suit against individuals, it cannot be invoked in ADA or RA
claims.  Defendants rely on *Walker v. Snyder*, 213 F.3d 344, 347
(7th Cir. 2000), where the Seventh Circuit ruled that an ADA claim
could not proceed under *Young* against individual state officials
(sued in their official capacities) because "a suit based on *Young*
is a suit against state officers as individuals, not against the
state itself . . . [and] the only proper defendant [under Title II
of the ADA] is the public body as an entity."

Defendants' argument has some force.  However, we think
that for *Young* purposes, the distinction is irrelevant and that
the crucial aspect of *Young* is the relief sought, regardless of
whether a state official has been sued instead of the state.
Thus, since Plaintiff here seeks only prospective injunctive
relief, it may pursue its ADA and RA claims against state
officials in their official capacities under <u>Young</u> even though the
Eleventh Amendment bars a suit against the Commonwealth.

We draw support for this conclusion from *Hindes v. FDIC*,
137 F.3d 148, 166 (3d Cir. 1998), where the Third Circuit stressed

13

that state officials could be sued, "provided that the relief"
sought "properly is construed as 'prospective injunctive relief'
or is ancillary to such relief." We also think it is important
that the *Young* exception was created to insure the vindication of
federal rights "and to hold state officials responsible to the
'supreme authority of the United States.'" *MCI Telecommunication
Corp., supra,* 271 F.3d at 506 (quoted case omitted). In light of
this overarching purpose, it is not fatal to a claim relying on
*Young* that the individuals sued would not be liable in their
individual capacities under the ADA or RA for money damages, a
form of relief that cannot be sought under *Young*.

We therefore join those courts cited by Plaintiff that
have allowed such claims to proceed. *See Carten v. Kent State
University,* ___ F.3d ___, 2002 WL 257005 (6th Cir. 2002); *Randolph
v. Rodgers,* 253 F.3d 342, 348 (8th Cir. 2001); *Armstrong v. Davis,*
275 F.3d 849, 879 (9th Cir. 2001); *Frederick L., supra,* 157 F.
Supp. 2d at 530-32; *Doe v. Sylvester,* 2001 WL 1064810, at *5 (D.
Del.); *Gregory v. Administrative Office of the Courts,* 169 F.
Supp. 2d 319, 328-330 (D. N.J. 2001).

Defendants also argue that *Seminole Tribe of Florida v.
Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996),
prohibits reliance on *Young* to pursue ADA and RA claims. In
*Seminole Tribe,* the Supreme Court held that *Young* could not be
used to avoid the bar of the Eleventh Amendment for a claim based
on a statutory scheme, The Indian Gaming Regulatory Act,

14

reflecting congressional intent to limit significantly the duty imposed by the statute and the remedy for the violation of it. The Court reasoned that application of *Young* would conflict with the statute because, contrary to Congress's intent in enacting the statute, *Young* permits a federal court the full use of its remedial powers. *Id.* at 74-75, 116 S.Ct. at 1132-33, 134 L.Ed.2d at 278.

We reject this position because, as Plaintiff urges, the ADA and RA, consistent with *Young*, allow broad remedial relief and thus *Seminole Tribe* would not preclude invoking *Young* under those statutes. *See Gibson v. Arkansas Department of Correction*, 265 F.3d 718, 721 (8th Cir. 2001)(*Seminole Tribe* does not prevent use of *Young* in an ADA claim); *Doe, supra,* 2001 WL 1064810, at *4-5 (allowing ADA and RA claims to proceed under *Young*). *See also MCI Telecommunication Corp., supra,* 271 F.3d at 515 (*Seminole Tribe* did not bar use of *Young* on a claim under the Telecommunications Act of 1996 because the Act itself allowed broad remedial relief).

D.   The RA Claim and Implementing Regulations.

Defendants argue that Plaintiff cannot pursue a community-placement claim under the RA because the relevant statutory section, section 504, 29 U.S.C. § 794(a), does not specifically proscribe the use of institutional settings for certain disabled individuals. Instead, it only broadly prohibits

15

discrimination against individuals with a disability under programs or activities receiving federal funds.[4]

Defendants also argue that Plaintiff cannot rely on implementing regulations, such as 45 C.F.R. § 41.51(d), which require that programs be administered in the most integrated setting appropriate to the individual's needs.  They rely on *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), and *South Camden Citizens in Action v. New Jersey Department of Environmental Protection*, 274 F.3d 771 (3d Cir. 2001).

In *Alexander*, the Supreme Court ruled that there was no private right of action under regulations enacted under section 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, to proscribe disparate-impact discrimination when section 601 only reached intentional discrimination.  In part, the Court relied on the fact that section 602, 42 U.S.C. § 2000d-1, only authorized regulations to effectuate section 601, which, as noted, covered only intentional discrimination.

---

[4]Section 794(a) provides, in pertinent part, as follows:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

16

Significantly for the instant case, the Court rejected an argument that the regulations themselves "contain rights-creating language and so must be privately enforceable." 532 at 291, 121 S.Ct. 1522, 149 L.Ed.2d at 531, stating "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.*; 121 S.Ct. 1522, 149 L.Ed.2d at 531.

Following *Alexander*, in *South Camden*, the Third Circuit held that private parties could not enforce Title VI disparate-impact environmental regulations by way of 42 U.S.C. § 1983 because Title VI proscribed only intentional discrimination. The court stated that "an administrative regulation cannot create an interest enforceable under section 1983 unless the interest already is implicit in the statute authorizing the regulation." 274 F.3d at 774.

As further support, Defendants point to cases that held that section 504 does not itself create a community-placement mandate. *See*, *e.g.*, *P.C. v. McLaughlin*, 913 F.2d 1033 (2d Cir. 1990). Defendants also cite *Clark v. Cohen*, 794 F.2d 79, 84 n.3 (3d Cir. 1986), as a case where the Third Circuit agreed with this analysis and they assert that any statement to the contrary in *Helen L. v. DiDario*, 46 F.3d 325, 332-35 (3d Cir. 1995), is dictum.

*Alexander* and *South Camden* do not assist Defendants here because, as Plaintiff points out, the regulations implemented

17

under the RA do not go beyond the scope of the statute since section 504 reaches more than just intentional discrimination. *See Frederick L., supra,* 157 F. Supp. 2d at 538.  *Helen L., supra,* gave the ADA's community-placement regulations a similar scope, and we believe both statutes should be given the same breathe. *Id.* at 535-36.[5]

   E.   Enforcement of Medicaid Claims
        Through Section 1983.

Paragraph 62 of the second amended complaint alleges that Defendants violated certain subparagraphs of 42 U.S.C. § 1396r, a provision of Title XIX of the Social Security Act, also known as Medicaid.  The subparagraphs are section 1396r(b)(4)(A)(v), (c)(1)(D), (b)(2)-(4), (b)(4)(A)(i) and (vii) and (e)(7).

Defendants argue that Plaintiff cannot enforce these sections through section 1983 because Plaintiff fails the three-part test for establishing that these provisions confer a federal right upon it, one of the prerequisites for a 1983 claim.

As the Third Circuit has noted, for a statute to confer a federal right, three conditions must be satisfied:

> First, the provision in question must have been "intend[ed] to benefit the putative plaintiff." *Wilder*, 496 U.S. at 509 (quoting

---

[5]We also reject Defendants' interpretation of *Clark* and *Helen L.*  The latter case explained that *Clark* did not dispose of the integration mandate of the ADA or RA.  *Helen L., supra,* 46 F.3d at 334.  *See also Frederick L.,* 157 F. Supp. 2d at 535.

18

> *Golden State Transit Corp.*, 493 U.S. at
> 106)(brackets added in *Wilder*); see also
> *Blessing*, 520 U.S. at 340. Second, the right
> allegedly protected by the statute must not be
> so "vague and amorphous" that its enforcement
> would strain judicial competence. *Blessing*,
> 520 U.S. at 340-41; Wilder, 496 U.S. at 509.
> Finally, the statute must unambiguously impose
> a binding obligation on the states, *id.*, and
> thus the provision giving rise to the asserted
> right must be couched in "mandatory, rather
> than precatory, terms." *Blessing*, 520 U.S. at
> 341.

*Pennsylvania Pharmacists Ass'n v. Houstoun*, ___ F.3d ___, ___,

2002 WL 389273, at *5 (3d Cir. 2002).

Defendants maintain PP&A fails the first and third

prongs of this test. As to the first prong, they contend that

nothing in section 1396r indicates that PP&A, as the sole

plaintiff, is the intended beneficiary of the section; instead the

residents would be. As to the third prong, the section does not

impose binding obligations on DPW as medical assistance payor.

We reject this argument. As Plaintiff points out, it is

suing on behalf of the residents, not for itself. Second, the

cited subsections do impose binding obligations on DPW as a

nursing-home service provider.[6]

Defendants also argue that Plaintiff cannot rely on

implementing regulations cited in the complaint to support its

---

[6]Defendants also cited *Brogdon v. National Healthcare Corp.*,
103 F. Supp. 2d 1322 (N.D. Ga. 2000), to support its argument that
PP&A cannot sue under section 1983. However, as Plaintiff points
out, that case is distinguishable because the provider there was a
private entity and the test for an implied cause of action is
different for those kinds of providers.

medicaid cause of action.  Since we have decided that section 1396r's statutory subsections are sufficient for the cause of action, we need not address this argument.

We will issue an appropriate order.

William W. Caldwell
United States District Judge

Date:  March 27, 2002

20

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

March 27, 2002

Re:  1:00-cv-01582    Pennsylvania Protect v. PA Dept. of Public


True and correct copies of the attached were mailed by the clerk
to the following:

    Robert W. Meek, Esq.
    Disability Law Project
    1315 Walnut St
    Suite 400
    Philadelphia, PA  19107-4798

    Robin Resnick, Esq.
    Disability Law Project
    1315 Walnut St
    Suite 400
    Philadelphia, PA  19107-4798

    Mark J. Murphy, Esq.
    Disabilities Law Project
    429 Fourth Ave.
    1901 Law & Finance Building
    Pittsburgh, PA  15219    Fax No.: 14123914496


    Carol A. Horowitz, Esq.
    Disabilities Law Project
    429 Fourth Ave.
    1901 Law & Finance Building
    Pittsburgh, PA  15219

    Michael L. Harvey, Esq.
    Office of Attorney General
    Strawberry Square
    15th Floor
    Harrisburg, PA  17120

    Susan J. Forney, Esq.
    Office of Attorney General
    Strawberry Square
    15th Floor
    Harrisburg, PA  17120

    Howard Ulan, Esq.
    PA Office of General Counsel
    Health & Welfare Bldg.

```
3rd Floor
Harrisburg, PA  17120    Fax No.: 17177720717


Thomas Blazusiak, Esq.
Department of Public Welfare
Office of Legal Counsel
Allentown State Hospital
1600 Hanover Avenue
Allentown, PA  18103
```

```
cc:
Judge                       ( ✓)           ( ) Pro Se Law Clerk
Magistrate Judge            (  )           ( ) INS
U.S. Marshal                (  )           ( ) Jury Clerk
Probation                   (  )
U.S. Attorney               (  )
Atty. for Deft.             (  )
Defendant                   (  )
Warden                      (  )
Bureau of Prisons           (  )
Ct Reporter                 (  )
Ctroom Deputy               (  )
Orig-Security               (  )
Federal Public Defender     (  )
Summons Issued              (  ) with N/C attached to complt. and served by:
                                 U.S. Marshal ( )      Pltf's Attorney ( )
Standard Order 93-5         (  )
Order to Show Cause         (  ) with Petition attached & mailed certified mail
                                 to: US Atty Gen   ( )  PA Atty Gen ( )
                                     DA of County  ( )  Respondents ( )
Bankruptcy Court            (  )
Other_____    (  )
```

                                        MARY E. D'ANDREA, Clerk

DATE: _____3/27/02_____          BY: _____
                                        Deputy Clerk