

5-7-02



ᘓ ᖴᐤᗉ

FILED
HARRISBURG, PA

MAY 0 6 2002

MARY E. D'ANDREA, CLERK
Per _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA PROTECTION AND ADVOCACY, INC., | : |
| | : |
| Plaintiff, | :   Civil Action No. 1:00-CV-1582 |
| | : |
| v. | :   Judge Caldwell |
| | : |
| DEPARTMENT OF PUBLIC WELFARE OF THE COMMONWEALTH OF PENNSYLVANIA; *et al.*, | : |
| | : |
| Defendants. | : |

## EXHIBITS IN SUPPORT OF PLAINTIFF'S MOTION
## TO STRIKE CERTAIN EXHIBITS TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Robert W. Meek
Robin Resnick
Disabilities Law Project
1315 Walnut Street, Suite 400
Philadelphia, PA 19107-4798
(215) 238-8070

Mark J. Murphy
Disabilities Law Project
1901 Law & Finance Building
429 Fourth Avenue
Pittsburgh, PA 15219-1505
(412) 391-5225

Counsel for Plaintiff

# TABLE OF EXHIBITS

| Exhibit | Letter |
|---|---|
| Joint Case Management Plan | A |
| Plaintiff's Initial Disclosures | B |
| Defendants' Disclosure Pursuant to Fed. R. Civ. P. 26(a)(1) | C |
| *Stein v. Foamex International, Inc.*, 2001 WL 936566 (E.D. Pa. Aug. 15, 2001) | D |

Exh A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PENNSYLVANIA PROTECTION AND          :
ADVOCACY, INC.,                      :
                                     :
              Plaintiff,             :
                                     :
        v.                           :    C.A. No. 1:00-cv-1582
                                     :
DEPARTMENT OF PUBLIC WELFARE OF      :    Judge William W. Caldwell
THE COMMONWEALTH OF PENNSYLVANIA,    :
et al.,                              :
                                     :
              Defendants.            :
                                     :

## JOINT CASE MANAGEMENT PLAN

Having met on November 20, 2000 in accordance with the Local Rules, the parties hereby submit the following Joint Case Management Plan.

**1.0  Principal Issues**

1.10 Separately for each party, please give a statement summarizing this case:

By Plaintiff:

Plaintiff Pennsylvania Protection and Advocacy, Inc. ("PP&A"), the organization designated by the Commonwealth of Pennsylvania pursuant to federal law to protect and advocate on behalf of persons with disabilities, brings this lawsuit on behalf of residents of South Mountain Restoration Center ("SRMC"). SMRC, located in an isolated area in Franklin County, is the only state-operated nursing facility in Pennsylvania. SMRC houses almost exclusively persons who have severe and persistent mental illness,

most of whom were transferred to SMRC from state psychiatric hospitals. As detailed below, PP&A alleges widespread violations of SMRC residents' constitutional and statutory rights. PP&A seeks appropriate declaratory and injunctive relief.

PP&A alleges that the individual Defendants violated Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., and its implementing regulations. Title XIX is the federal Medical Assistance law which establishes minimum standards for nursing homes that receive Medical Assistance funding, such as SMRC. Among other things, the individual Defendants have failed to comply with the following Medical Assistance requirements:

  ◆ subjecting SMRC to verbal and mental abuse;

  ◆ failing to assure that SMRC cares for residents in a manner and environment that maintains their dignity, including failing to assure their privacy;

  ◆ failing to maintain a safe, clean, comfortable, and homelike environment at SMRC as evidence by, for example, constant strong urine odors and excessive temperatures in summer;

  ◆ failing to provide SMRC residents with necessary assistive technology by, for example, placing them in "geri-chairs" and sling-back wheelchairs in which they cannot ambulate independently and which create a high risk of harm;

  ◆ failing to provide appropriate mental health and mental retardation services for SMRC residents and using anti-psychotic medications without behavioral interventions;

  ◆ admitting to SMRC individuals whose physical and mental condition do not require the level of services provided by a nursing facility; and

  ◆ failing to comply with Pennsylvania law concerning advance directives for health care.

PP&A also contends that Defendants DPW and Houstoun violated the Americans with Disabilities Act, 42 U.S.C. § 12132, and implementing regulations, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and implementing regulations. Among the violations are the following:

  ◆ failure to provide community-based mental health services to those SMRC residents for whom the community is the most integrated setting appropriate to their needs;

2

◆    using methods of administration that have the effect of unnecessarily institutionalizing SMRC residents by, <u>inter alia</u>, failing to provide them with appropriate treatment at SMRC and failing to have county mental health personnel (who normally are responsible for facilitating community placements from state psychiatric hospitals) be actively involved with individuals once they are transferred to SMRC;

◆    perpetuating the discrimination of other nursing facilities that participate in Pennsylvania's Medical Assistance program and that are known not to accept individuals with serious and persistent mental illness.

Finally, PP&A contends that the individual Defendants violated the Fourteenth Amendment to the Constitution by unnecessarily restraining residents at SMRC; by failing to provide them with minimally adequate or reasonable training to ensure safety and freedom from undue restraint; and by allowing the authorization of "Do Not Resuscitate" orders for SMRC residents who have not given consent.

By Defendants:

The defendants deny that they have violated Title XIX of the Social Security Act, 42 U.S.C. § 1396 <u>et seq.</u>, and its implementing regulations in their operation of South Mountain Restoration Center. Rather, defendants assert that South Mountain is in full compliance with the standards for nursing homes receiving Medical Assistance funding.

Defendants also deny that DPW or Secretary Houstoun violated the Americans with Disabilities Act, 42 U.S.C. § 12132, or Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Defendants have relied on the reasonable assessments of their own professionals in placing residents at South Mountain. Further, DPW has an effective working plan for placing qualified residents of South Mountain in community settings, and indeed, regularly discharges residents to less restrictive settings.

In addition, defendants assert that plaintiff's claims requesting deinstitutionalization of the residents of South Mountain, under the ADA or the Rehabilitation Act, are legally insufficient. The Rehabilitation Act contains no recognition that segregation of persons with disabilities is a form of discrimination and, therefore, does not support plaintiff's claim under that Act. Defendants also assert that the ADA is unconstitutional as applied to the states and, therefore, cannot support plaintiff's claim. Therefore, as a matter of law, plaintiff's claims under the Rehabilitation Act and the ADA should be dismissed.

Finally, defendants deny that they have violated the Fourteenth Amendment.

The principal *factual* issues that the parties *dispute* are:

1.11 Whether the conditions at SMRC are sub-standard.

1.12 Whether SMRC residents' rights are respected.

1.13 Whether Defendants do not provide SMRC residents with appropriate mental health and mental retardation services.

1.14 Whether Defendants do not provide medically necessary assistive technology (e.g., wheelchairs) to residents.

1.15 Whether Defendants admit to SMRC individuals who do not need the level of care provided by a nursing facility.

1.16 Whether "Do Not Resuscitate" Orders have been inappropriately authorized for some SMRC residents.

1.17 Whether SMRC residents are unnecessarily segregated at SMRC, including whether the community is the most integrated setting appropriate to their needs, and why such unnecessary segregation occurs.

1.18 Whether private nursing facilities funded by DPW through its Medical Assistance program discriminate against individuals with severe and persistent mental illness and what Defendants have done to address such discrimination.

1.19 Defendants have developed no plan to assure that SMRC residents -- and other institutionalized persons with mental disabilities who are elderly and/or have medical needs -- are provided with services in the most integrated setting appropriate to their needs.

The principal *factual* issues that the parties *agree* upon are:

1.20 SMRC residents have impairments that substantially limit their major life activities.

1.21 DPW receives federal financial assistance.

1.30 The principal *legal* issues that the parties *dispute* are:

4

1.31 Whether the conditions and treatment at SMRC violate Title XIX of the Social Security Act.

1.32 Whether the Americans with Disabilities Act, as applied to the states, is constitutional.

1.33 Whether Plaintiff has stated actionable claims under the Rehabilitation Act.

1.34 Whether Defendants have violated the Americans with Disabilities Act and the Rehabilitation Act by unnecessarily segregating SMRC residents and using methods of administration that unnecessarily segregate them, failing to provide them with reasonable accommodations, and perpetuating the discrimination of private nursing facilities.

1.35 Whether Defendants have violated the Due Process Clause by failing to provide minimally adequate treatment to SMRC residents, unnecessarily restraining them at SMRC, and authorizing DNR orders without appropriate consents.

1.36 Whether Plaintiffs' ADA claims are barred by the Eleventh Amendment of the Constitution.

The principal *legal* issues that the parties *agree* upon are:

1.40 SMRC residents are persons with disabilities protected by the Americans with Disabilities Act and the Rehabilitation Act.

1.41 PP&A has standing to pursue these claims on behalf of SMRC residents.

1.50 Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:

None

1.60 Identify any named parties that have not yet been served:

None

1.70 Identify any additional parties that Plaintiff intends to join:

None

Defendants intend to join:

5

None

1.80 Identify any additional claims that Plaintiff intends to add:

None

Defendants intend to add:

None

## 2.0 Alternative Dispute Resolution ("ADR")

2.10 Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.

ADR procedure: None

Date ADR to be commenced:  Not applicable

Date ADR to be completed:  Not applicable

2.20 If the parties have been unable to agree on an ADR procedure, but one or more parties believes that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:

Not applicable

2.30 If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view:

The parties have a fundamental difference of opinion about Defendants' legal obligations which likely will require judicial resolution.

## 3.0 Consent to Jurisdiction by a Magistrate Judge

Indicate whether all parties agree, pursuant to 28 U.S.C. § 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:

All parties agree to jurisdiction by a magistrate judge of this court:  _____ Y    ___X___ N

If parties agree to proceed before a magistrate judge, please indicate below which location is desired for the proceedings:

_____ Scranton

6

_____ Wilkes-Barre
_____ Harrisburg

Not applicable

## 4.0  Disclosures

4.100    Separately for each party, list by *name and title/position* each person whose identity has been disclosed:

4.101    Disclosed by Plaintiff

4.102    Kevin T. Casey, Executive Director, PP&A

4.103    Jaqueline Beilharz, Central Team Leader, PP&A

4.104    Diana Carra Haugh, Central Team Advocate, PP&A

4.105    Margaret Leed, Central Team Advocate, PP&A

4.106    Patricia Madigan, Central Team Advocate, PP&A

4.107    Judy Banks, Eastern Team Leader, PP&A

4.108    Deborah Delgado, former Eastern Team Advocate, PP&A (no longer employed by PP&A)

4.109    Linda Cahall, Eastern Team Advocate, PP&A

4.110    David Groninger, Western Team Advocate, PP&A

4.111    David Becirovic, Bookeeper, PP&A

4.112    Dean L. Haugh, C.O.T.A.

4.113    Charles G. Curie, Deputy Secretary for Mental Health & Substance Abuse Services, DPW

4.114    George Kopchick, Director, Bureau of Hospital Operations, DPW, OMHSAS

4.115    S. Reeves Power, Ph.D., Superintendent, SMRC

7

4.116   Thomas A. Buckus, former Superintendent, SMRC

4.117   John Saweikis, Director Social and Rehabilitative Services, SMRC

4.118   Philip L. Keffer, Director, Therapeutic Activities Services, SMRC

4.119   Judith Pelter, SMRC

4.120   Donna DiCasimirro, Manager, Mental Retardation Services, Office of Client Rights, DPW

4.121   James Pezzuti, DPW, Bureau of Long-Term Care Programs, Division of Long-Term Care Client Services

4.122   Mark Wassakanin, Social Worker, Norristown State Hospital

4.123   Linda Hengst, Community Education Specialist, Citizens for Independence and Access

4.151   Disclosed by Defendants

4.152   Charles Curie, Deputy Secretary for Mental Health & Substance Abuse Services, DPW

4.153   George Kopchick, Director, Bureau of Hospital Operations, DPW, OMHSAS

4.154   S. Reeves Power, Ph.D., Superintendent, SMRC

4.200   Separately for each party, describe by *categories* the documents that have been disclosed or produced through formal discovery, indicating which categories relate (even if not exclusively) to damages:

4.201   Categories of documents disclosed by Plaintiff:

4.202   Miscellaneous correspondence and e-mail between PP&A staff and DPW officials and/or SMRC officials/staff.

4.203   Evaluations of SMRC residents for assistive technology and summary of

8

assessments attached to letter from Philip L. Keffer, SMRC, to Marg Leed dated August 10, 1999.

4.204    Letter and report from Donna DiCasimirro dated September 30, 1999 on swallowing and eating disorders at SMRC and letter from Thomas A. Buckus, former Superintendent, SMRC, to J. Beilharz, PP&A dated November 9, 1999 enclosing same.

4.205    PP&A Report on SMRC dated July 20, 1999 and letter from K. Casey, PP&A, to C. Curie, DPW, dated July 26, 1999 enclosing same.

4.206    Last three DOH surveys of SMRC and letter from Dr. Power, SMRC, to K. Casey, PP&A dated July 19, 2000 enclosing same.

4.207    List of SMRC residents with mental retardation.

4.208    Miscellaneous notes of observations by PP&A staff at SMRC.

4.209    Resident Interview Forms completed by PP&A for B.K., M.B., M.K. dated July 18, 2000.

4.210    SMRC Staff Interview Forms completed by PP&A re interviews in July 2000.

4.211    Observation forms completed by PP&A re monitoring at SMRC conducted in July 2000.

4.212    Record Review Forms from July 2000 and partial SMRC records of residents R.L.; P.S.; R.D.; C.L.; J.B.; H.M.; R.R.; B.L.; and G.L.

4.213    Hospital and treatment information, resident interviews, resident record reviews recorded by PP&A staff during visits to SMRC in May 1999.

4.214    DPW's abuse investigation file re allegation of abuse/neglect involving resident N.W.

4.215    Death notices from OMHSAS since 1999.

9

4.216    Program plan and budget requests for SMRC for FY 1998-2001.

4.217    Consumer Satisfaction Surveys completed by CST of Lehigh Valley, Inc. for residents transferred from Allentown State Hospital to SMRC.

4.218    SMRC's DNR policy revised on June 18, 1998 and September 15, 1998 and draft of new DNR procedure developed in February 2000.

4.219    Intake note re issues raised by Linda Hengst to PP&A staff re SMRC and correspondence from SMRC to Ms. Hengst re same.

4.220    Minutes of various SMRC Resident Council meetings.

4.221    Post-mortem review of R.M.

4.222    OMAP's Statistical Report for FY 1997-1998 and cover letter from Peg J. Dierkers dated December 31, 1999 re same.

4.223    Printout of information from HCFA's Medicare website re SMRC.

4.224    Summary of Delaware County's three residents at SMRC authored by Jill Baldwin of Delaware County's Office of Behavioral Health.

4.225    Legal analyses prepared by DLP staff (internal and for client) dated June 14, 1999 and June 22, 2000.

4.226    Miscellaneous research by DLP attorneys re potential claims.

4.227    Correspondence and e-mail between DLP attorneys and PP&A staff re SMRC.

4.251    Categories of documents disclosed by Defendants:

4.252    None at this time

4.300    *Additional Documents Disclosures*:  Separately for each party, describe each additional category of documents that will be disclosed without imposing

10

on other counsel the burden of serving a formal request for production of documents:

4.301    Additional categories of documents Plaintiff will disclose:

4.302  None

4.351    Additional categories of documents Defendants will disclose:

4.352  None

4.400    Separately for each party who claims an entitlement to damages or an offset, set forth the computation of damages or of the offset:

4.401  Plaintiff's calculation of damages:

Not applicable

4.402  Defendants' calculation of offset:

Not applicable

4.403 Counter claimant/third party claimant's calculation of damages:

Not applicable

## 5.0  Motions

Identify any motion(s) whose early resolution would *likely* have a significant effect either on the scope of discovery or other aspects of the litigation:

| Nature of Motion | Moving Party | Filing Date |
|---|---|---|
| Motion for Partial Summary Judgment | Defendants | September 4, 2001 |

## 6.0  Discovery

6.100    Briefly describe any discovery that has been completed or is in progress:

By Plaintiff:  Plaintiff served document requests on November 20, 2000.

By Defendants:  Defendant served document requests on November 21, 2000.

11

6.200     Describe any *discovery* that all *parties agree* should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g., "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):

Plaintiff will depose Charles Curie and George Kopchick and/or, if appropriate, other persons designated by Defendants concerning, <u>inter alia</u>, (1) DPW policies and practices at SMRC; (2) DPW policies and practices concerning community placement of persons with mental illness who are elderly and/or have medical problems; (3) DPW policies and practices concerning discrimination by private nursing facilities against persons with severe and persistent mental illness.

Plaintiff will depose S. Reeves Power, Ph.D. and, if appropriate, other persons designated by Defendants concerning conditions and treatment at SMRC.

Plaintiff will depose James Pezzutti and/or, if appropriate, other persons designated by Defendants concerning admissions to nursing homes of people with mental illness and mental retardation and specialized services for those individuals and related issues.

Plaintiff also will serve document requests and interrogatories on Defendants.

Defendants may depose PP&A staff involved in investigations at SMRC. Defendants also will serve document requests and interrogatories on Plaintiff.

6.300     Describe any *discovery* that one or more parties want(s) to conduct but *to which another party objects*, indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:

None

6.400     Identify any *subject area limitations on discovery* that one or more parties would like imposed, at the first stage of or throughout the litigation:

None

12

6.500    For each of the following discovery tools, *recommend the per-party or per-side limitation* (specify a number) that should be fixed subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree set forth separately the limited recommended by Plaintiff and by Defendants):

6.501    Depositions (excluding experts) to be taken by:

20

6.502    Interrogatories to be served by:

30

6.503    Document production requests to be served by:

75

6.504    Requests for admissions to be served by:

100

6.600    All discovery commenced in time to be completed by:

June 1, 2001

6.700    Reports from retained experts due:

From Plaintiff:    July 2, 2001

From Defendants:    July 16, 2001

6.800    Supplementations due:    July 30, 2001

## 7.0  Protective Order

7.1    If entry of a protective order is sought, attach to this statement a copy of the proposed order.

None at this time.  If necessary, Plaintiff may seek an order to protect the identities of SMRC residents against public disclosure.

7.2    If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below:

Not applicable

13

8.0  **Certification of Settlement Authority (All Parties Shall Complete the Certification)**

I, Robert W. Meek, counsel for Plaintiff, hereby certify that the following individual has settlement authority:

> Kevin Casey
> Executive Director
> Pennsylvania Protection and Advocacy, Inc.
> 1414 North Cameron Street
> Suite C
> Harrisburg, PA  17103
> (800) 692-7443 (Daytime Telephone)

I, Michael L. Harvey, counsel for Defendants, hereby certify that the following individuals have settlement authority:

> Feather O. Houstoun
> Secretary of Public Welfare
> Department of Public Welfare
> 333 Health & Welfare Building
> Harrisburg, PA  17120
>
> Mike Fisher
> Attorney General
> Office of Attorney General
> Strawberry Square
> Harrisburg, PA  17120

9.0  **Scheduling**

9.1  This case may be appropriate for trial in approximately:

> _____  240 days from the filing of the action in this court
> _____  365 days from the filing of the action in this court
> __X__  420 days from the filing of the action in this court

9.2  Suggested Date for Trial:

November 2001

9.3  Suggested Date for the final Pretrial Conference

October 2001

9.4  Final date for joining additional parties:

Plaintiff:  February 1, 2001

14

Defendants:    February 1, 2001

9.5   Final date for amending pleadings:

Plaintiff:   February 1, 2001

Defendants:   February 1, 2001

9.6   All potentially dispositive motions should be filed by:

September 4, 2001

**10.0 Other Matters**

Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.

None

**11.0 Identification of Lead Counsel**

Identify by name, address, and telephone number lead counsel for each party:

Plaintiff:

Robert W. Meek
Disabilities Law Project
1315 Walnut Street, Suite 400
Philadelphia, PA  19107-4798
(215) 238-8070

Defendants:

Michael L. Harvey
Deputy Attorney General
Office of Attorney General
Strawberry Square, 15th Floor
Harrisburg, PA  17120
(717) 783-6896

Dated:   November 21, 2000

Robert W. Meek
Disabilities Law Project
1315 Walnut Street, Suite 400
Philadelphia, PA  19107-4798
(215) 238-8070

Attorney for Plaintiff

15

Dated:   November 22, 2000

Michael L. Harvey
Deputy Attorney General
Office of Attorney General
Strawberry Square, 15th Floor
Harrisburg, PA  17120
(717) 783-6896

Attorney for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PENNSYLVANIA PROTECTION AND       :
ADVOCACY, INC.                        :
          Plaintiff             :
                                    :
    v.                               : No. 1:00-CV-01582
                                    :
DEPARTMENT OF PUBLIC WELFARE, et al. : (Judge Caldwell)
          Defendants          :

## CERTIFICATE OF SERVICE

I, Michael L. Harvey, Senior Deputy Attorney General for the Commonwealth of

Pennsylvania, Office of Attorney General, hereby certify that on November 28, 2000, I caused to

be served a true and correct copy of the foregoing document, Joint Case Management Plan, by

depositing it in the United States mail, first-class postage prepaid to the following:

Robert W. Meek                    Mark J. Murphy
Disabilities Law Project          Disabilities Law Project
1315 Walnut Street, Suite 400     1901 Law and Finance Building
Philadelphia, PA 19107-4798      429 Fourth Avenue
                                        Pittsburgh, PA 15219-1505

**MICHAEL L. HARVEY**
Senior Deputy Attorney General

DATE:  November 28, 2000



Exh B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PENNSYLVANIA PROTECTION AND     :
ADVOCACY, INC.,     :
    :
         Plaintiff,     :
    :
         v.     :   C.A. No. 1:00-cv-1582
    :
DEPARTMENT OF PUBLIC WELFARE OF     :   Judge William W. Caldwell
THE COMMONWEALTH OF PENNSYLVANIA,     :
et al.,     :
    :
         Defendants.     :

## INITIAL DISCLOSURES

## I.  GENERAL RESPONSE

Pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, Plaintiff, through its counsel, submits these Initial Disclosures. Discovery is continuing and Plaintiff reserves the right to supplement these disclosures at a future date. Plaintiff will not disclose any information which is subject to the attorney-client privilege, work product protection, or any other applicable privilege.

## II.  SPECIFIC RESPONSES

### A.  Persons Likely To Have Information

1. Kevin Casey
   Executive Director
   Pennsylvania Protection and Advocacy, Inc.
   1414 North Cameron Street, Suite C
   Harrisburg, PA  17103
   (717) 236-8110

   Mr. Casey has information about Plaintiff, its monitoring of SMRC, and its advocacy on behalf of residents of SMRC.

2. Jacqueline Beilharz, Central Team Leader
3. Margaret Leed, Central Team Advocate (PAIR)

4.   Diana Carra Haugh, Central Team Advocate (DD)
5.   Patricia Madigan, Central Team Advocate (PAIMI)
     Pennsylvania Protection and Advocacy, Inc.
     1414 North Cameron Street, Suite C
     Harrisburg, PA  17103
     (717) 236-8110

     These PP&A staff members have information about
     SMRC and PP&A's monitoring of SMRC.

6.   Judy Banks, Eastern Team Leader
7.   Linda Cahall, Eastern Team Advocate (PAIMI)
8.   David Groninger, Western Team Advocate (PAIMI)
     Pennsylvania Protection and Advocacy, Inc.
     1414 North Cameron Street, Suite C
     Harrisburg, PA  17103
     (717) 236-8110

     These PP&A staff members have information about
     PP&A's monitoring review of SMRC in May 1999.

9.   Deborah Delgado
     640 North Yarnallton Pike
     Lexington, KY  40511
     (859) 281-6464

     Ms. Delgado, the former Eastern Team Advocate (DD)
     at PP&A, participated in PP&A's monitoring review
     of SMRC in May 1999.

10.  David Becirovic, Bookkeeper
     Pennsylvania Protection and Advocacy, Inc.
     1414 North Cameron Street, Suite C
     Harrisburg, PA  17103
     (717) 236-8110

     Mr. Becirovic assisted Ms. Leed to speak with a
     SMRC resident who speaks Polish/German/Russian.

11.  Susan Walther
     Mental Health Association of Pennsylvania
     1414 North Cameron Street, Suite C
     Harrisburg, PA  17103
     (717) 236-8110

     Ms. Walther participated as a volunteer in PP&A's
     monitoring review of SMRC in May 1999.

12.  Dean L. Haugh, C.O.T.A.
     305 West Center Street
     Donaldson, PA  17981
     (570) 695-2526

2

Mr. Haugh observed residents at SMRC in July 2000 concerning assistive technology needs, feeding/ swallowing, and positioning issues.

13. Linda Hengst, Community Education Specialist
Citizens for Independence and Access
3450 Industrial Drive
York, PA 17402
(717) 840-9653

Ms. Hengst contacted PP&A in December 1997 about concerns raised by a monitoring visit she conducted at PP&A with the ARC of York County.

14. Charles G. Curie
Deputy Secretary for Mental Health & Substance
        Abuse Services
Department of Public Welfare
502 Health and Welfare Building
P.O. Box 2675
Harrisburg, PA 17120
(717) 787-6443

Deputy Secretary Curie may have information about treatment and conditions at SMRC; DPW's policies and practices concerning community placement of persons with mental illness who are elderly and/or have medical problems; and DPW policies and practices concerning discrimination by private nursing facilities against persons with severe and persistent mental illness.

15. George Kopchick
Director, Bureau of Hospital Operations
Office of Mental Health & Substance Abuse Services
Department of Public Welfare
Beechwood Building
Harrisburg State Hospital
Cameron & McClay Streets
P.O. Box 2675, Pouch A
Harrisburg, PA 17105-1300
(717) 705-8152

Mr. Kopchick may have information about treatment and conditions at SMRC; DPW's policies and practices concerning community placement of persons with mental illness who are elderly and/or have medical problems; and DPW policies and practices concerning discrimination by private nursing facilities against persons with severe and persistent mental illness.

3

16. S. Reeves Power, Ph.D., Superintendent, SMRC
    South Mountain Restoration Center
    10058 South Mountain Road
    South Mountain, PA  17261-9999
    (717) 749-4000

    Dr. Power may have information about treatment and
    conditions at SMRC; policies and practices
    concerning placements of current or potential SMRC
    residents in community programs and/or local
    nursing facilities.

17. Thomas A. Buckus
    Address and Phone Number Unknown

    Mr. Buckus, the former Superintendent at SMRC, may
    have information about treatment and conditions at
    SMRC; policies and practices concerning placements
    of current or potential SMRC residents in community
    programs and/or local nursing facilities.

18. John Saweikis
    Director, Social and Rehabilitative Services
    South Mountain Restoration Center
    10058 South Mountain Road
    South Mountain, PA  17261-9999
    (717) 749-4000

    Mr. Saweikis may have information about treatment
    and conditions at SMRC.

19. Philip L. Keffer
    Director, Therapeutic Activities Services
    South Mountain Restoration Center
    10058 South Mountain Road
    South Mountain, PA  17261-9999
    (717) 749-4000

    Mr. Keffer may have information about assistive
    technology and other therapeutic services provided
    to SMRC residents.

20. Judith Pelter
    South Mountain Restoration Center
    10058 South Mountain Road
    South Mountain, PA  17261-9999
    (717) 749-4000

    Ms. Pelter may have information about the proposed
    closure of one or more units at SMRC and the
    discharge plans for residents.

4

21.  Donna DiCasimirro, Manager
     Mental Retardation Services
     Office of Client Rights
     Department of Public Welfare
     P.O. Box 2675
     Harrisburg, PA  17120
     (717) 787-4519

     Ms. DiCasimirro has information about an
     investigation she conducted at SMRC concerning
     eating and swallowing disorders which resulted in
     her issuance of a report on that issue in September
     1999.

22.  James Pezzuti
     Bureau of Long-Term Care Programs
     Division of Long-Term Care Client Services
     Office of Medical Assistance Programs
     Department of Public Welfare
     1401 North 7th Street
     4th Floor, Bertolino Building
     Harrisburg, PA  17102
     (717) 772-2525

     Mr. Pezzuti may have information about standards
     for admitting individuals to nursing facilities;
     specialized services for persons with mental
     retardation and mental illness; and admissions by
     private nursing facilities of persons with mental
     illness.

23.  Mark Wassakanin
     Social Worker
     Norristown State Hospital
     1001 Sterigere Street
     Norristown, PA  19401-5397
     (610) 313-1000

     Mr. Wassakanin may have information about admis-
     sions of persons with severe and persistent mental
     illness to local nursing facilities.

B.  **Documents**

1.  Miscellaneous correspondence and e-mail between
    PP&A staff and DPW officials and/or SMRC
    officials/staff.

2.  Evaluations of SMRC residents for assistive
    technology and summary of assessments attached to
    letter from Philip L. Keffer, SMRC, to Margaret
    Leed dated August 10, 1999.

5

3.   Letter and report from Donna DiCasimirro dated September 30, 1999 on swallowing and eating disorders at SMRC and letter from Thomas A. Buckus, former Superintendent, SMRC, to J. Beilharz, PP&A dated November 9, 1999 enclosing same.

4.   PP&A Report on SMRC dated July 20, 1999 and letter from K. Casey, PP&A, to C. Curie, DPW, dated July 26, 1999 enclosing same.

5.   Last three DOH surveys of SMRC and letter from Dr. Power, SMRC, to K. Casey, PP&A dated July 19, 2000 enclosing same.

6.   List of SMRC residents with mental retardation.

7.   Miscellaneous notes of observations by PP&A staff at SMRC.

8.   Resident Interview Forms completed by PP&A for B.K., M.B., M.K. dated July 18, 2000.

9.   SMRC Staff Interview Forms completed by PP&A re interviews in July 2000.

10.  Observation forms completed by PP&A re monitoring at SMRC conducted in July 2000.

11.  Record Review Forms from July 2000 and partial SMRC records of residents R.L.; P.S.; R.D.; C.L.; J.B.; H.M.; R.R.; B.L.; and G.L.

12.  Hospital and treatment information, resident interviews, resident record reviews recorded by PP&A staff during visits to SMRC in May 1999.

13.  DPW's abuse investigation file re allegation of abuse/neglect involving resident N.W.

14.  Death notices from OMHSAS since 1999.

15.  Program plan and budget requests for SMRC for FY 1998-2001.

16.  Consumer Satisfaction Surveys completed by CST of Lehigh Valley, Inc. for residents transferred from Allentown State Hospital to SMRC.

17.  SMRC's DNR policy revised on June 18, 1998 and September 15, 1998 and draft of new DNR procedure developed in February 2000.

18.  Intake note re issues raised by Linda Hengst to PP&A staff re SMRC and correspondence from SMRC to Ms. Hengst re same.

19.  Minutes of various SMRC Resident Council meetings.

20.  Post-mortem review of R.M.

21.  OMAP's Statistical Report for FY 1997-1998 and letter from Peg J. Dierkers date December 31, 1999 re same.

22.  Printout of information from HCFA's Medicare website re SMRC.

23.  Summary of Delaware County's three residents at SMRC authored by Jill Baldwin of Delaware County's Office of Behavioral Health.

24.  Legal analyses prepared by DLP staff (internal and for client) dated June 14, 1999 and June 22, 2000.

25.  Miscellaneous research by DLP attorneys re potential claims.

26.  Correspondence and e-mail between DLP attorneys and PP&A staff re SMRC.

Upon request, Plaintiffs will produce any of the documents identified above with the exceptions of Nos. 24 and 25 (which are protected by the work product doctrine) and No. 26 (which are protected by the attorney-client privilege and/or work product doctrine).

C.  **Computation Of Damages**

Not applicable.

D.  **Insurance Agreement**

Plaintiff has no insurance policy relevant to this litigation.

Dated:    October 23, 2000    By: _Robert W Meek_____

Robert W. Meek
Robin Resnick
Disabilities Law Project
1315 Walnut Street, Suite 400
Philadelphia, PA  19107-4798
(215) 238-8070

and

Mark J. Murphy
Carol Horowitz
Disabilities Law Project
1901 Law & Finance Building
429 Fourth Avenue
Pittsburgh, PA  15219-1505
(412) 391-5225

Counsel for Plaintiff

8



*Exh C*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PP&A                          :
                             :
    v.                         :          No. 1:00-CV-01582
                             :
DPW, et al                    :

## DEFENDANTS' DISCLOSURE
### PURSUANT TO FED. R. CIV. P. 26(a)(1)

| <u>Witness</u> | <u>Subject</u> |
|---|---|
| Reeves Power, Ph.D.<br>South Mountain Restoration Center<br>South Mountain, PA<br>717-749-4000 | Operation of SMRC. |
| James Kodlick<br>South Mountain Restoration Center<br>South Mountain, PA<br>717-749-4000 | Operation of SMRC. |
| Linda Christie, M.D.<br>South Mountain Restoration Center<br>South Mountain, PA<br>717-749-4000 | Medical needs of and care<br>of SMRC residents.[1] |
| Robert H. Reid, M.D.<br>South Mountain Restoration Center<br>South Mountain, PA<br>717-749-4000 | Medical needs and care<br>of SMRC residents. |
| Brett Goglin, M.D.<br>South Mountain Restoration Center<br>South Mountain, PA<br>717-749-4000 | Medical needs and care<br>care of SMRC residents. |

---

[1] "Medical" includes nursing and ancillary issues

\* retained experts

Derwood Stetson, M.D.
South Mountain Restoration Center
South Mountain, PA
717-749-4000

Medical needs and care
care of SMRC residents.

Elizabeth Rideout, R.N.
South Mountain Restoration Center
South Mountain, PA
717-749-4000

Medical needs and care
of SMRC residents.

Connie Swan, R.N.
South Mountain Restoration Center
South Mountain, PA
717-749-4000

Medical needs and care
of SMRC residents.

John Saweikis
South Mountain Restoration Center
South Mountain, PA
717-749-4000

Social services provided
to SRMC residents.

Pamela Wagaman
South Mountain Restoration Center
South Mountain, PA
717-749-4000

Quality assurance and
improvement at SMRC.

Rita Zimmerman
Program Representative Supervisor
Office of Mental Retardation
Harrisburg State Hosptial
Harrisburg, PA  17120
717-772-7311

Needs of SMRC residents
with mental retardation.

James Pezzuti
Divisionof Long-Term Care Client Services
4th Floor, Bertolino Building
Harrisburg, PA  17102
717-772-2525

Pennsylvania's long-term
care system.

*James Hegarty, M.D.
Summit Behavioral Health Services
176 South Coldbrook Ave., Unit #2
Chambersburg, PA  17201
717-267-7480

Psychiatric needs of and
care of SMRC residents.

*Thomas E. Lawrence, M.D.
Penn Medicine at Radnor
250 King of Prussia Road
Radnor, PA  19087
610-902-5612

Medical needs of and care
of SMRC residents.

*Sue Renz, R.N.
233 N. Dulton Mill Road
West Chester, PA  19380

Need for and quality of
nursing care provided to
SMRC residents.

*Marie Boltz, R.N.
8308 Tulpehocken Avenue
Elkins Park, PA  19027

Need for and quality of
nursing care provided to
SMRC residents.

*Elizabeth Capezuti, Ph.D., R.N.
Nell Hodgson Woodruff School of Nursing
Emory University
3520 Clifton Road, Room 368
Atlanta, GA  30022
404-727-9926

Need for and quality of
nursing care provided to
SMRC residents.

*David Beinenfeld, M.D.
Wright State University School of Medicine
Department of Psychiatry
P.O. Box 927
Dayton, OH  45401-0927
937-276-8329

Need for and quality of gero-
psychiatric care provided to
SMRC residents.

*Gary D. Champlin, Ph.D.
Wyomissing Behavior Analysts, Ltd.
2032 Lincoln Court
Wyomissing, PA  19610-2656
610-777-5459

Need for and quality of
psychological care provided
to SMRC residents.

Steven Karp, D.O.
Medical Director
Office of Mental Health & Substance
   Abuse Services
Health & Welfare Bldg.
Harrisburg, PA  17120
717-787-6443

Function of SMRC.

Defendants incorporate by reference anyone listed on Plaintiff's Initial Disclosures.

Documents

None beyond those already provided.

Michael L. Harvey
Senior Deputy Attorney General

Thomas Blazusiak
Senior Assistant Counsel
Department of Public Welfare

Howard Ulan
Senior Assistant Counsel
Department of Public Welfare

Date: 9-21-01

Daniel Fellin
Assistant Counsel

Department of Public Welfare
Office of Legal Counsel
3rd Floor West, Health & Welfare Building
Harrisburg, PA  17120
(717) 783-280

- 4 -

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a copy of the foregoing document upon the person below in the manner indicated.

By first class mail, postage prepaid to:

> Robert W. Meek, Esquire
> Disabilities Law Project
> The Philadelphia Building
> 1315 Walnut Street, Suite 400
> Philadelphia, PA 19107-4798

Daniel Fellin
Assistant Counsel

Date: 9-21-01
Department of Public Welfare
Office of Legal Counsel
3rd Floor West, Health & Welfare Building
Harrisburg, PA 17120
(717) 783-2800

*Exh D*

Not Reported in F.Supp.2d
(Cite as: 2001 WL 936566 (E.D.Pa.))

**Page 1**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Charles D. STEIN
v.
FOAMEX INTERNATIONAL, INC., et al.

No. CIV. A. 00-2356.

Aug. 15, 2001.

*MEMORANDUM AND ORDER*

JAMES McGIRR KELLY, J.

**\*1** Presently before the Court are a Motion to Strike and a Motion to Preclude, both of which were filed by the Defendants, Foamex International, Inc., Foamex L.P., Foamex Carpet Cushion, Inc., Trace International Holdings, Inc., General Felt Industries, Inc., GFI-Foamex and Marshall S. Cogan (collectively referred to as the "Defendants"). In this case, the Plaintiff, Charles D. Stein ("Stein"), filed suit against the Defendants, alleging violations of several environmental statutes. Stein served an Expert Report in support of his claims. The Defendants subsequently filed a Motion for Partial Summary Judgment. The Defendants assert that, in order to survive the Motion for Summary Judgment, Stein's expert filed an Affidavit that clearly contradicts the opinions expressed in his Expert Report. The Defendants have therefore filed the instant Motions. For the following reasons, those Motions are granted.

## I. BACKGROUND

Stein is the owner of a twenty-two acre industrial property located in Philadelphia. The Defendants or their predecessors had leased that property from Stein for forty years. As part of their operations, the Defendants installed several underground storage tanks on the property. Stein alleges that, at some time in 1996 while the Defendants were occupying his property, it became contaminated. Stein filed his Complaint against the Defendants, alleging, among other state law claims, violations of several federal environmental statutes. Stein seeks compensation for the damages allegedly caused to his property, as well as his investigative, remedial and legal fees.

Stein had originally hired Sadat Associates ("Sadat") to perform environmental investigations on his property. Sadat prepared a May 1999 Site Characterization Report, which concluded that some vinyl chloride had been released on Stein's property. By Order of this Court, Stein had to serve any expert reports in this case no later than December 1, 2000. Stein ultimately chose Gary Brown ("Brown"), not Sadat, as his expert. Stein served Brown's Expert Report in a timely manner. Stein did not supplement that Expert Report before December 1. The Defendants deposed Brown on February 28, 2001.

Brown's Expert Report identified five areas of concern on Stein's proper *Se* Brown Report at 3. Brown summarized the first area of concern as "soils and groundwater impacted by releases of petroleum from the Fuel Oil Tanks and/ or Outside Parrafin Tanks." *Id.* Describing this area of concern, Brown's Expert Report mentions only parrafin oil releases near the Outside Parrafin Oil Tank. *Id.* at 2, 4, 8. The Expert Report stated that "the foregoing areas of concern constitute releases or threatened releases of hazardous substances or petroleum." *Id.* at 13. Brown's Expert Report also concluded that the alleged "parrafin oil free product release at this site constitutes a substantial endangerment to human health and/or the environment...." *Ia* When read in conjunction, these different sections of Brown's Expert Report clearly opine that parrafin oil on the property constitutes a release or threatened release that was a substantial endangerment to human health or the environment.

Importantly, nowhere does the Expert Report mention vinyl chloride as an area of concern. Although Sadat's Site Characterization Report mentioned the presence of vinyl chloride, and Brown's Expert Report mentioned the Site Characterization Report as a reference, the Expert Report neither adopted those particular findings nor vouched for their reliability. Indeed, the Expert Report does not expressly refer to that particular conclusion at all. Rather, the Expert Report simply mentions that Sadat had performed work for Stein.

**\*2** The Defendants filed a Motion for Partial Summary Judgment on March 14, 2001. Briefly stated, the Defendants argued that Stein's federal statutory claims must fail because he had not

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

presented evidence of a threshold amount of proscribed contamination. Specifically, the Defendants argued that, in order to recover, Stein would have to prove that there was an imminent and substantial environmental endangerment, and that the costs of Stein's environmental investigation work were necessary to address the release or threatened release of hazardous substances. *See* Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 §J.S.C. 9607(a)(4)(B) (1994); Resource Conservation and Recovery Act (RCRA), 42 U.S.C § 6972(a)(1)(B) (1994).

The Court granted several extensions of time in this case. Finally, on March 22, 2001, pursuant to a stipulation of the parties, the Court ordered that the case would be placed in the trial pool on May 6, 2001.

Stein then filed a Brief in Opposition to the Defendants' Motion for Partial Summary Judgment on April 6, 2001. Attached to that Brief was an Affidavit of Brown. This Affidavit asserted that: (1) there has been a release or threatened release of vinyl chloride on Stein's property; (2) the release constituted "an actual and significant threat to human health and the environment"; (3) the Defendants caused the release; and (4) certain monitoring and investigative activities on Stein's property, performed by Sadat and later by Brown, were necessary to address the release and threatened release of hazardous substances *See* Brown Aff. ¶¶ 7-9, 13, 24-25.

The Defendants believe that Brown's Affidavit contradicts his Expert Report and deposition testimony, and was filed for the sole purpose of allowing Stein to survive the Defendants' Motion for Partial Summary Judgment. They therefore ask the Court to strike the Affidavit and preclude Brown from testifying about opinions not originally expressed in his first Expert Report.

## II. *STANDARDS OF REVIEW*
### A. *The Defendants' Motion to Preclude*

Federal Rule of Civil Procedure 26 requires that parties disclose the identity of any expert witness who may be used at trial. Fed.R.Civ.P. 26(a)(2)(A). That disclosure must also be accompanied by a "written report prepared and signed by the witness."

*Id.* (a)(2)(B). The expert report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor," as well as "the data or other information considered by the witness in forming the opinions....' *Id.* Assuming the court establishes a schedule for such disclosures, parties must disclose their expert reports "at the times and in the sequences directed by the *Id.*rt." (a)(2)(C).

Rule 26 also imposes a duty to supplement expert reports. *Id* ("The parties shall supplement these disclosures when required under subdivision (e)(1)."). Specifically, Rule 26(e)(1) provides that:
  **\*3** [a] party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete.... With respect to testimony of an expert from whom a report is required ... the duty extends both to information contained in the report and to information provided through a deposition of the expert....
  *Id.* (e)(1). Any additions or changes to the information contained in an expert report "shall be disclosed by the time the parties disclosures under Rule 26(a)(3) are due. *Id.* Disclosures pursuant to Rule 26(a)(3) shall be made, unless otherwise directed by the court, at least thirty days before trial. *Id.* (a)(3).

Failure to properly disclose or supplement information in accordance with Rule 26 can result in sanctions pursuant to Federal Rule of Civil Procedure 37(c)(1). *Se* Fed.R.Civ.P. 37(c)(1). Rule 37 provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed. *Ia* Rule 37 provides for other sanctions as well, and the determination of which sanction to impose is within the sound discretion of the trial court *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 156 (3d Cir.1995).

Discretion notwithstanding, "[t]he exclusion of critical evidence is an extreme sanction. *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 905 (3d Cir.1977). Indeed, the United States Court of Appeals for the Third Circuit requires more than a literal violation of Rule 26; before a

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

court preludes a party from presenting certain evidence at trial, it must first find that the party: (1) revealed previously undisclosed evidence when trial was either imminent or in progress; or (2) acted in bad faith, which is more than a mere lack of diligence. *See, e.g., In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 791-93 (3d Cir.199 *In re TMI Litig. Cases Consol. II,* 922 F.Supp. 997, 1004 (M.D.Pa.1996). When making those determinations, courts should consider: (1) the prejudice or surprise in fact of the party against whom the excluded evidence would have been offered; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the Rule 37 sanctions would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness of the party failing to make a required disclosure *Id.; In re Paoli,* 35 F.3d at 791; *Pennypack,* 559 F.2d at 905.

### B. *The Defendants' Motion to Strike*

*4 Federal Rule of Civil Procedure 56 permits parties bringing a motion for summary judgment to accompany their motion with supporting affidavits. Fed.R.Civ.P. 56(a). A party defending a motion for summary judgment may also employ supporting affidavits. *Id.* (b). Supporting affidavits are subject to several requirements.

First, supporting affidavits must be "made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated there *Id* (e). Second, supporting affidavits must be brought in good faith; if a litigant offers a supporting affidavit in bad faith or solely for the purpose of delay, "the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt." *Id.* (g).

Finally, supporting affidavits may not clearly contradict prior sworn testimony. To allow parties to file supporting affidavits that contradicted prior testimony would be to allow them to subvert the purpose of motions for summary judgment. Courts may therefore disregard such affidavits. For a court to disregard and strike an affidavit, however, the contradiction must be clear; an affidavit that

explains rather than contradicts prior testimony should not be disregarde *Compare Hackman v. Valley Fair* 932 F.2d 239, 241 (3d Cir.1991) (affidavit conflicted with prior testim *and Martin v. Merrell Dow Pharm., Inc.,* 851 F.2d 703, 705 (3d Cir.1988) (same) *and Hyde Athletic Indus. Inc. v. Continental Cas. Co.,* 969 F.Supp. 289, 298 (E.D.Pa.1997) (same *with Giancristoforo v. Mission Gas & Oil Prods., Inc.,* 776 F.Supp. 1037, 1043 (E.D.Pa.1991) (affidavit clarified prior testimony). Generally, courts will only disregard an affidavit if the contradiction relates to questions actually posed to the witness. *See Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 284 (3d Cir.2000); *Videon Chevrolet, Inc. v. General Motors Corp.,* 992 F.2d 482, 488 (3d Cir.1993). Nevertheless, courts may disregard an affidavit even if the witness was not explicitly examined on an issue, if allowing the affidavit to stand would change the "flavor and theory" of the case by introducing new causes of action or entirely new theories of recovery not previously disclosed *See Pellegrino v. McMillen Lumber Prods. Cor*, 16 F.Supp.2d 574, 583 (W.D.Pa.1996) (concluding that counsel could not reasonably be held accountable for failing to uncover information through discovery because it greatly differed from nature of case as stated in complaint). Finally, even if an affidavit does conflict with prior testimony, courts should not strike it if it satisfactorily explains the contradiction in terms of a mistake made while previously testi *See Martin,* 851 F.2d at 705.

### III. *DISCUSSION*
*5 A. *The Defendants' Motion to Preclude*
1. *Whether Stein Violated Rule 26*

The Court must first determine whether Stein violated Rule 26, a condition precedent to the imposition of sanctions under Rule 37 that the Defendants assume and Stein apparently conceded without inquiry. It is clear that Stein timely disclosed the identity of Brown as his expert witness, and that Brown's Expert Report was timely served before the date set by the Court. Accordingly, Brown may testify at trial and may express all opinions clearly expressed in his Expert Report. [FN1]

> FN1. The Court notes that the Expert Report does violate Rule 26 in that its disclosures were incomplete when made and were not, and have yet

to be, formally supplemented by Stein. Specifically, expert reports should contain "a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." Fed.R.Civ.P. 26(a)(2)(B). At the hearing on these Motions, it became clear that Brown has withheld the name of at least one such case because it was purportedly "confidential." Tr. of Hr'g at 41. Even if Brown has not testified in that matter, but instead simply prepared an expert report, Stein has still violated Rule 26(e)(2) by failing to supplement Brown's answers to interrogatories on the issue of his involvement in similar environmental cases. As the Court has already remedied this failure by ordering additional discovery and directing Stein to pay the Defendants' costs associated with a related Motion to Compel, the Court will not discuss this violation further.

Whether Brown may testify concerning opinions expressed for the first time in his Affidavit, however, is another matter. The Affidavit was filed after the date set for the serving of expert reports. The Affidavit therefore does not qualify as an original expert report that could have been served in accordance with the Court's Scheduling Order. Nor could Stein have filed the Affidavit later than that time under Rule 26(a)(2)(c), which allows later filing for reports that are offered "solely to contradict or rebut evidence on the same subject matter identified" by the De Seents. Fed.R.Civ.P. 26(a)(2)(C). This provision would have allowed Stein to present new theories or opinions at a later date. Stein has not argued that he offered Brown's Affidavit as a rebuttal opinion. Indeed, that argument is unavailable to Stein, as it would be internally inconsistent with his only argument thus far, namely that the Affidavit does not offer new opinions, but rather clarifies opinions already contained in the Expert Report.

Because the Affidavit cannot be considered an original expert report, the question therefore becomes whether it is an effective supplement to Brown's Expert Report. Despite Rule 26's requirement that expert reports provide a "complete statement of all opinions to be expressed," the Rule also allows parties to supplement the opinions expressed in their experts' reports, so long as such changes are made in accordance with the Rule *See* Fed.R.Civ.P. 26(e)(1). [FN2] The Court finds that Brown's Affidavit was not filed in accordance with Rule 26.

FN2. Interestingly, Rule 26 requires that expert reports contain "a complete statement of all opinions to be expressed" and "the data or other information considered by the witness in forming the opinions," while it only provides for the supplementation of "information" contained in an expert report. Fed.R.Civ.P. 26(a)(2)(B), (e)(1). When read in conjunction, these provisions might lead one to believe that the Rule allows only for the supplementation of information on which opinions are based, but not the opinions themselves. The Advisory Committee Notes state, however, that the Rule's duty to supplement "requires disclosure of any material changes made in the opinions of an expert from whom a report is required...." Fed.R.Civ.P. 26 advisory committee's note (1993); *see* Fed.R.Civ.P. 26(a)(2)(c) (providing for supplementation of all Rule 26(a)(2) "disclosures," not just "information" as stated in Rule 26(e)(1)).

First, supplementation of expert reports "shall be disclosed by the time the parties disclosures under Rule 26(a)(3) are due. *Id.* Disclosures pursuant to Rule 26(a)(3) shall be made, unless otherwise directed by the court, at least thirty days before trial. *I.* (a)(3). Given that Stein's Pretrial Memorandum was to be filed with the Court on February 12, 2001, Brown's Affidavit, which Stein filed on April 6, was not timely filed as a supplement to his Expert Report. Moreover, even if the Affidavit had been timely served, [FN3] Stein would be unable to avail himself of Rule 26(e)(1), as he has argued throughout these proceedings that the Affidavit does not contradict Brown's Expert Report in any material resp *See i.* (e)(1) (allowing supplementation of information in expert reports that is "incomplete or incorrect").

FN3. Were it not for the fact that the Court set a date for pretrial disclosures, Stein would have been permitted to supplement Brown's Expert Report until thirty days before the instant case was to be called to trial *Id.* (a)(3). By Order of March 22, the case's trial pool date was postponed until May 6, 2001. Brown's Affidavit, filed on April 6, would therefore have been filed, albeit fortuitously, as on the last permissible day.

Second, Brown's Affidavit violates Rule 26 because Brown played no apparent role in preparing it. Rule 26 requires that expert reports be "prepared and signed by the witness *I.* (a)(2)(B). The Advisory Committee Notes to Rule 26 state that the

Not Reported in F.Supp.2d
(Cite as: 2001 WL 936566, *5 (E.D.Pa.))

Rule "does not preclude counsel from providing assistance to experts in preparing the reports...." Fed.R.Civ.P. 26 advisory committee's notes (1993). Nevertheless, Rule 26(a)(2)(B) "does not contemplate blanket adoption of reports prepared by counsel or others...." 6 James Wm. Moore et al., Moore's Federal Practice ¶ 26.23[4] (3d ed.2000).
In the instant case, Stein's counsel provided more than assistance in preparing Brown's Affidavit. Indeed, at the hearing on this matter, Brown conceded that Stein's counsel, not he, prepared the Affidavit. Tr. of Hr'g at 76. Brown never claimed to have played any substantial role in its preparation, other than signing it. Although Brown implicitly referred to the existence of a second draft of the Affidavit, he gave no testimony regarding the extent of his involvement in the preparation of that draft. Moreover, the Affidavit was only filed in response to the Defendants' Motion for Partial Summary Judgment, and would not have been filed otherwise. While the language of the Affidavit explicitly mirrors the language of the federal statutes implicated in this case, Brown repeatedly testified that he was unfamiliar with the applicable legal standards under those statutes See, e.g., id at 45. Finally, Stein, although afforded ample opportunity to do so, offered no evidence that Brown prepared the Affidavit in any meaningful way. Accordingly, the Court finds that Brown's Affidavit violates Rule 26.

*6 2. The Appropriate Remedy Under Rule 37

The Court has discretion in selecting the appropriate sanction for violations of Rule 26. In order to preclude a party from presenting evidence, however, the Third Circuit requires that the offending party must have: (1) revealed previously undisclosed evidence when trial was either imminent or in progress; or (2) acted in bad faith, which is more than a mere lack of diligence See, e.g., In re Paoli, 35 F.3d at 793; In re TMI Litig., 922 F.Supp. at 1004. The Court finds that preclusion of this evidence is appropriate because the Affidavit was filed in bad faith and the Defendants have been prejudiced by its late filing. [FN4]

FN4. Although the Affidavit was filed after this case was placed in the trial pool, the Court had yet to rule on two still-pending Cross- Motions for Partial Summary Judgment. Accordingly, Stein did not file the Affidavit when trial was imminent.

In essence, Stein would have the Court allow him to file preliminary expert reports and then freely supplement them with information and opinions that should have been disclosed in the initial report. That result would effectively circumvent the requirement for the disclosure of a timely and complete expert report. See, e.g., Keener v. United S. 181 F.R.D. 639, 642 (D.Mont.1998). The concept of preliminary expert reports is contrary to the policies underlying Rule 2( See In re TMI Li 922 F.Supp. 1005 n. 9; Smith v. State Farm Fire & Cas. Co., 164 F.R.D. 49, 53-54 (S.D.W.Va.1995). Allowing preliminary expert reports as a matter of course would afford litigants an opportunity to "mold their expert reports to meet [their opponent's] legal challenges.' In re TMI Liti, 997 F.Supp. 1005 n. 10. Such was the case here. Brown's Affidavit was only filed in response to the Defendants' Motion for Partial Summary Judgment, and was carefully tailored, by Stein's counsel, to dovetail with the statutory requirements the Defendants claimed Stein had failed to prove.

Although given the chance to do so, Stein offered no persuasive justification for the filing of Brown's Affidavit. Moreover, as is discussed at fuller length below, the opinions expressed in the Affidavit contradict those expressed in Brown's Expert Report. Finally, instead of supplementing Brown's expert opinions formally through an amended or supplemented expert report, Stein filed the Affidavit as an attachment to Stein's opposition to the Defendants' Motion for Partial Summary Judgment. Those facts, coupled with Stein's other Rule 26 violations and his inability to meet Court-imposed deadlines, demonstrate bad faith. [FN5] Simply stated, the work of Brown and Stein's counsel exceeds a mere lack of diligence. Id.

FN5. As noted above, Brown's Expert Report, and the attempted supplement thereto, neglected to disclose certain information because it was purportedly confidential. Tr. of Hr'g at 41. Moreover, Stein filed his Pretrial Memorandum on March 8, 2001, despite the Court's unambiguous Order that it be filed no later than February 12.

*7 The Court finds that precluding this evidence is the most appropriate remedy for Stein's bad faith. Importantly, this ruling will not prevent all of Stein's claims from being heard by a jury; Stein may still rely on the opinions expressed by Brown in his Expert Report and, because the Defendants have

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2001 WL 936566, *7 (E.D.Pa.))

only filed a Motion for Partial Summary Judgment, several of his claims will remain intact even assuming this ruling affects Stein's statutory claims. Accordingly, the Court will preclude Stein from relying on Brown's newly disclosed opinions at trial or in support of any motions filed with this Court.

B. *The Defendants' Motion to Strike*

Although the issue of the Defendants' Motion to Strike has largely been rendered moot by the Court's decision that Stein filed his Affidavit in bad faith, [FN6] the Court further finds that the Affidavit should be stricken from the record because it contradicts Brown's Expert Report, adding so many new opinions that it changes the flavor of the case from the one presented solely by Brown's Expert Report and depositions.

> FN6. *See* Fed.R.Civ.P. 56(g) (making filing of affidavit in bad faith sanctionable act that justifies holding party or attorney in contempt). The Court notes that the Defendants have not asked the Court to impose these particular sanctions.

In his Expert Report, Brown offered, among other opinions, an expert opinion that parrafin oil on Stein's property constituted a release or threatened release that substantially endangered human health or the environment. Nowhere does Brown's Expert Report mention the existence of a release or threatened release of vinyl chloride as an area of concern. The Defendants, based on Brown's Expert Report and deposition testimony, [FN7] could not have been on notice that Stein planned to base their liability on the existence, or threatened existence, of vinyl chloride. By contrast, Brown's Affidavit, which was filed after the Defendants filed their Motion for Partial Summary Judgment, offers many opinions concerning the presence of vinyl chloride and its associated health risks. Specifically, Brown's Affidavit opines that: (1) there has been a release or threatened release of vinyl chloride on Stein's property; (2) the release constituted "an actual and significant threat to human health and the environment"; (3) the Defendants caused the release; and (4) certain monitoring and investigative activities on Stein's property were necessary to address the release and threatened release of hazardous substances including, ostensibly, vinyl chloride. *See* Brown Aff. ¶¶ 7-9, 13, 24-25. None of these opinions appeared explicitly in Brown's Expert Report. [FN8]

> FN7. For example, at his deposition, Brown stated that Stein's environmental investigations had not complied with CERCLA requirements because "[t]he National Contingency Plan in something that deals with releases. When you investigate things and there isn't anything there by definition there isn't a release or threatened release.... [T]his is not a federal ... context like that." Brown Dep. at 239.

> FN8. While Brown's Expert Report stated that the nature and cost of the work on Stein's property were reasonable, Brown Expert Report at 13, it did not opine that such work was necessary in response to a release or threatened release of vinyl chloride.

Of course, Brown's Expert Report does refer to Sadat's Site Characterization Report, which mentions the existence of vinyl chloride on Stein's property. But Brown's Expert Report did not refer to that particular finding by Sadat, much less adopt it or vouch for its credibility. Indeed, Sadat's Site Characterization Report is twenty-eight pages long; simply referring to the document in its entirety could not have put the Defendants on notice that Brown intended to express that particular opinion at trial. The filing of Brown's Affidavit altered the nature of these proceedings in a way that the Defendants, based on Brown's Expert Report and deposition, could not have anticipated. While the Affidavit may not conflict with Sadat's Site Characterization Report, it certainly conflicts with Brown's Expert Report. Brown never adopted Sadat's findings, and the mere mentioning of Sadat's Site Characterization Report as a reference document does not allow Brown, at this late juncture, to materially alter his intended expert testimony at trial.

**8** Brown's Affidavit contradicts his Expert Report and deposition, and does not explain the contradiction in terms of a mistake in Brown's reducing his Expert Report to writing. Allowing Stein to file this contradictory Affidavit would allow him to undermine the purpose of motions for summary judgment. The Court will therefore strike the Affidavit from the record in this *See*. *Hackman,* 932 F.2d at *Pellegrin* 16 F.Supp.2d at 583.

### ORDER

AND NOW, this day of August, 2001, in consideration of the Motion In Limine To Preclude

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
**(Cite as: 2001 WL 936566, \*8 (E.D.Pa.))**

Expert Opinions Not Expressed in the November 30, 2000 Expert Report of Gary Brown, filed by the Defendants, Foamex International, Inc., Foamex L.P., Foamex Carpet Cushion, Inc., Trace International Holdings, Inc., General Felt Industries, Inc., GFI-Foamex and Marshall S. Cogan (collectively referred to as the "Defendants") (Doc. No. 29), the Response of the Plaintiff, Charles D. Stein ("Stein"), and the Reply thereto, and in consideration of the Defendants' Motion to Strike the April 4, 2001 Affidavit of Gary Brown (Doc. No. 27), the Response of Stein and the Reply of the Defendants, as well as arguments and evidence presented at a Hearing held before this Court on July 18, 2001, it is ORDERED that:

1. The Defendants' Motion to Preclude is GRANTED. Stein is precluded from presenting expert testimony regarding matters or opinions not specifically and expressly contained in Brown's Expert Report, and from relying on such matters or opinions in support or defense of any motion before this Court.

2. The Defendants' Motion to Strike is GRANTED. The Affidavit of Gary Brown, filed as an attachment to Stein's Brief in Opposition to the Defendants' Motion for Partial Summary Judgment, shall be stricken from the record of this case.

3. Stein and the Defendants may, no later than fifteen (15) days after the date of this Order, submit a memorandum to the Court explaining the party's position on the effects of this Order on the Cross-Motions for Partial Summary Judgment still pending before this Court.

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

## CERTIFICATE OF SERVICE

I, Robert W. Meek, hereby certify that true and correct copies of Exhibits in support of Plaintiff's Motion to Strike Certain Exhibits to Defendants' Motion for Summary Judgment were served on the following by first class mail, postage prepaid on May 2, 2002:

> Michael L. Harvey, Esquire
> Senior Deputy Attorney General
> Office of Attorney General
> Strawberry Square
> Fifteenth Floor
> Harrisburg, PA  17120

Robert W. Meek