IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA PROTECTION AND ADVOCACY, INC., | :<br>:<br>: |
| Plaintiff, | : Civil Action No. 1:00-CV-1582 |
| v. | : Judge Caldwell |
| DEPARTMENT OF PUBLIC WELFARE OF THE COMMONWEALTH OF PENNSYLVANIA; *et al.*, | :<br>:<br>: |
| Defendants. | : |

FILED
HARRISBURG, PA
SEP 2 5 2002
MARY E. D'ANDREA, CLERK
Per_____
Deputy Clerk

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
TO RESPOND TO NEWLY-PRODUCED EVIDENCE
RELEVANT TO PENDING SUMMARY JUDGMENT MOTIONS**

Plaintiff Pennsylvania Protection and Advocacy, Inc., through its counsel, submits this Brief in support of its Motion to Respond to Newly-Produced Evidence Relevant to Pending Summary Judgment Motions. For the reasons discussed below, the documents produced this month by Defendants significantly undermines the trustworthiness of some of the evidence submitted and statements

made by Defendants in their summary judgment papers submitted in mid-April 2002.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit in September 2000 to protect the rights of residents of South Mountain Restoration Center ("SMRC"). Plaintiffs alleged that Defendants: (1) violate the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA") by failing to place in community settings those SMRC residents who, with appropriate supports and services, are able to live in such integrated environments; and (2) violate Title XIX of the Social Security Act by failing to comply with certain requirements relating to care and treatment at nursing facilities.

Plaintiff filed its Motion for Partial Summary Judgment on January 11, 2002 on its claims under the ADA and RA. After receiving several extensions of time, Defendants filed their Brief and Exhibits in support of their Motion for Summary Judgment on all claims and in opposition to Plaintiff's Partial Summary Judgment Motion on April 15, 2002. In support of their Motion and in opposition to Plaintiff's Motion, Defendants submitted, *inter alia*, voluminous reports from nineteen retained experts and literally hundreds of declarations from SMRC's physicians and other professionals. The declarations signed by SMRC's treatment physicians discussed the diagnoses and treatment needs of each SMRC resident and concluded the residents were not appropriate for transfer to more integrated

2

settings. (Def.'s Motion, Exh. B & C). Similarly, the report of Thomas E. Lawrence, M.D., submitted by Defendants, opined that virtually no SMRC residents had potential for discharge to an alternative, more integrated placement. Lawrence Rep., Att. A (Def.'s Motion, Exh. A-11).

On September 11, 2002, Defendants supplemented their discovery responses. Meek Decl. ¶ 2 (Exh. A). The documents produced at that time included copies of twelve SMRC residents' Annual Physical Examinations dated between January 31, 2002 and May 20, 2002, which include statements related to the appropriateness of discharge. Id. ¶ 4. At the same time, Defendants produced the results of a survey of SMRC by the Pennsylvania Department of Health ("DOH") dated March 7, 2002. Id. ¶ 3. Comparing these documents with the evidence submitted and statements made by Defendants in their summary judgment papers filed on April 15, 2002, it is apparent that Defendants knew or should have known at the time those papers were submitted that some of the evidence and statements submitted to the Court, at best, was misleading.

## QUESTIONS PRESENTED

1.    Are the newly-produced Annual Physical Examinations of SMRC residents Patsy H., Frank P., Russell H., Dillie G., and Madeline K. inconsistent with the declarations of their treatment physicians and with the Report of Dr. Lawrence?

2.  Does the newly-produced DOH survey render the statements about the conditions and treatment at SMRC made by Defendants in their summary judgment papers -- filed five weeks after that survey -- misleading?

## ARGUMENT

### I. THE NEWLY-PRODUCED ANNUAL PHYSICAL EXAMINATIONS OF SMRC RESIDENTS PATSY H., FRANK P., RUSSELL H., DILLIE G., AND MADELINE K. ARE MATERIALLY AT ODDS WITH EVIDENCE SUBMITTED AND STATEMENTS MADE BY DEFENDANTS IN THEIR SUMMARY JUDGMENT PAPERS.

The Annual Physical Examinations of five of the twelve SMRC residents whose Examinations were produced by Defendants in their September 11, 2002 supplemental production are materially at odds with evidence submitted and statements made by Defendants in their summary judgment papers. Specifically, these new -- and belatedly-produced -- documents undermine Defendants' contentions that these five residents cannot be discharged to more integrated settings.

*Patsy H.* -- In the newly-produced Annual Physical Examination dated April 23, 2002, Robert H. Reid, M.D., her treating physician, stated in the "Plan" section: "Resident requires nursing facility services because of need for supervision for personal hygiene and physical help limited to transfers only. ... Rehabilitation potential is fair. Discharge potential and prognosis are problematical because of family not desiring discharge." Exh. B at 32616a. Yet, in his Declaration dated March 29, 2002 -- less than one month before the Annual

4

Physical Examination -- Dr. Reid stated that Patsy H. "is not, at this time, appropriate for relocation to another nursing home or less comprehensive care setting" due to "her unstable medical and psychiatric conditions". Reid Decl. ¶¶ 21, 22 (Defs.' Motion, Exh. C-10). Indeed, Dr. Reid stated:

> Patsy [H.] has such a high level of functional impairment that transfer to another nursing home or less intensive care setting would present a risk of imminent deterioration or injury due to the complex and interrelated combination of physical and mental conditions, as well as the frailty associated with Patsy [H.'s] medical condition.

Id. ¶ 16.[1] Dr. Reid also informed the Court that "it is unlikely that Patsy [H.'s] physical and psychiatric condition will improve in the foreseeable future such that [she] could benefit from or handle treatment in another nursing home or a less comprehensive care setting." Id. ¶ 19. It is simply inconceivable that in less than one month Patsy H. was transformed from a point where she could not leave SMRC at all due to her medical frailty to a point when she simply needed some assistance with daily living activities and the only issue precluding her discharge was family opposition.

*Frank P.* -- In the newly-produced Annual Physical Examination dated January 31, 2002, Linda J. Christie, M.D., his treating physician and SMRC's

---

[1] Defendants' expert, Dr. Lawrence, similarly concluded that there would be no "[s]ignificant benefit" of transfer to an alternative setting and that Patsy H. demonstrates "significant nursing care or medical care needs." Lawrence Rep., Att. A, at 1, 2 (Defs.' Motion, Exh. A-11).

5

Medical Director, stated in the "Plan" section: "There are no medical issues, [sic] which limit his discharge." Exh. C at 32606. However, in her Declaration submitted to this Court dated April 4, 2002, about two months later, Dr. Christie opined that Frank P. "is not, at this time, appropriate for relocation to a less comprehensive care setting," and that he could neither handle nor benefit a transfer to a "less comprehensive care setting" based on both his "physical and psychiatric conditions." Christie Decl. ¶¶ 18-20 (Defs.' Motion, Exh. C-30). Defendants' expert, Dr. Lawrence, concluded that there would be no "[s]ignificant benefit" of transfer to an alternative setting and that Frank P. demonstrates "significant nursing care or medical care needs." Lawrence Rep., Att. A, at 1, 2 (Defs.' Motion, Exh. A-11).

*Russell H.* -- In the newly-produced Annual Physical Examination dated May 7, 2002, Dr. Christie, his treating physician, stated in the "Plan" section: "The resident's discharge potential is not currently limited by medical issues." Exh. D at 32613. However, in her Declaration submitted to this Court dated April 4, 2002, Dr. Christie stated: "It is my opinion with reasonable medical certainty that South Mountain represents the most appropriate setting for Russell [H.] at this in consideration of, for example, the close medical supervision he needs and is able to receive here" and that he is "not, at this time, appropriate for relocation to another nursing home or less comprehensive care setting." Christie Decl. ¶ 21 (Defs.' Motion, Exh. C-27). Defendants' expert, Dr. Lawrence, similarly

6

concluded that there would be no "[s]ignificant benefit" of transfer to an alternative setting and that Russell H. demonstrates "significant nursing care or medical care needs." Lawrence Rep., Att. A, at 1, 3 (Defs.' Motion, Exh. A-11).

*Dillie G.* -- In the newly-produced Annual Physical Examination dated May 9, 2002, Dr. Christie, her treating physician, stated in the "Plan" section: "The resident's discharge potential is not currently limited by her medical problems." Exh. E at 32615. In her Declaration submitted to this Court dated March 28, 2002, Dr. Christie stated that "transfer to a less intensive setting would present a risk of imminent deterioration or injury, due to the complex and interrelated combination of physical and mental conditions, as well as the frailty associated with Dillie [G.'s] medical condition." Defendants' expert, Dr. Lawrence, similarly concluded that there would be no "[s]ignificant benefit" of transfer to an alternative setting and that Dillie G. demonstrates "significant nursing care or medical care needs." Lawrence Rep., Att. A, at 1, 2 (Defs.' Motion, Exh. A-11).

*Madeline K.* -- In the newly-produced Annual Physical Examination dated March 4, 2002, Dr. Christie, her treating physician, stated in the "Plan" section: "The resident's discharge is not limited by any medical concerns. However, as the resident does believe that she is living in her 'final home,' transfer to another facility could result in regression of her psychiatric status." Exh. F at 32615. In her Declaration submitted to the Court dated March 28, 2002, Dr. Christie did discuss Madeline K.'s opposition to discharge as a basis for her "opinion with

7

reasonable medical certainty that Madeline [K.] is not, at this time, appropriate for relocation to another nursing home or less comprehensive care setting." Christie Decl. ¶ 22 (Defs.' Motion, Exh. C-45). Yet, Dr. Christie's conclusion that Madeline K. could not be discharged to a more integrated setting was also based on the following:

> It is likewise my opinion that at this time, Madeline [K.] has such a high degree of functional impairment that transfer to another nursing home or less intensive setting would present a risk of imminent deterioration or injury due to the complex and interrelated combination of physical and mental conditions, as well as the frailty associated with Madeline [K.'s] medical condition and advanced age [77].

Id. ¶ 20. Defendants' expert, Dr. Lawrence, similarly concluded that there would be no "[s]ignificant benefit" of transferring Madeline K. to an alternative setting. Lawrence Rep., Att. A, at 1, 2 (Defs.' Motion, Exh. A-11).

In their summary judgment Brief, Defendants stated: "As the attending physicians, in conjunction with the treatment teams, recognize, and their declarations prove, these [residents] are, with few exceptions, very sick people." Defs.' Br. at 18. Yet, the recently-produced documents dispute this conclusion. The representations of the SMRC treatment physicians in their Declarations relating to these five residents as well as the conclusions of Defendants' expert, Dr. Lawrence, are inconsistent with the assessments of these individuals' medical needs as revealed in the nearly contemporaneous Annual Physical Examinations

8

that were only recently produced to Plaintiff. While the Declarations and expert report submitted to the Court stated that these residents have medical needs that preclude their placement in alternative settings, the Annual Physical Examinations states that none of these residents have medical needs that preclude such alternative placement. The Annual Physical Examinations reveal the lack of trustworthiness of the evidence submitted by Defendants and support Plaintiff's contention that there are some SMRC residents who, with appropriate supports and services, can be placed in alternative settings.

## II. THE NEWLY-PRODUCED DOH SURVEY RENDERS STATEMENTS ABOUT THE CONDITIONS AND TREATMENT AT SMRC MADE BY DEFENDANTS IN THEIR SUMMARY JUDGMENT PAPERS MISLEADING.

In their summary judgment papers filed on April 15, 2002, Defendants cited the 2000 and 2001 DOH surveys of SMRC to establish the quality of care provided to residents at SMRC and referred to "South Mountain's exceptional DOH license ...." Defs.' Br. at 7, 19; Defs.' SUF # 34. Defendants noted that DOH found no deficiencies at SMRC in 2000 and "only one minor deficiency" in 2001. Defs.' Br. at 7; Defs.' SUF # 34. Defendants also informed the Court at that time that SMRC "has a negligible incidence of bedsores"; that SMRC "addresses ... proper body positioning"; and that residents are "evaluated for adaptive technologies ...." Defs.' SUF ## 65, 67, 70; *accord* Defs.' Br. at 22.

9

On March 7, 2002 -- more than a month *before* Defendants made these statements, DOH issued the results of its 2002 survey. Notably, though, Defendants' filing makes no reference to the results of the 2002 DOH survey. The 2002 DOH survey, produced to Plaintiff in mid-September 2002, identified four deficiencies at SMRC. DOH Survey dated March 7, 2002 (Bates ## 32621-27) (Exh. G). DOH found that SMRC: (1) violated regulations relating to positioning, finding that a resident was improperly positioned in his wheelchair; (2) violated regulations relating to proper treatment of bedsores; (3) violated regulations requiring the provision of a sanitary and comfortable environment; and (4) violated regulations governing resident privacy by failing to assure privacy when residents use bathrooms. Id.[2]

While these issues are not directly before the Court, Defendants made much of the quality of care provided at SMRC and its "exceptional" compliance with DOH's licensure requirements. At the time it was making these representations, Defendants knew that DOH's 2002 survey of SMRC revealed more significant problems. While Defendants never affirmatively misstated the results of the 2002 survey, their failure to mention those results at all rendered the statements they did make concerning the quality of care at SMRC materially misleading. Again,

---

[2] Defendants submitted a plan of correction to remedy these violations, which DOH accepted on May 9, 2002. DOH Survey dated May 9, 2002 (Bates # 032619) (Exh. H).

10

Defendants' "fudging" of the facts calls into question the trustworthiness of their representations to the Court.

## **CONCLUSION**

These newly-produced documents demonstrate that the declarations of the treatment physicians and the conclusions of Defendants' expert, Dr. Lawrence, at least with respect to these five residents are untrustworthy and should be rejected by the Court in its consideration of the pending summary judgment motions. Therefore, Plaintiff respectfully requests that the Court consider the newly-produced evidence in evaluating the pending summary judgment motions.

Respectfully submitted,

Dated:  September 23, 2002            By: /s/ Robert W. Meek
Robert W. Meek
Robin Resnick
Disabilities Law Project
1315 Walnut Street, Suite 400
Philadelphia, PA  19107-4798
(215) 238-8070

Mark J. Murphy
Disabilities Law Project
1901 Law & Finance Building
429 Fourth Avenue
Pittsburgh, PA  15219-1505
(412) 391-5225

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I, Robert W. Meek, hereby certify that true and correct copies of Plaintiff's Motion to Respond to Newly-Produced Evidence Relevant to Pending Summary Judgment Motions were served on the following by first class mail, postage prepaid on September __, 2002:

>Michael L. Harvey, Esquire
>Senior Deputy Attorney General
>Office of Attorney General
>Strawberry Square
>Fifteenth Floor
>Harrisburg, PA  17120
>
>Howard Ulan, Esquire
>Senior Assistant Counsel
>Department of Public Welfare
>Office of Legal Counsel
>Health & Welfare Building
>Third Floor West
>Harrisburg, PA  17120
>
>Thomas J. Blazusiak, Esquire
>Senior Assistant Counsel
>Department of Public Welfare
>Office of Legal Counsel
>Allentown State Hospital
>Room 130 Medical Services Building
>1600 Hanover Avenue
>Allentown, PA  18103

*/s/ Robert W. Meek*
Robert W. Meek